UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  08-21925-CIV-UNGARO/SIMONTON

LORNA BEACH-MATHURA,

     Plaintiff,

v.

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

ORDER DENYING PLAINTIFF'S MOTION TO OVERTURN
JURY VERDICT AND MOTION FOR NEW TRIAL

     Presently pending before the Court are Plaintiff Lorna Beach-Mathura's Motion to Overturn Jury Verdict and Motion for New Trial (DE # 131).  Pursuant to the Consent to Exercise Jurisdiction by a United States Magistrate Judge form signed by the Parties, on June 3, 2009, this matter was referred by the District Judge to the undersigned Magistrate Judge for final disposition, including trial and entry of final judgment (DE # 106).  The Defendant filed an Opposition to the Motions (DE # 138), but Plaintiff did not file a reply and the time for doing so has elapsed.  Based upon a thorough review of the record and for the reasons stated herein, Plaintiff Lorna Beach-Mathura's Motion to Overturn Jury Verdict and Motion for New Trial (DE # 131) are DENIED.

I.     BACKGROUND

     This matter was initiated when Plaintiff Lorna Beach-Mathura filed a one-Count Complaint alleging negligence against American Airlines for injuries she allegedly suffered while being assisted by American Airlines' agents at the Narita Airport in Japan on August 30, 2006 (DE # 1).  In the Complaint, Ms. Beach-Mathura alleged that the Defendant was negligent in providing a wheelchair for her at the Airport because, among other things, the wheelchair was not interlocked to prevent it from rolling backwards,

lacked appropriate written warnings and safety devices, was not properly maintained and inspected by American Airlines' agents, and failed to meet local State and Federal codes.  The Plaintiff alleged that as a result of the fall, she sustained serious and permanent bodily injuries and suffered, among other things, loss of earnings and the ability to earn money.  In its Answer and Affirmative Defenses, the Defendant denied that it had been negligent.[1]  A four-day jury trial was held in the matter and the jury returned a verdict in favor of the Defendant (DE # 128). The Court thereafter entered a Final Judgment in Favor of the Defendant pursuant to Federal Rule of Civil Procedure 58 (DE # 120). Plaintiff timely filed the instant Motion to Overturn Jury Verdict and Motion for New Trial (DE # 131).[2]  The Defendant filed an opposition to the Motions.  Plaintiff, however did not file a Reply.

## II.    TRIAL PROCEEDINGS

At trial, Plaintiff, Ms. Beach-Mathura, testified that on August 30, 2006, she was standing in the check-in line at the American Airlines counter at the Narita Airport in

---

[1] Defendant also asserted in its Affirmative Defenses and argued in a Motion to Dismiss (DE # 10) and on Summary Judgment (DE # 58) that the Montreal Convention preempted Plaintiff's claims.  The Court denied both the Defendant's Motion to Dismiss (#14) and Defendant's Motion for Summary Judgment on this issue (DE # 75).  In denying the Motion for Summary Judgment, the Court determined that the Plaintiff's claims fell outside of the scope of the Montreal Convention and therefore deemed the Complaint to be amended to reflect that the Court had subject matter jurisdiction over this action based upon diversity of the parties pursuant to 28 U.S.C. § 1332 (DE # 75 at 7).

[2] The Plaintiff filed the instant Motion pro se.  However, at the time of that filing, Plaintiff was still represented by her trial attorneys. Therefore, the undersigned issued an Order directing Plaintiff's Counsel to File a Statement of Clarification indicating whether Counsel sought to withdraw from representation of Ms. Beach-Mathura (DE # 137).  In response, Counsel filed a Motion to Withdraw (DE # 139).  This Court granted the Motion, stayed the proceedings, and directed Ms. Beach-Mathura to either file a Notice of Intention to Proceed pro se or to obtain new counsel on or before September 21, 2009 (DE # 143).  On September 21, 2009, new counsel for Ms. Beach-Mathura entered a notice of appearance (DE # 144).

Japan when she expressed to a fellow passenger, who was also standing in line, that she was having difficulty standing.  The other passenger requested that a wheelchair be brought for Ms. Beach-Mathura.  Ms. Beach-Mathura was ushered to the front of the line where the check-in agent confirmed her request for a wheelchair.  The agent then placed a telephone call in Japanese, and shortly thereafter a person brought a wheelchair to the counter.  The agent directed Ms. Beach-Mathura to have a seat in the wheelchair.  As Plaintiff began to sit down, the chair rolled from behind her and she fell onto the ground, a concrete surface covered with a "thin industrial carpet". The American Airlines agent then came from behind the check-in counter and along with the person who brought the wheelchair assisted Ms. Beach-Mathura in getting back into the wheelchair.  Ms. Beach-Mathura was checked in and then escorted to the departure gate.  These facts were largely undisputed by the Defendant at trial.

In both direct and cross examination, the Plaintiff confirmed that she had suffered prior injuries from two car accidents, as well as from an incident involving an assault which resulted in lumbar strain to her lower back and a cervical strain to her neck. Plaintiff was placed on temporary total disability as a result of the assault.  On cross-examination, the Plaintiff admitted that she received worker's compensation for the injuries sustained in that incident and also received benefits from the Florida victim's benefits bureau.  Ms. Beach-Mathura confirmed that she had just begun to receive the payments from the victim's bureau in August of 2006, and was not working at the time that the incident at the Airport occurred.

In addition to Ms. Beach-Mathura's testimony, at trial, the Plaintiff introduced the written statement of the person standing in line near her who initially requested the

wheelchair.[3]  The person's statement corroborated Ms. Beach-Mathura's testimony regarding her request for a wheelchair and the fact that she fell as she attempted to sit in the wheelchair.  However, the statement did not address who brought the wheelchair to the American Airlines counter and did not describe the condition of the wheelchair when it was placed behind Ms. Beach-Mathura.

The Plaintiff did not introduce any additional eyewitness testimony regarding the incident or the condition of the wheelchair, including whether it was locked when it was brought to Ms. Beach-Mathura.  The Plaintiff did not introduce any expert testimony related to the proper procedures for wheelchair use, whether it was possible to determine whether the wheelchair had been locked during the incident, or whether the condition of the wheelchair or the manner in which it was provided to Ms. Beach-Mathura was improper.

The Plaintiff also called two treating physicians to testify about the Plaintiff's treatment related to her back injuries.[4]  The first, Dr. Anthony Hall, a neurosurgeon, began to treat the Plaintiff in March of 2008.  According to Dr. Hall, Ms. Beach-Mathura reported to him that she was not working, and had sustained cervical and lumbar injuries in 2005 when she was attacked by a student.  Ms. Beach-Mathura also reported to the doctor that she had fallen in August of 2006 while trying to sit in a wheelchair at

---

[3] At the final pretrial conference, the Court denied the Plaintiff's untimely opposed motion to allow the witness who made the statement to appear via video conference or via telephone because the witness resides out of the country (DE ## 110, 113).

[4] On May 12, 2009, the Honorable Ursula Ungaro granted the Defendant's Motion in Limine to Exclude Expert Testimony of Plaintiff's Treating Physicians (DE # 86) for Plaintiff's failure to timely designate the treating physicians as expert witnesses (DE # 97).  Thus, at trial, the Plaintiff's treating physicians were not permitted to provide expert opinions on the cause of the Plaintiff's injuries other than to the extent necessary to explain the course of treatment administered to the Plaintiff.

the airport.  Dr. Hall testified that after examining Ms. Beach-Mathura and conducting a series of tests, he concluded that she had an impairment rating of 12%. The physician testified on cross-examination that Ms. Beach-Mathura's complaints related to her back and other physical problems began in 2005.  Also on cross-examination, the physician testified that a post-incident MRI of Ms. Beach-Mathura's tail bone was normal but several MRIs taken prior to the incident revealed a herniation of her back.[5]

The Plaintiff also presented the testimony of Dr. Rudolph, a chiropractor, who testified on direct that he first treated Ms. Beach-Mathura on September 1, 2006, for complaints related to the incident.  He testified that on her initial visit, Ms. Beach-Mathura mentioned that an incident had occurred in Japan, and that her chief complaints were of pain related to her neck, low back, right shoulder, and right leg.  Dr. Rudolph described the course of treatment administered to Ms. Beach-Mathura and noted that she continued to receive treatment from him until February of 2007, and that her medical bills totaled approximately $14,000.  Dr. Rudolph's final report regarding Ms. Beach-Mathura indicated that she had reached maximum medical improvement, would not improve any further from a chiropractic standpoint and continued to have persistent complaints of neck, low back pain and leg pain.  Dr. Rudolph referred Ms. Beach-Mathura to a specialist.  The witness also testified that his final assessment was that Ms. Beach-Mathura's subjective complaints were consistent with the objective examination

---

[5] Prior to the commencement of trial, the Court granted the Defendant's Motion to Enforce Court Order and for Sanctions (DE # 60) related to an November 2005 MRI of Plaintiff's lumbar spine (DE # 65).  The Court ordered that an adverse jury instruction should be given related to that MRI.  The jury instructions included an instruction that directed the jury to infer that the November 10, 2005 lumbar spine MRI image would have been unfavorable to the Plaintiff's position (DE # 119 at 7).  Plaintiff did not object to the jury instruction.

findings for injuries associated with the slip and fall accident on August 20, 2006.

On cross-examination, Dr. Rudolph admitted that he had submitted a claim for insurance coverage for Ms. Beach-Mathura's treatment which listed the date of incident necessitating the treatment as March 1, 2005. Dr. Rudolph confirmed that the March 1, 2005 date was the date when Ms. Beach-Mathura was assaulted at her school and not the date of the incident at the airport. Dr. Rudolph also admitted that he had treated Ms. Beach-Mathura prior to the incident at the airport.

At the close of the Plaintiff's case, the Defendant moved for a judgment as a matter of law asserting that: 1) there was no evidence to prove that the person who brought the wheelchair was an American Airlines' employee or agent; 2) that there was no evidence that the wheelchair was not locked or that it was defective in any manner; and, 3) the Plaintiff had failed to establish causation for her injuries. The Court denied the Motion.

In its case-in-chief, the Defendant first called Dr. John Nordt, an expert in the field of orthopedic surgery who first examined the Plaintiff in 2008 at the request of the Defendant. Dr. Nordt testified that he performed an independent medical examination of the Plaintiff and concluded that she did not suffer from any problems from the wheelchair incident and that the incident did not exacerbate any of the her preexisting injuries (DE # 138-2 at 3). He also concluded that the Plaintiff did not have any neurological problems and placed her impairment rating at 0%. *Id*. at 4-5.

The Defendant also presented the testimony of Dr. Peter Livingston, an expert in the area of neuroradiology, who testified that he reviewed Plaintiff's MRI's from both before and after the incident at the Airport. Dr. Livingston testified that based upon his review, there was absolutely no evidence that Ms. Beach-Mathura suffered an injury

related to the incident at the Airport in August of 2006.

The Defendant then read three depositions into the record.  The first physician, Brett Osborn, a doctor of osteopathy with a specialty in neurosurgery, examined the Plaintiff on January 26, 2006, prior to the incident at the Narita Airport.  Dr. Osborn testified that he saw Ms. Beach-Mathura for neck and back pain following a work site injury that occurred on March 1, 2005.  The physician concluded that Ms. Beach-Mathura appeared to be feigning her pain and that there was no radiological evidence of progressive pathology and her symptoms remained unexplained.

The second physician, Dr. George Munoz MD., a specialist in arthritis and board certified in internal medicine, testified in his deposition that he initially saw Ms. Beach-Mathura in July of 2005 for low back and right hip pain. Dr. Munoz testified that he treated Ms. Beach-Mathura on a regular basis in 2006 and diagnosed her with cervical and lumbar degenerative disk disease.  Dr. Munoz testified that when he treated the Plaintiff on September 15, 2006, that she did not advise him that she had fallen from a wheelchair at the check-in counter of an airport.  Dr. Munoz also testified that his diagnosis on that day, remained the same as Ms. Beach-Mathura's previous diagnosis prior to August 30, 2006.

 The third deposition read into the record by the Defendant was of Dr. Andrew Frank, M.D., a physician board certified in pain medicine. Dr. Frank testified that he first saw the Plaintiff in May of 2006, for hip, cervical and lower back pain.  Dr. Frank supervised Ms. Beach-Mathura's physical therapy treatments and estimated that she received twenty-five such treatments.  Dr. Frank testified that there was no indication that Ms. Beach-Mathura advised her physical therapist during her four treatments in September of 2006 that she had been involved in an accident involving a wheelchair in

7

August of 2006.  Dr. Frank testified that his opinion was that Ms. Beach-Mathura suffered from moderate to severe arthritic changes to her spine.

The Defendant also introduced the Plaintiff's other medical records related to the Plaintiff's prior injuries into evidence.  Finally, the Defendant introduced the Plaintiff's worker's compensation file related to her 2005 worker's compensation claim, the Plaintiff's Florida Bureau of Victim's compensation file and interrogatory answers signed by the Plaintiff.

After the Defendant rested, the Plaintiff did not make any motions and the Plaintiff did not present a rebuttal case.  At the close of all of the evidence, the Defendant, renewed its motion for judgment as a matter of law.  The Court denied the renewed motion and the Parties presented their closing arguments.

The jury returned a verdict in favor of the Defendant, concluding that based upon a preponderance of the evidence, the Defendant was not negligent in the manner claimed by the Plaintiff and the Defendant's negligence was not a legal cause of damage to the Plaintiff (DE # 128).  The Court thereafter entered a Final Judgment in Favor of Defendant (DE # 120).  The Plaintiff then filed the instant Motions requesting that the Court grant her "Motion for Judgment Non Obstante Veredicto" (JNOV) and a new trial.

III.   <u>PARTIES' POSITIONS</u>

In the pending Motions, the Plaintiff asserts that the verdict reached by the jury should be overturned because, *inter alia*, the Plaintiff presented a prima facie case of negligence on the part of American Airlines, Inc., the Court denied the Defendant's motion to dismiss the case, and Counsel for the Defendant improperly attacked the Plaintiff's witnesses and further had improper contact with the jury (DE # 131).

In opposition, the Defendant argues that the Plaintiff has misapplied the standard

8

for judgment as a matter of law and for a new trial and asserts that the Plaintiff falls far short of meeting her burden under the appropriate standards for the requested relief.  In addition, the Defendant contends that there was overwhelming evidence at trial regarding Plaintiff's pre-existing injuries that negated any showing of causation on the part of the Defendant.  Finally, Defendant vehemently denies that there was any improper conduct by Defense counsel or communication with the jury. Defendant's counsel thus requests that the allegation by the Plaintiff be stricken from the record.

IV.     **LAW & ANALYSIS**

    A.     **Judgment as a Matter of Law Rule 50**

        1. **Legal Standard**

Motions for Judgment as a Matter of Law in a Jury Trial are governed by Federal Rule of Civil Procedure Rule 50.[6]  Pursuant to that Rule, a court may grant a motion for

---

[6] **Federal Rule of Civil Procedure 50 provides,**

**(a) Judgment as a Matter of Law.**

**(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:**

**(A) resolve the issue against the party; and**

**(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.**

**(2)  Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.**

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of**

judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Akouri v. State of Florida Dept. of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) citing Fed.R.Civ.P. 50(a).  A court should review all of the evidence in the record and draw all reasonable inferences in favor of the non-moving party, disregarding all evidence favorable to the moving party that the jury is not required to believe. *Id. citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).  Further, credence should also be given to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (internal quotations omitted). However, determinations of credibility, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* at 150.

The Eleventh Circuit has a well established standard governing motions for judgment as a matter of law and has stated,

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.... [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to

judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59....

weigh conflicting evidence and inferences, and determine the
credibility of witnesses.

*Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F. 3d 1183, 1186 (11th Cir. 2001)
*citing Watts v. Great Atl. & Pac. Tea Co.*, 842 F.2d 307, 309-10 (11th Cir.1988) (per curiam)
(citation omitted).

Further, Rule 50(a)(2) which pertains to a party's initial motion for judgment as a
matter of law requires that the motion be made prior to submission of the case to the
jury. *Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1154 (11th Cir. 1994).  Similarly, Rule
50(b) allows for a party to renew a motion for judgment as a matter of law after a trial.
Thus, it follows that a motion under Rule 50(b) is not allowed unless the movant sought
relief on similar grounds under Rule 50(a) before the case was submitted to the jury.
*Exxon Shipping Co. v. Baker*, --- U.S. ----, ---- n. 5, 128 S. Ct. 2605, 2617 n. 5 (2008).
*Accord Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1153-54 (11th Cir. 1994)(opining that
it is impermissible for party to make judgment not withstanding motion after verdict
where initial directed verdict motion was not made prior to verdict); *Ross v. Rhodes
Furniture*, 146 F.3d 1286, 1289 (11th Cir. 1998) (same).

### 2.  Application of Rule 50 to Case at Bar

In the instant motion the Plaintiff has requested a "Judgment Non Obstante
Veredicto" (JNOV). However, In 1991, the "JNOV" terminology previously contained in
Rule 50, was amended to use the phrase "judgment as a matter of law". See *Rule 50 of
Federal Rules of Civil Procedure, Advisory Committee Notes, 1991 Amendment*.  The
Advisory Committee Notes for that Amendment provide that a motion improperly styled
as a JNOV motion should be viewed as merely a formal error, and the court should treat
the motion as a motion for judgment as matter of law in accordance with the dictates of

Rule 50. *Id.*  Accordingly, the Court treats the Plaintiff's JNOV Motion as a motion for

judgment as a matter of law pursuant to Rule 50, and applies the legal standards

applicable under that Rule.

In this case it is undisputed that Plaintiff failed to make a Rule 50(a) Motion at the

close of the Defendant's case and prior to the submission of the case to the jury.

Plaintiff is therefore not entitled to make a renewed Rule 50(b) Motion now and this

Court lacks the authority to enter judgment under that Rule. See *Doe v. Celebrity*

*Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (vacating district court's entry of

judgment pursuant to Rule 50(b) despite contrary jury verdict on ground not raised in

Rule 50(a) motion) (citation omitted).  Accordingly, Plaintiff's Motion is denied on this

ground.

However, even if the Plaintiff had timely moved for judgment as a matter of law,

the undersigned concludes that she would still not be entitled to the relief she seeks

because the testimony and evidence at trial established a legally sufficient evidentiary

basis for a reasonable jury to find for the Defendant in this matter.

First, although there was no dispute that the incident occurred on August 30,

2006 at the American Airlines counter at the Narita Airport in Japan, and involved a

request for a wheelchair on behalf of the Plaintiff, the Defendant raised issues regarding

whether it was an American Airlines' employee or agent that provided the wheelchair for

the Plaintiff.  Specifically, although the Plaintiff testified on direct that the person who

brought her the wheelchair had on the same uniform and colors as the woman behind

the desk, on cross-examination, Ms. Beach-Mathura confirmed that she could only could

identify the person who provided the wheelchair as wearing a *white shirt and blue*

*trousers* and did not remember any other insignia or name tag that may have identified

**12**

the person as an American Airlines employee.  Moreover, on re-direct, Ms. Beach-Mathura testified that the man who brought the wheelchair to her was wearing *a blue shirt and navy blue pants* and testified that she was familiar with the uniform because her brother worked for American Airlines.  Also, the Plaintiff admitted on cross-examination that she had not made any special request for wheelchair assistance to American Airlines prior to arriving at the airport that day, and that she did not hear the American Airlines counter agent, who spoke in Japanese, order the wheelchair.  Thus, it would not be beyond a reasonable juror's conclusion that the Plaintiff failed that establish that the employee who brought the wheelchair was an American Airlines's employee.  Further, as noted above, it is for the jury, not the Court to weigh any inconsistencies in Ms. Beach-Mathura's testimony in ruling on a Rule 50 motion.

Second, the Defendant raised questions about whether there had actually been any negligence in the method in which the wheelchair was provided to Ms. Beach-Mathura. In fact, there was no evidence that the wheelchair was defective in any way or that American Airlines was negligent in securing the wheelchair, other than the testimony of Ms. Beach-Mathura which did not necessarily establish any negligence.  In particular, the Plaintiff testified that after the wheelchair was brought to her, she looked sideways to see if the chair was directly behind her and began to sit down.  As she did, she felt the back of the wheelchair against her legs and as she sat down, the chair wasn't there because it rolled backwards.  On cross-examination, Ms. Beach-Mathura testified that she glanced to make sure the chair was behind her but was looking forward as she lowered herself onto the chair.  Thus, the Court cannot conclude that a reasonable jury could not find that the Defendant was not negligent, particularly since the only brief testimony on ths issue is provided by Ms. Beach-Mathura, who is clearly

not a "disinterested witness".  In addition, there was no evidence introduced at trial of safety protocols for the operation of wheelchairs, not even through the testimony of Ms. Beach-Mathura, and thus, a jury could also find no negligence by the Defendant on this issue as well.

As to Plaintiff's injuries, the answers to interrogatories signed by the Plaintiff were introduced at trial, which among other things, listed several incidents which occurred prior to the August 30, 2006 incident wherein the Plaintiff sustained injuries to her back.  Specifically, as listed in the answers to interrogatories and confirmed by the Plaintiff during her trial testimony, in 1996, Plaintiff was in a car accident that caused injury to her lower back and a herniated disk and another car accident in 2001 wherein she was hospitalized for a ruptured intestine and she also suffered from head and back pain.  In 2005, Plaintiff was attacked in a classroom and was thereafter diagnosed with a lumbar sprain and cervical sprain pain to the right shoulder and arm.  Thus, the jury could find that the back ailments that Plaintiff suffered from were not caused by the fall at the Airport, but were caused by either a prior accident or the attack in 2005.

The testimony of the medical witnesses at trial confirmed that the Plaintiff had been involved in several incidents prior to the incident in August of 2006 that had resulted in injuries to her back.  Moreover, several of the physicians questioned the validity of the Plaintiff's medical complaints, noted that the Plaintiff did not suffer from any injury related condition that would explain her then-present back pain, and specifically concluded that the incident on August 30, 2006 did not cause the injury complained of by the Plaintiff.

In addition, and most significantly, at trial, the Defendant called Plaintiff's credibility into question by arguing that the information that Plaintiff initially provided in

**14**

her initial answers to the Defendant's discovery requests was inaccurate and incomplete.  Specifically, Defendant focused on the Plaintiff's purported failure to initially disclose information related to prior back injuries and claims she made related to those injuries and to disclose physicians who had treated the Plaintiff for those prior back injuries.  The Defendant also cross-examined the Plaintiff with her deposition testimony and pointed out that Plaintiff made inconsistent statements in her deposition and at trial.  In addition, Defendant elicited testimony and introduced evidence that the Plaintiff filed a workers' compensation claim in March of 2005 related to the student assault and that due to injuries to her back, she received 55 weeks of wage pay and then received an additional 6 months pay from the victims' compensation board, which she was in the midst of receiving when the airport incident occurred.  Hence, Defendant argued that the Plaintiff was aware that her injuries were really caused by the assault incident in 2005 and not the fall at the airport as evidenced by the claims she made related to that 2005 incident.

To be clear, the undersigned makes no assessment of the Plaintiff's credibility based upon the arguments made by the Defendant at trial, but rather points to the testimony to demonstrate that the Plaintiff's credibility was placed at issue at the trial, and thus determinations related to the Plaintiff's testimony was properly decided by the jury and not by this Court.  Simply put, notwithstanding the fact that the Plaintiff failed to preserve her right at trial to move for a judgment as a matter of law after a jury verdict, the Plaintiff also has failed to demonstrate that there was not a legally sufficient evidentiary basis for a reasonable jury to find for the Defendant in this case.

Finally, the undersigned finds absolutely no evidence in the record to support the Plaintiff's claims that Counsel for the Defendant conducted the defense in an improper

manner or had any improper contact with the jurors.  The fact that the Plaintiff may not agree with the Defendant Counsel's non-objectionable and permissible courtroom tactics does not entitle the Plaintiff to have a jury verdict set aside or require that Plaintiff be given a new trial.  In addition, the allegations made by the Plaintiff in this regard were not raised at trial and not presented to the Court.  Therefore, the Plaintiff has waived her right to raise this issue in post-trial proceedings.  *Peer v. Lewis*, 2008 WL 2047078 (S.D. Fla. May 13, 2008) citing *Williams v. Marriot Corp.*, 864 F.Supp. 1168, 1173 (M.D. Fla.1994) (stating absent exceptional circumstances that call into question the integrity of a trial, a party waives any objection to juror misconduct unless it makes a timely objection).  Plaintiff has utterly failed to support her claims and has offered no exceptional circumstances that call into question the integrity of the trial.  As such, although the Court does not find it necessary to strike the Plaintiff's allegations, it is manifest that the Plaintiff is not entitled to relief on this basis.

Plaintiff also argues that she presented a prima facie case of negligence on the part of American Airlines as evidenced by the Court's denial of the Defendant's motion to dismiss the case at trial.  However, Plaintiff misconstrues the Court's ruling in this regard as well as her burden at trial.  At the close of the Plaintiff's case when the Defendant moved for judgment as a matter of law, the Court denied the motion finding that the Plaintiff had produced sufficient evidence to submit the matter to the jury, although the Court noted that it "certainly [was] not strong evidence."  The Court also stated, "The woman fell and was in pain. If American Airlines was negligent, the pain that she suffered when she fell was caused by them would be a grounds for recovery."  Thus, the Court never concluded that American Airlines was negligent, but rather determined that based upon the evidence presented in the Plaintiff's case that there was sufficient

evidence to not rule as a matter of law that the no reasonable jury could conclude that Defendant was negligent and caused the Plaintiff's injuries.  Nor did the Court determine that the Plaintiff had met her burden of showing that the Defendant was negligent by the preponderance of the evidence at the close of trial.  Rather, the Court's ruling was largely due to the requirement under Rule 50 that the court review all of the evidence in the record, draw all reasonable inferences in *favor of the non-moving party*, and disregard all evidence favorable to the moving party that the jury is not required to believe.  Given that the Defendant moved for judgment as a matter of law, the Court appropriately drew all reasonable inferences in favor of the Plaintiff and denied the Defendant's motion.

      **B.**    **Motion for New Trial**

        **1.**    **Legal Standard**

The Plaintiff has also moved for a New Trial.  Although the Plaintiff has cited to Federal Rule of Civil Procedure 50, a Motion for New Trial may be made pursuant to Rule 50 or Rule 59. Courts have held that when ruling on a motion for a new trial, a trial judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' "*Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554 (11th Cir. 1984*) citing United States v. Bucon Construction Co.*, 430 F.2d 420, 423 (5th Cir. 1970), *quoting*, *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 352-53 (4th Cir. 1941). To assure that the judge does not simply substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence. *Id. citing Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980),

citing, *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976).  This standard is the same whether the Motion is made under Rule 50 or 59. Finally, where conflicting testimony is present and the jury is called upon to make credibility determinations and to weigh the evidence, a jury verdict should not be disturbed if there is some support for the jury's decision. *Quick v. City of Birmingham*, 346 Fed. Appx. 494, 495 (11th Cir. Sept. 25, 2009) (citing *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F. 2d 1493, 1498 (11th Cir. 1987)).

Finally, it bears noting that because the Court's jurisdiction is based upon diversity in this action, the substantive legal issues raised by Plaintiff's negligence claim are governed by Florida law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1939). Under Florida law, a plaintiff must prove four elements to prevail on a negligence claim: (1) the defendant owes a legal duty to the plaintiff: (2) the defendant breached that duty: (3) the defendant's breach of duty was both an actual and a proximate cause of the plaintiff's injury; and (4) the plaintiff suffered legally cognizable damages as a result of the defendant's breach of duty. See *Humphreys v. General Motors Corp.*, 839 F.Supp. 822 (N.D. Fla. 1993); *Paterson v. Deeb*, 472 So.2d 1210, 1214 (Fla. Dist. Ct. App. 1985); *Clampitt v. D.J. Spencer Sales*, 786 So. 2d 570, 573 (Fla. 2001).

2.  Application of Motion for New Trial Standard to Case at Bar

Applying these standards to the case at bar, the undersigned concludes that the Plaintiff is not entitled to a new trial.  First, in her Motion, the Plaintiff misapprehends the standard for granting a motion for new trial which requires a showing by the moving party that the verdict is against the clear weight of the evidence.  This standard is clearly different than the standard for judgment as a matter of law which, as discussed above, requires that a court conclude that the moving party demonstrate that there is no legally

**18**

sufficient evidentiary basis for a reasonable jury to find for a non-moving party on a particular issue.  Thus the fact that the Plaintiff may have presented a prima facie case of negligence which was sufficient to defeat the Defendant's Motion for Judgment as a Matter of Law does not mean that the Plaintiff met her burden of proof at trial.  Nor does it mean that the Plaintiff as the moving party herein has shown that the jury's verdict was against the clear weight of the evidence.

On the contrary, in this case, the great weight of evidence at trial supported a finding that the Plaintiff failed to establish the four required elements of negligence. Specifically, although it was unchallenged at trial that the Defendant owed a duty of care to the Plaintiff, the Plaintiff failed to prove that the Defendant, through its negligence, breached that duty, that Defendant's breach was the legal cause of an injury to the Plaintiff, and that she suffered damages as a result of that injury.

First, for the reasons stated above in denying the Plaintiff's motion for judgment as matter of law, the great weight of evidence at trial did not establish that the Defendant was negligent. Other than Ms. Beach-Mathura's testimony which arguably, even if uncontested, did not establish negligence on the part of the Defendant, the Plaintiff utterly failed to provide any evidence that the Defendant provided the wheelchair in a negligent manner.[7]  *See Cooper Hotel Services, Inc. v. Farland*, 662 So. 2d 710 (Fla. Dist. Ct. App. 1995) (remanding case and directing verdict for defendant hotel where plaintiff

---

[7] The Plaintiff did not request a res ipsa loquitur instruction which would alleviate the Plaintiff's burden of demonstrating the defendant's negligence by direct evidence. *See e.g.*, *Wal-Mart Stores, Inc., v. Rogers*, 714 So. 2d 588 (Fla. Dist. Ct. App. 1998) (finding reversible error where trial court gave instruction on res ipsa loquitur which lowered plaintiff's burden on demonstrating defendant's negligence where evidence that items on shelf which injured plaintiff were not in exclusive control of defendant prior to accident).  Thus, at trial the Plaintiff was required to put forth direct evidence of the Defendant's negligence in order to satisfy her burden.

in slip and fall action failed to introduce any expert evidence or otherwise establish that hotel was negligent in installation of non-slip hotel tubs other than fact that plaintiff fell in tub).

Similarly, as to Plaintiff's injuries, Florida courts have held that in negligence actions, the mere fact of the happening of an accident will not in and of itself, produce a right to recover damages.  Rather, the party seeking recovery must prove the extent of his injuries and that they were proximately caused by the negligence of the adversary. *Chomont v. Ward*, 103 So.2d 635, 637-38 (Fla. 1958).  In addition, even where liability is not contested, Florida courts have found it inappropriate for trial courts to grant a new trial based upon a finding that the jury's verdict is against the manifest weight of evidence if the issue of a plaintiff's injuries are contested at trial and impeachment of a plaintiff is sufficient to place a plaintiff's credibility in question.  *Jordan v. Brown*, 855 So. 2d 231, 234 (Fla. Dist. Ct. App. 2003).  In such a case, a jury is entitled to judge the plaintiff's credibility and to accept or reject her testimony on all issues.  *Id.* (stating if the jury disbelieved plaintiff's story, then plaintiff's entire claim for damages for injuries collapsed) (citing *Chomont v. Ward*, 103 So. 2d 635, 637-38 (Fla.1958)).

Thus, in this case, even if the Plaintiff had established liability against the Defendant, based upon the issues of credibility raised by the Defendant, the jury still had a right to reject the Plaintiff's testimony on all issues and to conclude that she did not suffer any injury based upon the fall at the Airport.  To the extent that the Plaintiff's claims regarding her injuries were based on her testimony that was contradicted by several of the medical witnesses presented by the Defendant, the jury had the right to discount the testimony of the Plaintiff and disbelieve her entire claim for damages.

Accordingly, the Plaintiff has failed to demonstrate that the jury's verdict was

against the manifest weight of the evidence and a new trial pursuant to Rule 50 or 59 is
not warranted.

V.       <u>CONCLUSION</u>

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Lorna Beach-Mathura's Motion to
Overturn Jury Verdict and Motion for New Trial (DE # 131) are **DENIED.**

**DONE AND ORDERED** in chambers at Miami, Florida, on March 19, 2010.

_Andrea M. Simonton_
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
All counsel of record