```
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3
     LORNA BEACH-MATHURA,              )     CASE NO. 08-21925-CIV
 4                                     )
                    Plaintiffs,        )
 5        vs.                          )      VOLUME 4 of 4
                                       )      Pages 1 through 127
 6   AMERICAN AIRLINES,                )
                                       )   THURSDAY, JUNE 25, 2009
 7                  Defendants.        )
                                             9:40 a.m.
 8
                            JURY TRIAL
 9           BEFORE THE HONORABLE ANDREA M. SIMONTON
                UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For Plaintiffs: Donovan L. Parker, Esq.
                     99 NW 183rd Street, Suite 104
13                   Miami, FL  33169
                     (305)655-0239
14
                     Duane A. Crooks, Esq.
15                   13899 Biscayne Blvd. - Suite 153
                     North Miami Beach, FL  33181
16                   (305) 341-3420

17   For Defendants: Gregory M. Palmer, Esq.
                     Marty Fulgueira Elfenbein, Esq.
18                   RUMBERGER, KIRK & CALDWELL
                     Brickell Bayview Centre, Suite 3000
19                   80 S.W. 8th Street
                     Post Office Box 01-9041
20                   Miami, Florida  33101
                     (305)358-5577
21

22   Reported By:    Judith M. Shelton, Certified Realtime Reporter
                     Official United States Court Reporter
23                   400 N. Miami Avenue, Room 8N09
                     Miami, FL  33128
24                   (305)523-5294
                     judy_shelton@msn.co
25
```

STENOGRAPHICALLY REPORTED, COMPUTER-AIDED TRANSCRIPT

```
 1              COURTROOM DEPUTY:  Counsel, please note your
 2   appearances for the record.
 3              THE COURT:  You need to turn on your microphone.
 4              MR. PARKER:  Good morning.  Donovan Parker for the
 5   plaintiff.
 6              MR. CROOKS:  Good morning, Your Honor.  Duane Crooks,
 7   counsel for the plaintiff.
 8              THE COURT:  Thank you.  And seated with you at
 9   counsel table, I believe, is the plaintiff Lorna
10   Beach-Mathura, correct?
11              MR. PARKER:  That's correct, Your Honor.
12              THE COURT:  Thank you.  On behalf of defendants.
13              MR. PALMER:  Greg Palmer and Marty Elfenbein on
14   behalf of American Airlines.
15              THE COURT:  Thank you.  We had a juror who was late
16   this morning.  She just arrived and we've given them their
17   lunch menus, so she's picking out what her lunch is.
18              I found some typos in the jury instructions and in
19   the verdict form, and so we changed those.  It was just a
20   question of punctuation and consistency in numbering.
21              And, I think, there was an additional word or two, an
22   "and" or an "or."
23              Have you had a chance to go over the jury
24   instructions?  Or should we handle that when we take a break
25   at the end of the evidence?  Mr. Crooks or Mr. Parker?
```

THURSDAY, JUNE 25th, 2009

```
 1            MR. PARKER:  We have just received the jury

 2    instructions, Your Honor.  I am probably three pages into it,

 3    so it probably would be best if we handle it during a break.

 4            THE COURT:  Okay.  They're the same instructions that

 5    I gave you yesterday.

 6            MR. CROOKS:  And that's fine, then, Your Honor.

 7            THE COURT:  Okay.  So -- but I'll defer, then, on the

 8    jury instructions, unless -- I'll ask Counsel for the

 9    defendant, excuse me, if you have any changes or additions or

10    corrections that you should alert plaintiff's counsel to, now,

11    so they can be thinking about them.

12            MS. ELFENBEIN:  No, Your Honor, we reviewed them last

13    night and they were fine.

14            THE COURT:  Okay.

15            MR. CROOKS:  They're fine with us, then, Your Honor.

16            THE COURT:  Okay.

17            MR. PARKER:  Yes.

18            THE COURT:  So then you'll have what we give the

19    jury.  The other matter which goes without saying, in

20    yesterday's package I included the proposed Civil Allen Charge

21    which, I believe, is the pattern instruction from the Eleventh

22    Circuit.  Obviously, that's not attached to the package that

23    I'm going to read to the jury and that they are going to be

24    receiving.

25            That was just because that was in there as -- an
```

THURSDAY, JUNE 25th, 2009

```
1   instruction that, if need be, would be -- would be given and
2   we will discuss, if it becomes necessary, whether it's
3   appropriate to give it or not, at that time.  So I just wanted
4   to alert you to that because I did notice we had included it
5   in the package we gave you, but I'm clearly not going to be
6   reading that.
7              Is there anything that we need to take up before we
8   bring the jury in, from the plaintiff?
9              MR. PARKER:  No, Your Honor.
10             THE COURT:  Is there anything we need to take up from
11  the defendant?
12             MR. PALMER:  No, Your Honor.  We are -- we have all
13  our exhibits, don't we, Marty, ready to go in?
14             MS. ELFENBEIN:  We do.
15             MR. PALMER:  Plus the two additional ones.
16             MS. ELFENBEIN:  And we're adding two complete
17  exhibits.
18             THE COURT:  Okay.  And you've separately marked them.
19  So what I will do is I will call the jury in and I'll ask both
20  sides if you're ready to proceed.  And I'll address Mr. Palmer
21  and ask him if he has any additional witnesses and if he has
22  any additional exhibits, and you can make your announcement at
23  that time, following which, you can rest.
24             I'll let the plaintiff make any appropriate motions,
25  if they have any motions to make.  But I'm going to ask the
```

```
 1   plaintiff, do you have any rebuttal case?
 2           MR. PARKER:  We have no rebuttal case, at this time.
 3           THE COURT:  Okay.  Then if it's okay with you, to
 4   avoid having to call you to sidebar, what I'll do is, whatever
 5   motions you would have made at the close of the defendant's
 6   case, I'll let you make when you announce that there's no
 7   rebuttal case.
 8           And that way we can, then, excuse the jury to go back
 9   in the jury room, and then you can make whatever motions you
10   would have deemed appropriate at the close of the defendant's
11   case; and the defendant can make any motions they want to
12   make, since -- at the close of the rebuttal case, since there
13   is none.
14           Does that make sense, Mr. Parker?
15           MR. PARKER:  Yes.  I followed you, Your Honor.
16           THE COURT:  Okay.  I'm not sure I followed myself, to
17   tell you the truth.  Is that fine, Mr. Palmer?
18           MR. PALMER:  That's acceptable, Judge, sure.
19           THE COURT:  Okay.  Fine.  So why don't we call the
20   jury in.
21           MR. PARKER:  Before we --
22           THE COURT:  Wait a minute.  Before we call the jury
23   in?
24           MR. PARKER:  I just heard that there were two
25   complete exhibits that --
```

THURSDAY, JUNE 25th, 2009

```
 1          THE COURT:  Okay.  Which exhibits are you
 2   introducing?  Why don't you go ahead and show them to opposing
 3   Counsel.
 4          MS. ELFENBEIN:  Just -- we are introducing, I'll
 5   bring them over to Mr. Parker, the complete Florida Bureau
 6   Victim Compensation file, the certified complete file of it;
 7   and the complete certified file of the plaintiff's workers'
 8   compensation claim, including the CD containing the audio
 9   transcripts from the hearings, which is also certified from
10   the JCC's office.
11          THE COURT:  And what exhibit numbers were these on
12   your exhibit list?
13          MS. ELFENBEIN:  Just one second, so I can look at
14   that.  One of them was Exhibit "F," that would be for the
15   Florida Bureau of Victim Compensation Services.  And the other
16   one would be "I," it's identified as records received pursuant
17   to subpoena from Florida Workers' Compensation.
18          THE COURT:  Okay.  And then the Florida Bureau of
19   Victim's Compensation file will become Defendant's Exhibit 42,
20   and the workers' compensation claim file will become
21   Defendant's Exhibit 43, I believe.  Because we -- we had an
22   additional Exhibit 41, as I recall, which was the affidavit of
23   the -- of the plaintiff.  Is that -- is my recollection
24   correct on that?
25          MS. ELFENBEIN:  That's correct.
```

THURSDAY, JUNE 25th, 2009

```
 1            THE COURT:  Okay.  And she's bringing them over to
 2  you.  And these were the same documents listed on your exhibit
 3  list, correct?
 4            MR. PARKER:  We have no objection to these.
 5            MR. PALMER:  I will indicate that the audiotape,
 6  which is part of the workers' compensation records, we have
 7  prepared several clips from that, that I am going to be
 8  playing in my closing.
 9            MR. CROOKS:  That's fine.
10            THE COURT:  Okay.  And how will you be accomplishing
11  that task?  In theory, are you going to use the ELMO -- no,
12  sorry.
13            MR. PALMER:  Ms. Elfenbein is going to be using the
14  laptop, in some capacity.
15            MS. ELFENBEIN:  And we brought in the audio speakers
16  with us so they play, setup right there, in front of the jury.
17            THE COURT:  And is there a microphone near that so
18  that it will pick it up?
19            MS. ELFENBEIN:  Our IT department has told us that
20  the speakers are very loud, that they should be, but we
21  haven't tested it out.  I don't know if we could have a
22  hand-held microphone just in case?
23            THE COURT:  That would probably be a good idea.
24  Because, even though -- as I say, I have no trouble hearing
25  you when you're not speaking into the microphone, but it
```

THURSDAY, JUNE 25th, 2009

1   doesn't go into our system, so that would be useful.

2        Okay.  My plan is, we'll take a break as soon as

3   everybody rests, let the jury go back out, make their final

4   lunch selections and tell my courtroom deputy what they want.

5   And then we'll come back and -- and we'll also review the --

6   the jury instructions, then we'll come back for closing

7   argument.  If you'll bring the jury in, please.

8        MR. CROOKS:  Your Honor, if I may?

9        THE COURT:  Yes, Mr. Crooks.

10       MR. CROOKS:  One issue with respect to -- if I could

11  ask Your Honor's approval, during close to move about freely

12  in this area?

13       THE COURT:  Yes.  I said at the pretrial conference

14  that counsel, as long as you use a hand-held mike, you can

15  move about freely, you know, during your closing argument.

16  You can dance on the table.  You can do a ballet routine along

17  the railing, as long as you don't invade the province of the

18  jury.  And we have the chairs strategically placed to keep you

19  from doing that.  But as long as you speak into the

20  microphone, you can wander.

21       MR. CROOKS:  Thank you, Your Honor.

22       THE COURT:  I look forward to it.  Okay.  Now, going

23  once?  Going twice?  You can bring the jury in.

24       (Jury enters the courtroom at 9:49 a.m.)

25       THE COURT:  Good morning.  Please be seated.  Okay.

THURSDAY, JUNE 25th, 2009

1  Mr. Parker, Mr. Crooks, is the plaintiff ready to proceed this

2  morning?

3          MR. PARKER:  Yes, Your Honor.

4          THE COURT:  And Mr. Palmer, Ms. Elfenbein, is the

5  defense ready to proceed?

6          MR. PALMER:  Yes, Your Honor.

7          THE COURT:  Okay.  At the conclusion of yesterday, we

8  completed reading the deposition testimony of witnesses.

9          Mr. Palmer, do you have any additional witnesses or

10  exhibits that you would like to introduce at this time?

11          MR. PALMER:  Yes, Your Honor.  I do not have any

12  additional witnesses, nor do I have any more depositions to

13  read.  However, I would like to introduce my exhibits at this

14  time, or move to introduce them.  And those are Exhibits 1

15  through 40, which are contained within a black binder, and 41,

16  42, and 43, which I will file separately.

17          THE COURT:  Okay.  We previously admitted, actually,

18  Exhibits 1 through 40.  And I'll confirm that 1 through 40 in

19  the black binder are admitted, as well as -- without

20  objection, as we discussed a few minutes ago, the defendant's

21  Exhibits 41, which I believe is an affidavit; is that correct?

22          MR. PALMER:  That is correct, Your Honor.

23          THE COURT:  Defendant's Exhibit 42, which is the

24  Florida Bureau of Victim's Compensation file?

25          MR. PALMER:  That is correct.

THURSDAY, JUNE 25th, 2009

```
 1              THE COURT:  And Defendant's Exhibit 43, which is the
 2   workers' compensation claim file related to plaintiff?
 3              MR. PALMER:  Correct, Your Honor.
 4              THE COURT:  Okay.  Those will be admitted.
 5        (Defendant's Exhibits 41, 42, 43 are admitted into
 6   evidence.)
 7              THE COURT:  Is there anything further on behalf of
 8   the defense?
 9              MR. PALMER:  No, Your Honor.  However, I don't know
10   if there's an objection.  I have an index to my exhibits in
11   the binder.
12              THE COURT:  That's fine.  And there's an index, I
13   believe, that will be provided.  There's an index to the
14   notebook for the plaintiff, as well.
15              MR. PALMER:  With those exhibits being admitted, the
16   defendant would rest, Your Honor.
17              THE COURT:  Okay.  Thank you.
18              Does the plaintiff have a rebuttal case?
19              MR. PARKER:  No, Your Honor.
20              THE COURT:  Okay.  So the plaintiff rests, as well?
21              MR. PARKER:  Yes, Your Honor.
22              THE COURT:  Okay.  Ladies and gentlemen of the jury,
23   at this time we're going to take -- you have heard all of the
24   evidence, but you are still not to discuss the case or reach
25   any judgments or conclusions because you haven't heard the
```

THURSDAY, JUNE 25th, 2009

1   closing arguments or the Court's instructions on the law.

2          We'll take a brief recess at which time my courtroom

3   deputy will take your lunch orders.  I believe you were given

4   menus earlier this morning.  So she will go back and do that.

5   We need to place the orders early so that we get the menus and

6   so that we get the food in time for you to eat lunch.  It

7   takes them a while to prepare a group order.

8          Then we'll return, we'll hold closing arguments.

9   I've given each side about an hour, more or less, for closing

10  arguments, which will take us right up until about noon, at

11  which time your lunch should have arrived.  And then I'll

12  instruct you and you can go back to the jury room and you'll

13  deliberate and eat, or eat and deliberate, whichever order, or

14  do them all at the same time.

15         So, in any event, we'll just take that brief recess

16  right now.  Thank you.

17    (Jury withdrew from the courtroom at 9:54 a.m.)

18         THE COURT:  Thank you, be seated.

19         Okay.  I'll ask the plaintiff, are there any matters

20  that I need to take up now?

21         MR. PARKER:  No, Your Honor.

22         THE COURT:  Okay.  Let me ask the defense.  Any

23  matters that I need to take up?

24         MS. ELFENBEIN:  Yes, Your Honor.  At this time we

25  would renew our motion for judgment as a matter of law for the

THURSDAY, JUNE 25th, 2009

1  same grounds stated as the plaintiff -- at the close of

2  plaintiff's case-in-chief, for lack of evidence of breach,

3  duty, and causation.

4  THE COURT:  Okay.  As I said before at sidebar when

5  that argument was made, I'm going to deny your motion for the

6  same reasons that I stated at that time.

7  I do find there is sufficient evidence to establish

8  that American Airlines was responsible for the wheelchair,

9  although the jury could find to the contrary.

10  I also find there's sufficient evidence that the

11  plaintiff suffered some damage, although the jury could find

12  to the contrary.

13  And I also -- I also believe that the issue of

14  causation is properly before the jury.

15  So I'll deny that motion.

16  I will give you a few minutes to prepare for your

17  closing arguments and get set up and in the proper frame of

18  mind.

19  What I would like to know from the plaintiff is how

20  you decided to divide your time and what warnings you would

21  like.  And I will permit one attorney to give the first part

22  of the closing, and the other attorney to give the last part

23  of the closing on plaintiff's side.  I do permit that split.

24  I just want to make that clear.  It's probably a little late

25  to tell you that, but I assumed if there was some issue, you

THURSDAY, JUNE 25th, 2009

1  would have let me know.

2          MR. CROOKS:  Yes, Your Honor.  We've decided to have

3  a 40/20 split.

4          THE COURT:  Okay.  And what warning do you want?

5          MR. CROOKS:  A five-minute warning.

6          THE COURT:  I can give more than one, if you want.

7          MR. CROOKS:  Yes, Your Honor.  A ten-minute warning

8  and a five-minute warning.  Thank you.

9          THE COURT:  And do you want that for both your -- for

10 lack of a better word, your opening-closing and your

11 closing-closing?

12         MR. CROOKS:  Yes.  For opening-closing and

13 closing-closing, Judge.

14         THE COURT:  And for defense, you have 60 minutes.

15 What warnings would you like?

16         MR. PALMER:  Just a warning at 50 minutes, if I get

17 there.

18         THE COURT:  Ten minutes before the end?

19         MR. PALMER:  That's correct, Your Honor.

20         THE COURT:  I call that a 10-minute warning.

21         MR. PALMER:  Ten minutes.

22         THE COURT:  And the way I do this is I just say,

23 Counsel, at your request, I'm advising you have ten minutes,

24 so the jury doesn't think that I'm, like, trying to cut you

25 off or hurry you along.  Anything we need to do before we

THURSDAY, JUNE 25th, 2009

1    proceed to closings?

2           MR. PALMER:  No.  After closings, I guess, we will go

3    through the exhibits one last time?

4           THE COURT:  Well, after closings, what I'll do is

5    I'll instruct the jury.  And then before the exhibits go back,

6    I'll have Counsel review each side's exhibits, "the" exhibits

7    that will go back to the jury room to make sure there are no

8    objections to anything you want sent back to the jury room

9    and -- at that time.

10          And if there are questions, I'll come back on the

11   bench.  If there aren't any, then my courtroom deputy will

12   simply take the exhibits, one copy of the instructions, and

13   one copy of the verdict form.  I may take a short recess

14   before instructions.  I'll see how it goes, because sometimes

15   after sitting for a couple of hours, the jury needs a break to

16   get up.  But we'll see how long it actually takes before I

17   make that decision.

18          Okay.  So we'll be in brief recess.  And then when

19   you're ready and my courtroom deputy comes out, after having

20   taken the lunch orders from the jury, we'll start with

21   closings.  Thank you.

22     (Court recessed at 9:59 a.m., absent the jury, and

23   proceedings continued as follows at 10:19 a.m.)

24          THE COURT:  You can be seated.  It took a little

25   longer to order lunch since they kept ordering things that the

THURSDAY, JUNE 25th, 2009

1    restaurant was out of.

2           Good afternoon.  Counsel appearances are as

3    previously noted.  Is the plaintiff ready to proceed with

4    respect to closing?

5           MR. CROOKS:  Yes, Your Honor.

6           MR. PARKER:  Yes, Your Honor.

7           THE COURT:  Okay.  Is the defense ready?

8           MR. PALMER:  Yes, Your Honor.

9           THE COURT:  Is there anything you need to do before

10   we bring the jury in?

11          MR. CROOKS:  No, Your Honor.

12          MR. PARKER:  No, Your Honor.

13          MR. PALMER:  We're ready.

14          THE COURT:  Okay.  If you'll bring the jury in.

15      (Jury enters the courtroom at 10:21 a.m.)

16          THE COURT:  Good morning, please be seated.  Is

17   counsel for the plaintiff ready to proceed with respect to

18   closing arguments?

19          MR. CROOKS:  Yes, Your Honor.

20          THE COURT:  And is the defense ready to proceed?

21          MR. PALMER:  Ready, Your Honor.

22          THE COURT:  Okay.  Thank you.

23          Ladies and gentlemen of the jury, I would like you to

24   pay closing arguments, as I recognize counsel for purposes of

25   their argument.

THURSDAY, JUNE 25th, 2009

 1          Mr. Crooks, are you giving closing argument on behalf

 2  of plaintiff?

 3          MR. CROOKS:  Yes, Your Honor.

 4          THE COURT:  Okay.  Thank you.  You can proceed.

 5                      CLOSING ARGUMENT

 6          MR. CROOKS:  Good morning, ladies and gentlemen, my

 7  name is Duane Crooks, counsel for the plaintiff.

 8          On Monday, I sat in that seat over there, next to

 9  Mr. Parker, and Mr. Parker got up and gave you an opening

10  statement.  He gave you a roadmap of what would take place

11  during this case.

12          He told you this was a serious matter involving a

13  serious injury in Narita, Japan, in August, 2006.  He said the

14  issue in this case is negligence, duty, breach, causation, and

15  damages.

16          Duty:  American Airlines had a duty of care to its

17  passenger.  They breached that duty of care.  That subsequent

18  breach led to an injury.  Direct and proximate cause was the

19  injury sustained by Ms. Mathura.  And that injury had damages.

20  And Mr. Parker stood behind this podium and he told you that

21  we'd provide you with testimony with regard to those damages.

22          We were going to put in this jury box, this witness

23  box, treating physicians that will quantify her damages for

24  you:  Dr. Hall, Dr. Rudolph.  Dr. Hall, board certified

25  neurosurgery.  Dr. Rudolph, chiropractor, provided treatment

1   to Ms. Mathura directly after the accident, in the amount of

2   $14,000.

3          Mr. Parker told you that he would prove to you beyond

4   a shadow of a doubt with respect to the standard in this case,

5   which is a preponderance of the evidence.  Now, on Monday

6   during voir dire you were instructed about the distinction

7   between a criminal case and a civil case.  A criminal case,

8   the burden is beyond a reasonable doubt.  A very high

9   standard.

10          In a civil case, the standard is preponderance of the

11   evidence.  Did the events take place more likely than not?

12   Now, I'm not going to provide you instructions.  This Court

13   will provide you jury instructions later on.

14          Mr. Parker told you his outline on Monday, and

15   provided you with that outline with respect to testimony.

16          Now, as I sat here and observed opposing counsel,

17   counsel for the defendant, American Airlines, Ms. Elfenbein,

18   she came up close to you guys, she had one hand grabbing the

19   mike and the other she had a paper --

20          MR. PALMER:  Judge, this is not evidence.  I object.

21          THE COURT:  Overruled.

22          MR. CROOKS:  One hand holding the mike, the other

23   hand she had her paperwork in, and she told you this case was

24   about credibility.  Credibility.  The credibility of the

25   plaintiff.

THURSDAY, JUNE 25th, 2009

1    She came forth and she put on some -- first she came

2  in and she brought in that white board and outlined various

3  dates of accidents, and said Ms. Mathura did not disclose this

4  to us in discovery.  She is not credible.

5    She also went through a series of interrogatories.

6  Now, interrogatories are tools that attorneys use to get

7  information from one another; discovery devices.  They ask

8  questions and they get answers.

9    She said Ms. Mathura's responses included an answer

10  such as "not applicable," "discovery ongoing," "no documents

11  available."  Now, this isn't a pop quiz, but I'm going to tell

12  you where all those answers are.

13    They are in those black notebooks in front of you

14  marked as "Defendant's Exhibit Notebook."  And those answers

15  would be on Tabs 35, 36, and 37.  And those answers would be

16  in Question Number 3, 9, 12, 17, 15, 21, and 23.

17    Ladies and gentlemen, I want you to use your common

18  sense.  I want you to go back there when you're deliberating,

19  look through and understand that Ms. Mathura did disclose her

20  past medical history, all her accidents, and all her doctors.

21  It just wasn't in the proper order that they wanted it.

22    Additionally, Ms. Elfenbein came here and during her

23  opening she stood in front of you guys and talked about the

24  date of loss in Narita, Japan.  And she said that American

25  Airlines was not in the industry with respect to providing

1  wheelchairs.  She said they're not in the wheelchair business,

2  they're in the airline business.

3       Ladies and gentlemen, use your common sense.  We've

4  all been to an airport.  American Airlines, the defendant, a

5  major corporation.  Airlines domestic, here, in the United

6  States, as well as abroad, providing services to passengers.

7  Of course they would have wheelchair accessibility.  They are

8  in the service industry, and providing wheelchair assistance

9  is part of the service industry.

10      Now, as I mentioned, Ms. Elfenbein said "credibility

11  was the central component to this case."  The plaintiff's

12  credibility, Ms. Mathura.

13      Now, on cross-examination, Mr. Palmer asked certain

14  questions, some of the questions he asked, "Is this your

15  signature?"  She said, "It appears to be."  Now, some may

16  believe that that's grandstanding, being difficult, trying to

17  hide or deal with -- lacking of truthfulness or veracity.

18      However, on redirect when Mr. Parker asked her

19  various questions about various documents and he said, "Is

20  this your signature?"  She answered the same way, "It appears

21  to be."  Why?  Well, let's analyze that.  It's not because

22  she's trying to be untruthful or difficult.  She's a school

23  teacher, a PhD candidate; a very particular, logical

24  individual.  If the question is not phrased correctly, she's

25  going to answer a certain way.  If the question is phrased

THURSDAY, JUNE 25th, 2009

1  correctly, she's going to answer in a certain way.  We saw

2  that throughout direct testimony and cross-examination, as

3  well.

4         In cross-examination, Mr. Palmer went through various

5  discovery documents, flipping back and forth from one

6  interrogatory to another, asking her various questions.  I've

7  already told you where all those answers are located in the

8  defendant's exhibit book.  I don't need to repeat that.

9         The one glaring instance of cross-examination is when

10 he mentioned narcotics and that she failed to disclose

11 narcotics.  Well, she didn't know that some of the medication

12 she was taking was considered a narcotic versus prescription

13 medication.  It's a glaring difference.  She's not a medical

14 physician.

15        So what did Ms. Mathura establish in terms of her

16 testimony?  She came to this jury box -- this witness box and

17 sat over there, most of the time she was standing up, sitting

18 down, standing up, sitting down.  She has pain in her back.

19 And she told you that August 2006, Narita, Japan, she went to

20 Japan for religious reasons.  She was waiting in line.  The

21 line was very long, as it always is at an airport.

22        A gentleman she befriended, by the name of

23 Mr. Collins, was there.  She talked to him.  He was polite

24 enough to say, listen, I'll go to the front and get assistance

25 for you and maybe you can skip the line and get a wheelchair.

1   So he went up front, talked to an American Airlines' agent

2   behind the counter, asked Ms. Mathura to come forward.

3   Ms. Mathura said yes, I would like a wheelchair.  The American

4   Airlines' agent picked up a telephone, and immediately

5   thereafter a wheelchair arrived.

6           The wheelchair was placed behind her.  The attendant

7   across from her who checked in her, invited her to sit down.

8   She went to sit down, the wheelchair was not behind her.  She

9   fell on the concrete floor and injured herself.

10          Now, the person on the other side of that table is an

11  American Airlines' employee, an agent of American Airlines.

12  The defendant, wearing an American Airlines' uniform.  And she

13  picked up the phone and a wheelchair came.  The person that

14  brought the wheelchair had on the same uniform as the person

15  behind that desk.

16          Now, counsel for the defendant, on cross-examination

17  asked Ms. Mathura, "You didn't see any insignia, did you?"

18  She said "No."

19          "You didn't see a name tag, you didn't get a name,

20  did you?"  She said "No."

21          Ladies and gentlemen, let's use our common sense.

22  American Airlines.

23          (Adjusting microphone.)

24          Hello?  Sorry.

25          This is American Airlines, international territory,

1  on their concourse.  Now, the defendants would have you

2  believe that maybe that person worked for Air Japan, or maybe

3  that person was just an Asian gentleman who was offering a

4  wheelchair right after the American Airlines picked up the

5  phone and requested a wheelchair.  But you can use your common

6  sense.

7        They talk about credibility being the central theme.

8  Well, guess what?  There's a sworn statement, and you can take

9  a look at it.  And that sworn statement in the plaintiff's

10 notebook from Mr. Collins corroborates everything Ms. Mathura

11 said.

12        Mr. Collins -- now, you'd get an instruction later on

13 with regards to sworn statements and deposition testimony to

14 treat it as if that person is in this room testifying, as if

15 that person was beamed into that witness box and spoke those

16 words directly.

17        Mr. Collins said, "In 2006 he assisted Ms. Mathura to

18 front.  She asked for wheelchair service from American

19 Airlines.  The wheelchair came.  The wheelchair was not

20 secured.  She fell on the floor, she injured herself.  The

21 exact same testimony.  Mr. Collins is in Japan.  But he was

22 careful enough to provide us with a sworn statement.

23        Now, there was questions with regards to the

24 production and application, with which Ms. Mathura reported

25 this type of incident.  Well, after she fell on that hard

THURSDAY, JUNE 25th, 2009

1  concrete in Narita, Japan, the person behind the desk came

2  from behind the desk to assist her.  And the person who had

3  the wheelchair also assisted her.  And they put her in the

4  wheelchair.  And this time they secured the wheelchair, and

5  wheeled her off to board the plane, because it was about to

6  leave.

7       While on a plane, you heard testimony from

8  Ms. Mathura that said she talked to a flight attendant, and

9  she said that she was injured.  And she traveled from Japan

10 all the way to Dallas, Texas.  As soon as she got off, she

11 reported it in Dallas, pursuant to that American Airlines'

12 agent's advice.  And she reported it to the person on the

13 airlines.  And she reported it to a supervisor in Dallas and

14 an incident report was prepared.  An incident report that on

15 cross-examination opposing counsel asked, "Oh, I see this

16 incident report.  And it says liability.  It says American

17 Airlines.  But nowhere on this incident report does it say

18 that you fell in Narita, Japan."

19       Once again, ladies and gentlemen, I invite you to

20 utilize your common sense.  Look at that incident report.  And

21 I want you to pay close attention to the lines located under

22 "liability."  You will see in line N-3 and N-4, asterisks,

23 little asterisk going across -- underneath that.  Those are

24 left blank.  And there are asterisks underneath that.

25       What do you think was in those positions where the

THURSDAY, JUNE 25th, 2009

```
 1   asterisks were?  Use your common sense.  She was injured as a
 2   result of the negligence of the defendant, American Airlines.
 3           She reported it, sought treatment.  She was treated
 4   by Dr. Rudolph.  And we'll talk about Dr. Rudolph a little bit
 5   later on.  But, first, let's talk about Dr. Nordt.
 6           Dr. Nordt came in here and got in the witness box,
 7   and he said he prepared an independent medical examination, an
 8   IME.  Testimony revealed that the IME was for a duration of 35
 9   to 40 minutes.  Ms. Mathura, on direct examination, said she
10   waited outside the doctor's office in the waiting lobby longer
11   than he examined her.
12           And he utilized his tool and he kicked her knee and,
13   you know, he said, Oh, you know what?  Malingering.  I think
14   you're faking here.  I don't think anything's wrong with you.
15   I think you have heightened your injuries.  And he wrote down
16   an impairment rating.  And you know what he wrote down?  He
17   wrote down a big fat zero.  And he said Ms. Mathura, a
18   50-something-year-old woman, she needed to condition herself.
19   She needed to strengthen her abs.  It was a result of poor
20   conditioning.  And she's a little bit overweight, also, okay?
21   That's what he wrote down.
22           And on cross-examination, Mr. Parker asked Dr. Nordt,
23   what type of imaging did he rely on in his evaluation?  Static
24   x-ray?  No.  MRI?  No.  CT?  No.  Digital motion x-ray?  No.
25   He did not perform any imaging, yet he provided an impairment
```

1  rating of zero.  An agent of American Airlines who came here

2  to testify on behalf of American Airlines, paid by American

3  Airlines, to get in this witness box, gave Ms. Mathura an

4  impairment rating of zero.  Let's think about that.  Let's

5  analyze that.  You have Dr. Nordt's independent medical

6  examination report.  Look at it when you go back in your

7  deliberation.  Use your common sense.

8         Now, the next witness to come in was Dr. Hall, a

9  board-certified neurologist; in private practice in Aventura

10  for many years.  Dr. Hall got in this witness box and I asked

11  him about his initial consultation with Ms. Mathura.  And that

12  initial consultation, his first consultation, not his final,

13  his first consultation is located in your Plaintiff's Exhibit

14  Book, Tab Number 5.  I want you to look at it when you go back

15  and deliberate.

16         And in Tab Number 5, Dr. Hall, a board-certified

17  neurologist said he cannot make an assessment without an MRI

18  or -- pardon me -- without imaging.  He could not make an

19  initial assessment without proper imaging, much less a final

20  assessment.

21         Now, Dr. Hall, as I mentioned, in private practice in

22  Aventura, a board-certified neurologist, made an assessment

23  after he received imaging in his final evaluation.  And he

24  looked at those images and he said he received a couple of

25  images, some were of poor quality; he noted that.  Take a look

1    in Tab 5.  And he said from these images, he finds herniation.

2    And with respect to that herniation, he said there's an

3    impairment rating here of 12 percent of the entire body.

4    Ms. Mathura was impaired 12 percent of her entire body based

5    upon the incident that took place in Narita, Japan.

6           Now, subsequent to that, Dr. Livingston came in here.

7    And Dr. Livingston got in the witness box, talked about his

8    credentials, and various things that he has done as far as

9    work history.

10          And Mr. Palmer allowed Dr. Livingston free reign to

11   come over here in the jury box and put up what's called an

12   "x-ray box."  He plugged that in the wall, and he put up three

13   x-rays, boom, boom, boom.  And he pointed at them and he says,

14   listen, this is from this date, this is from this date, and

15   this is from another date.  And they're, essentially, the

16   same.  And I think there's nothing wrong with her.  This is a

17   little gray, this is white.  This is white here.  This shows

18   this.  She has atrophy; nothing wrong with her.

19          And I challenged him as an expert.  I objected.  I

20   said, "No foundation for him to be an expert."  And I was

21   allowed by this Honorable Court the opportunity to voir dire

22   Dr. Livingston.  I came over here and asked him various

23   questions regarding his education.  And I asked him about

24   digital motion x-ray.  I said, "Dr. Livingston, are you

25   familiar with DMX?"  And he said "DMX?"  What are you

1   referring to, Mr. Crooks?  He didn't call me 'Mr. Crooks,' but

2   he said, "What are you referring to?"  And I said, "Digital

3   motion x-ray, you know?  X-ray that has digital motion fused

4   with fluoroscopic x-ray so you can see the spine bending.

5           And this isn't cutting-edge technology, ladies and

6   gentlemen.  This is something readily available used in the

7   field of imaging.  Digital motion x-ray.  And I asked him,

8   "Have you utilized it in your practice?"  He said, "No."

9   "Have you utilized it in any areas with respect to the areas

10  that you have privileges at?"  He said, "No."  "Have you

11  utilized it in your analysis that you put forth before the

12  jury?"  And he said, "No."

13          Now, you know the result of what happened.  He said,

14  "Those are still photographs.  I didn't rely on DMX."  And

15  they were admitted into evidence.

16          Now, ladies and gentlemen, the defendant is American

17  Airlines.  They've come in from opening day, provided a nice

18  chart, preprinted chart.  They have, here, various

19  technological tools at their disposal.  The ELMO machine they

20  utilized, projector, overtop projector.  Top-of-the-line

21  computer.  Top of the line --

22          MR. PALMER:  Judge, I would object.  This is economic

23  disparity.  It's argument.

24          THE COURT:  Counsel, let's move along.

25          MR. CROOKS:  I will, Your Honor.

THURSDAY, JUNE 25th, 2009

1        However, the opinion of an expert to come in here

2   with an x-ray box and still photography, in fact, while

3   Mr. Palmer allowed the good doctor to go through the x-rays,

4   he said, "I wish I had brought the disk and the computer, you

5   could have seen it better."  That's what he said.  I was right

6   here, in this chair.

7        Why didn't he bring the computer?  Why didn't he

8   bring a disk?  Why didn't he utilize technology with respect

9   to still photographs?  That would be like utilizing an expert

10  who uses tape cassettes instead of a CD or an iPod.  An

11  expert who would utilize a typewriter instead of a computer.

12  Seriously?  Use your common sense, ladies and gentlemen.

13  Still photography?

14        And on cross-examination I asked that doctor, "You

15  were obtained by American Airlines to testify today."  He

16  said, "Yep."  "And American Airlines paid you for your

17  testimony?"  He said, "Yep."  Let's use our common sense in

18  our analysis.

19        After that Dr. Rudolph came in.  And I had

20  Dr. Rudolph over there and I went through various documents.

21  Dr. Rudolph said $14,000 in medical bills.  He has treated her

22  for 64 visits, 14 grand.  And I went through various things

23  that he did, electro-stem, and I had him explain it to you.

24  And he said that he used the MRI in the analysis.  And I said,

25  "Use the MRI?  He said, "Of course."  Like, of course he used

1    an MRI in his analysis.

2          However, defendant's independent medical examination

3    did not use any imaging.  Did not rely on an MRI for a zero

4    impairment rating.  Why?  Think about that.

5          Opposing counsel would have you focus more on

6    interrogatories, on questions and answers, on things that

7    weren't disclosed.

8          THE COURT:  Counsel, at your request, you have ten

9    minutes left.

10         MR. CROOKS:  Thank you, very much, Your Honor.

11         Ms. Elfenbein, as I mentioned, said this case was

12   about credibility when she started.  This case isn't about

13   credibility.  This case is about responsibility.  American

14   Airlines and their corporate responsibility towards its

15   passengers.

16         They have a responsibility towards its passengers.

17   In plaintiff's exhibit, you'll see that Ms. Mathura was a

18   passenger of American Airlines.  There's a boarding pass with

19   respect to Mr. Collins, who was also a passenger of American

20   Airlines.

21         They had a duty; they breached that duty.  That duty

22   caused injury, direct and proximate cause to Ms. Mathura.  And

23   she sustained damages as a result of that injury.  Damages

24   would be medical expenses, lost wages, pain and suffering,

25   loss of future income.

THURSDAY, JUNE 25th, 2009

1         As I told you on Monday, Mr. Parker gave you an

2    outline, and he followed that outline.  He provided testimony,

3    live testimony with respect to various treating physicians.

4         Now, on the defense side, they read the treating

5    physician's records into us -- into the record last night.  At

6    5:00, they read three physicians into the record through

7    deposition.  And we sat here, we listened to Mr. Palmer ask

8    Ms. Elfenbein questions regarding the deposition that were in

9    the deposition transcript.  And as I mentioned earlier, I'm

10   not going to instruct you with respect to that, this Honorable

11   Court will provide you jury instructions.

12        However, their treating physicians weren't available

13   for the plaintiff to cross-examine.  There was no

14   opportunity --

15        MR. PALMER:  Objection, Your Honor.  That's improper.

16        THE COURT:  Sustained.  That's improper argument,

17   Counsel.

18        MR. CROOKS:  I will withdraw that, Your Honor.

19        Another focus was sympathy.  Ms. Elfenbein said this

20   case is about credibility; also, we're looking for sympathy.

21        Ladies and gentlemen of the jury, Ms. Mathura,

22   myself, and Mr. Parker are not here for sympathy.  We're here

23   for justice with regards to the events that took place in

24   Narita, Japan, on 2006.

25        Was the defendant, American Airlines, negligent?

1   Yep.  Did they breach a duty of care to Ms. Mathura?  Yes.

2   Was that breach the direct and proximate cause of

3   Ms. Mathura's injuries?  Yes.  That is negligence.  And how

4   negligent are they?  100 percent negligent.

5           Ladies and gentlemen, I want you to utilize your

6   common sense, think about what's going on here.  This case is

7   not about whether Ms. Mathura answered a bunch of

8   interrogatories correct here and there.  I've already given

9   you the answers to all those questions.  This case is about a

10  serious injury, in which the defendant, American Airlines,

11  needs to take responsibility.

12          Thank you.

13          THE COURT:  Okay.  I'll let the members of the jury

14  stretch, stand up and stretch for a minute, before we go to

15  the defendant's closing.  And I'll let the defendant get set

16  up.  And I can see Counsel at sidebar for a moment?

17    (Sidebar discussion on the record as follows:)

18          THE COURT:  While everybody is stretching, I just

19  thought I would mention, Mr. Crooks, you didn't talk about any

20  specific amounts of future medical expenses or past medical

21  expenses or anything like that.  And that's fine.  I just want

22  to let you know, I'm not going to let you make arguments in

23  rebuttal for the first time without letting the defense an

24  opportunity to rebut it.

25          I don't know that you're planning on that.  I just

1  thought as long as we are taking a short recess, I would point

2  that out.   And if you want to use up some of your remaining

3  time, if you intend to use, like, detailed charts and so

4  forth, that's not rebuttal, that's your case-in-chief, the

5  amount of your damages and how it's calculated.   I'm not going

6  to let you sandbag the defense.   I've had this happen before

7  and I'm not -- I don't want to go back and forth.   So I don't

8  know what you have planned, I just saw a bunch of charts and

9  demonstrative exhibits.

10         Now, obviously, if you want to rebut, you can rebut.

11  But if they don't get into it, you're not going to be able to

12  come back in your rebuttal closing and get into things for the

13  first time.   You were very vague and very general.   That's

14  fine.   I don't have a problem with that.   I just want to let

15  you know now, so we don't have an argument at the end of the

16  case and I don't have to interrupt you.

17         MR. CROOKS:   I appreciate that, Your Honor.

18         MR. PARKER:   I'm going to use the last 20 minutes.

19  I'm going get into stuff that she testified to.

20         THE COURT:   Well, she didn't testify --

21         MR. PARKER:   Well, Ms. Mathura, in the

22  interrogatories and also in the --

23         THE COURT:   I mean, I don't know what you're going to

24  argue.   I'm just saying that rebuttal is to rebut what the

25  defendant says.   It's not to raise new things.

THURSDAY, JUNE 25th, 2009

1            MR. CROOKS:  Okay.

2            THE COURT:  So I just want that clear.

3            MR. PALMER:  I would take the position, since they

4    have closed the beginning of their closing statement, and did

5    not go into areas pertaining to amount of damages and loss

6    amounts --

7            THE COURT:  Lost wages, medical expenses?

8            MR. PALMER:  -- that has been waived.  And if I don't

9    bring it up, I'm going to take the position that they can't

10   come back in rebuttal and rebut that.

11           MR. CROOKS:  Well, yes, I would like to continue to

12   use --

13           THE COURT:  You did.  You have some additional time

14   left.  If you want to take that time, then you can take that

15   time.

16           MR. CROOKS:  I would like to take the time, Your

17   Honor.

18           THE COURT:  And I use my discretion to do that

19   instead of using my discretion to let them do it on rebuttal

20   and letting you have an opportunity to go back and have a

21   surrebuttal.

22           MR. PALMER:  Very nice of you.

23           MR. CROOKS:  Thank you, Your Honor.

24           MR. PARKER:  Thank you, Your Honor.

25           THE COURT:  So you will have about five minutes.

THURSDAY, JUNE 25th, 2009

1    Mr. Crooks will have about five minutes, okay?  Thank you.

2        (End of sidebar discussion.)

3           THE COURT:  Okay, ladies and gentlemen, after

4    conferring with Counsel, he has about five minutes left on his

5    opening closing.  And I'm going to let him go ahead and use --

6    go ahead and use that before we get to the defense closing.

7           MR. PALMER:  Your Honor, can I move?

8           THE COURT:  Yes, you can move so that you can see.

9        (Pause.)

10          MR. CROOKS:  Your Honor, is it possible to have

11   Mr. Parker hold the exhibit?

12          THE COURT:  Yes, certainly.

13          MR. CROOKS:  Thank you.  Continued.

14                  CLOSING STATEMENT CONTINUED

15          MR. CROOKS:  Ladies and gentlemen, we talked about

16   duty, breach, causation, and damages.  Now I'm going to talk a

17   little bit more with respect to those damages.

18          Ms. Mathura testified and it was corroborated by

19   various doctors, there are medical and hospital expenses:  .

20          DPI, $1,700.  Dr. Munoz, $135.  Dr. Rudolph, $14,000.

21   Dr. Frank, $5,000.  Dr. Hall, on direct testimony talked about

22   various surgeries that would estimate about $30,000.  Talked

23   about discectomy, electronic disc procedure, all of which were

24   $30,000.

25          Future expenses and medication, surgery, medication,

1   $10,000.  Future expenses totaling $600,000.

2        We also talked about an element of mental and

3   physical anguish, known as pain and suffering.

4        American Airlines, a major corporation, we ask for

5   $10 million.

6        Net loss wages from the date of loss to the date of

7   trial, Ms. Mathura, PhD candidate, out of work for three years

8   as a result of this injury.  Prior to that, she made

9   $49,500.00 a year.  Multiply that times three, that's

10  $150,000.00 lost wages.

11       Net lost wages, benefits, with respect to future

12  earnings.  She's 53 years old.  She'll retire at 65.  She has

13  a 12 percent impairment rating of her entire body, 12 percent

14  of her entire body.  Calculate $49,500 with respect to that

15  life expectancy and work expectancy up to age 65.

16       I mentioned responsibility, corporate responsibility,

17  duty, breach, causation, and these are the damages, ladies and

18  gentlemen, that Ms. Mathura suffered as a result of her date

19  of loss in Narita, Japan, in August 2006 up until present day.

20       Thank you.

21       THE COURT:  Okay.  Thank you.  And I'll let the

22  defense -- I'll recognize the defense for purposes of closing

23  argument.

24       MR. PALMER:  You can leave that there, I'll use it.

25                    CLOSING STATEMENT

 1            MR. PALMER:  If it pleases the Court.

 2            Good morning, ladies and gentlemen of the jury.

 3            This is my last chance to talk directly to you.

 4    I've -- after I sit down, I can't get back up.  This is the

 5    opportunity that I have to try to go over the evidence with

 6    you.  And I'm allowed to draw reasonable inferences and

 7    discuss conclusions that might be drawn from the evidence

 8    presented.

 9            I've been given an hour to go over this.  And when I

10    first thought about closing, I thought, no way that I could

11    talk about this case for an hour.  But after sitting over

12    there quietly and listening to what occurred in the first half

13    of closing arguments, and a demand for $10 million on this

14    case, it -- I'm not saying I'm going to talk for the whole

15    hour, but it makes me just want to go over the facts in such

16    detail and make sure that when Ms. Elfenbein and myself are

17    discussing the case and the facts as they are, that we are

18    clear in what has occurred, not only in this courtroom, but in

19    this litigation.

20            A couple of things that were said in the plaintiff's

21    closing statement I want to address right off, so I don't

22    forget them later.  The first is that there was some evidence

23    in this case, number one, of the wheelchair being brought to

24    Ms. Mathura by someone from American Airlines.

25            There was a reference to Mr. Collins' affidavit

THURSDAY, JUNE 25th, 2009

1  saying that.  Mr. Collins' affidavit doesn't say that.

2  Mr. Collins' affidavit doesn't even mention who brought the

3  wheelchair.  Doesn't even say that he saw the wheelchair be

4  brought out.

5         The other reference that was made in closing was that

6  there's some evidence of the wheelchair not being secured.

7  Now, there's no evidence of that.  Mr. Collins doesn't say it.

8  The plaintiff certainly didn't say the wheelchair wasn't

9  secured.

10        Ladies and gentlemen, based on the demeanor of the

11  plaintiff in this case, the complete lack of credibility that

12  she has, the complete lack of forthrightness that she showed

13  in this courtroom, the misleading answers, the deceiving

14  answers, the hiding of evidence -- and, in fact, you're even

15  going to get a jury instruction which talks about the

16  destruction of a critical MRI film that was done in 2005

17  shortly before this incident.  That you're allowed to draw an

18  adverse inference from that, and I'll get into that later.

19        But based upon the way the plaintiff has conducted

20  herself in this courtroom, the way her attorneys have

21  conducted themselves in this courtroom, putting forth this

22  case, I would submit to you, as reasonable-thinking human

23  beings, that you have the absolute right to reject entirely

24  her case, her claim, her theory of how this accident occurred.

25        You're going to be given instructions by the Court

THURSDAY, JUNE 25th, 2009

1  after closings are done.  And these instructions talk about

2  some of the items that I'm going to discuss in my closing.

3  Page 4 of the instructions talks about credibility of the

4  witnesses.  And this is what the Judge is going to instruct

5  you.

6          In deciding whether you believe or do not believe a

7  witness, I suggest that you ask yourself a few questions.  Did

8  the witness impress you as one who was telling the truth?  Did

9  the witness have any particular reason not to tell the truth?

10 Did the witness have a personal interest in the outcome of the

11 case?  Did the witness seem to have a good memory?  Did the

12 witness have the opportunity to observe the events that she

13 talked about?  Did she understand the questions and try to

14 give deceiving answers?

15         I ask you -- or I submit to you that what occurred in

16 this courtroom during cross-examination of the plaintiff was

17 entirely that.  She did everything possible in this courtroom

18 and in discovery, when we were asking her questions, to hide

19 the truth from us.  And when I say "us," I am talking about

20 all of us.  Our mission here, as functionaries of the judicial

21 system in our country, is to seek the truth.  That's our

22 mission.  In fact, there are courtrooms throughout the city

23 that have that banner above the bench.  We are here to seek

24 the truth.  That's what this is.

25         So when the case was filed, from the outset of this

THURSDAY, JUNE 25th, 2009

1    case, when we sent our initial questions to the plaintiff,

2    tell me about your case.  Have you ever been injured before?

3    Have you made other claims?  That original set of answers, and

4    it's in Tab 35, I discussed it.  You probably thought I was

5    beating a dead horse.  And I kept going back to them because

6    it's so amazing that despite the fact that she had five

7    lawsuits, four claims, back injuries going back to 1996, she

8    denied it.  It's unbelievable.

9           The level of deception is at an all-time high in this

10   matter.  We asked for better answers.  You know, as attorneys,

11   we're allowed to serve subpoenas.  And that's one of the

12   functions that attorneys -- one of the good things about being

13   an attorney sometime, is someone tells you a lie, you're

14   allowed to go out and you serve a subpoenas and you get their

15   medical records and you get the health insurance records and

16   it leads to, you know, "A" leads to "B" and "B" leads to "C,"

17   and, finally, you start getting the truth.  You have to pull

18   it out and you extract it, and that's what we did in this

19   case.

20          And through that process of wringing it out, tearing

21   it apart, and finding out what this was about, we finally got

22   to the point where we said, ma'am, you're not being honest

23   with us, give us better answers.  And through the powers of

24   the Court, judicial intervention, she was required to give us

25   better answers.

THURSDAY, JUNE 25th, 2009

1          So for them to come into this courtroom now and tell

2    you with a straight face, that, oh, it's all in the

3    interrogatory answers, that is just an utter, complete

4    falsehood.  Nothing was given to us.  She denied claims.  She

5    denied back injuries.  She denied other lawsuits.  It's all in

6    those answers to interrogatories.

7          In fact, the dates.  You will see the dates of the

8    interrogatories; all signed under oath.  The first

9    interrogatories are in November of '08.  Those are the worst

10   ones.  Those are absolutely the worst -- the biggest

11   fabrications you'll see in this case.

12         Have you ever injured the part of the body before

13   that you're claiming was hurt in this case?  No.

14         You sat here for three days and heard nothing about

15   testimony from doctors who have treated her since 1996.  List

16   the physicians who you have seen over the last ten years.

17   "Unknown."

18         These are doctors who, two weeks before the incident,

19   two weeks before the incident, were treating her for back

20   injuries in another case.  These are doctors who are giving

21   her epidural injections in her back two months before the

22   incident.

23         Unknown at this time?  Is that a truthful,

24   forthright, honest answer?

25         This is another good one here.  This is the classic.

1  Have you ever injured the body part which is the subject

2  matter of this litigation?  See medical records.

3       And I know we spent a lot of time on this.  It was

4  torturous asking these questions.  Is that your signature on

5  the affidavit?  Remember the affidavit?  She filed an

6  affidavit in this case claiming -- after going through this

7  process of trying to get the truth and trying to find out

8  about her prior injuries, and she puts "see medical records."

9  We're forced to file motions with the Court to get the answer

10  to get the records.  What happens then?  She files an

11  affidavit saying those records which contained all this

12  information were lost in a hurricane.

13       Is that credible evidence?  Is anything that came out

14  of her mouth on the stand in the interrogatories credible?  I

15  suggest to you that it is not.  There's not one honest, one

16  truthful thing that went on in this courtroom that came out of

17  her mouth.

18       Never, never in discovery -- you can look at all

19  three sets of interrogatory answers.  The original answers,

20  the supplemental answers, and the second supplemental answers.

21  Not once did she list Drs. Wilensky, Dr. Gelbard, and

22  Dr. Rosen.  Those three doctors, who saw her, treated her for

23  years, gave her disability ratings, kept her out of work for

24  medical reasons, supplied her with drugs for pain medication

25  reasons, nowhere in any of her discovery answers will you find

1    their names.

2            The litigation strategy in this case of the plaintiff

3    was to file a lawsuit, hide everything, tell the defendant

4    that as a result of some incident which occurred in '06 that

5    she had back pain, and then you have to come to trial and try

6    to convince you.  It doesn't work that way.

7            One of the things that happens along the way after

8    filing of the complaint to the time you get into a courtroom

9    is you, in addition to subpoena power, attorneys are given the

10   ability to take depositions.  When you take a deposition, as

11   the Court instructed you, you're put under oath.  It's as if

12   you're in the courtroom.

13           So when I pick up the deposition and I impeach her

14   with it and say, well, you said this in your deposition or

15   you're giving different testimony now, it's as if she was

16   sitting in here.

17           So her answers that she gave, for instance, the

18   answers she gave me in which she said "the back injury started

19   in '04, and the neck injury started in '05, that's as if she's

20   sitting in here.  Despite this -- but this was done back in

21   January of '09.

22           Since January of '09, we've now learned, all of us

23   collectively in the system, you, defense counsel, the Court,

24   we've all learned that that's not true.  That's not credible.

25           When we asked her in her deposition, did you ever

1  have an epidural prior to the date of the accident?  Only from

2  my baby.  We now know that was a falsehood, as well.

3        When she says in her deposition that as a result of

4  the incident we're talking about, I lost work.  Is there a

5  bigger whopper told in this entire courtroom than that one?

6  She hasn't worked since March of 2005.  This accident happened

7  on August of 2006.  You will see, as an exhibit, a letter

8  terminating her from employment dated June of 2006, before our

9  accident.

10        I'm going to get into it in a little bit more detail

11  later, but you're also going to see in this case that during

12  the pendency of our litigation, her lawsuit against American

13  Airlines, she's proceeding on a separate litigation track on a

14  totally different matter; and that is, this March 1st, 2005,

15  incident.

16        When you think about -- I try to draw the analogy or

17  try to picture in my mind what's going on, I think of two

18  different railroad tracks beside each other.  The American

19  Airlines case is on one.  And she's got a totally separate

20  track going, which is her workers' compensation case.  She was

21  hoping, I submit to you, based upon her answers to discovery,

22  her answers in deposition, and her total lack of candor with

23  all of us, she was hoping that we would never learn about this

24  other incident.

25        But, unfortunately -- or, fortunately, we have.  So I

1   would submit to you, that based on her lack of candor with the

2   tribunal that she -- her version of events is not to be bought

3   in this matter.

4          One of the items that the plaintiff talks about as

5   being proof that something occurred in Japan, is their

6   exhibit, I think it's Number 9, the alleged incident report

7   which we talked about yesterday.  It is a blank.  You all saw

8   it yesterday.  It's not -- it's not an incident report, I

9   submit to you.  It doesn't have any information about anything

10  on it.

11         The plaintiff's two doctors who were seeing her prior

12  to the date of the incident, Dr. Munoz and Dr. Frank.

13  Dr. Munoz, again, this is the doctor who is treating her for

14  pain management as a result of the 2005 workers' compensation

15  incident.  He's asked in his deposition, did she tell you

16  about -- you saw her before the accident and after the

17  accident, Doctor.  You saw her on September 15, 2006.  That's

18  two weeks after the incident in question.  On this day, did

19  she advise you she had been involved in an accident two weeks

20  early?

21         "Not to the best of my knowledge, no."

22         "During this date, she didn't relate to you two weeks

23  earlier she had fallen from a wheelchair at the check-in

24  counter at American Airlines?"

25         "I don't know about that.  I don't have it anywhere."

THURSDAY, JUNE 25th, 2009

1          "If she would have relayed that an accident occurred

2     that caused her injury, would you have written that down in

3     your notes?"

4          "Yes."

5          Then the testimony we read yesterday, was -- had us

6     talking about -- okay, she didn't tell you about the accident,

7     but, you know, another thing if her medical condition had

8     changed, then maybe -- he, maybe, missed it.  But the

9     deposition continued, "How is her medical condition compared

10    to August when you saw her?"  "It was the same."

11         Again, shedding doubt on the fact that anything

12    occurred on August 30th, 2006.  Anything major.

13         Dr. Frank, the other doctor who was treating her.

14    Again, now, that doctor -- I keep coming back to this point

15    because being a practitioner and doing what I do, I keep

16    coming back to this point because it's unbelievable.

17    Dr. Frank and Dr. Munoz, she didn't even tell us about these

18    guys and they're treating her for back injuries two weeks

19    prior to the date of the incident.  It's amazing.

20         I submit to you that you ought to be outraged because

21    of that type of conduct.

22         Mr. Frank, same questions.  You saw her before the

23    accident, Doctor, you saw her after the accident; anything

24    change?  No.

25         And even in her -- in the records of Dr. Frank, she

1  even signed those records.  That makes it even more

2  interesting.

3       She's signing the bottom of the records of Dr. Frank,

4  indicating that she agrees with the content.  So you'll see

5  the one in the exhibit binder that's before the accident,

6  August 15th, you will see the one that's after, it's September

7  15th.  Any change in the medical condition?  No.

8       Any mention of the accident?  No.

9       I submit to you, if someone is involved in an

10 accident, if someone is hurt, if someone had a catastrophic

11 injury, a $10 million injury, don't you think that one of the

12 first things you're going to do is tell the doctors who have

13 been giving you back injections, who have been treating you

14 for pain, that you've been involved in an accident?

15      I submit to you that the lack of information in

16 Dr. Frank's records, the lack of information in Dr. Munoz's

17 records, makes it more likely than not that it didn't happen.

18      The plaintiff wanted to talk in his closing about

19 Dr. Nordt, didn't read the MRIs, he's wrong.  Well, Dr. Nordt

20 has been a spine orthopedic surgeon for 35 years.  He's

21 practiced before MRIs even came out.

22      And the reading of the MRIs, I think Dr. Livingston

23 who came in, Yale-educated radiologist who works in the trauma

24 department at the one of the largest hospitals in South

25 Florida.  I think his version -- his take on the MRIs is

1  fairly clear.  You got one before the incident, you got one

2  after the accident, there's no change; therefore, there's no

3  injury.  I think that was pretty clear and convincing evidence

4  from a very credible physician.

5       And the plaintiff's right.  The plaintiff is right

6  about this.  As a defendant in litigation, I don't have the

7  same ability to pick who I -- who she treats with.  I have to

8  go out and I have to find and I have to hire someone.  That's

9  absolutely right.  I am forced to do that in a situation like

10  this.  I've got to go out and find somebody to look at the

11  records, to look at the MRIs.  Otherwise, what would happen is

12  that you would get one side of the story.  You would hear the

13  version of events which is coming from over here, which is so

14  not credible, that I wouldn't have the ability to defend

15  myself.  So that's why they make a big deal about me hiring --

16  well, I have to hire them.

17       But look at who we didn't hire.  There are two

18  doctors who I'm going to draw your attention to.  One is

19  Dr. Osborn who saw her upon a referral from the very -- the

20  very chiropractor who came in here and tried to convince you

21  that despite the fact that he's submitting bills to the

22  Department of Victims Compensation, and despite the fact that

23  his first note refers to the March incident, that he was

24  somehow a treating doctor for this incident.

25       If you take Dr. Osborn's deposition, as we read it,

1  his opinions in July of 2005 were the very same opinions given

2  by Dr. Nordt.  Instead, Dr. Osborn said things -- I didn't

3  hire Dr. Osborn.  I don't know Dr. Osborn.  His deposition was

4  read to you.  Dr. Osborn went farther than the doctor I hired

5  to review the records and to examine Ms. Mathura.  He called

6  her "malingering, feigning injury, exaggerating."

7        I have -- American Airlines has no relationship with

8  Dr. Osborn.  This is a doctor who was completely independent

9  and not related to this litigation, doesn't even know about

10 this litigation and that was his opinion.

11       There's another doctor who -- whose records are

12 contained within the evidence binder and his name is Dr. Hyde.

13 Dr. Hyde's records can be found, if you care to look at them,

14 at Tab 21.  We didn't have his deposition, but you have his

15 records.  He performed an examination of the plaintiff in

16 September of '05.

17       Things that Dr. Hyde says are very consistent with

18 what Dr. Osborn said.  He says things such as her gait, the

19 way she walks doesn't make any sense.  You know, there's no --

20 it's nonsustainable is, basically, what he said.  Meaning that

21 at one point in time she'll be limping, another point in time

22 she's not limping.  What that means is when a person -- well,

23 if a person is injured, a person has a neurologic injury, they

24 have a neurologic injury.  It's not like it comes and goes.

25 That's what these doctors are saying when they talk about

1   distraction tests, they talk about nonsustainability, they

2   talk about patterns of pain being in a nonanatomic fashion.

3   What they're all saying is that this is not related to a

4   medical problem.

5          So Dr. Hyde, you can look at his notes, they're in

6   there.  But his opinions are extremely consistent with what

7   Dr. Osborn said and what Dr. Nordt said.  In fact, here's

8   what -- I'll read a little bit of Dr. Hyde.  I have not had

9   the opportunity to review the scans, basically, "based upon

10  the scan, all that I am seeing here appears to be subjective

11  symptom magnification."  That is a note of 9/23/2005.  "Based

12  on my exam I do not see any physical objective findings that

13  can preclude her from working a normal duty job.  No

14  restrictions.  I don't see any evidence of injuries to her

15  from an altercation."

16         So these are doctors who -- I didn't pick these

17  doctors.  And these are doctors who saw her on her own picking

18  or some other else would send them to see her.

19         So when Dr. Nordt comes into the courtroom and he

20  says the same thing as two of her prior treating physicians,

21  they want to make a big deal about him not reading the MRI

22  scans.  But the guy who read the MRI scans is Dr. Livingston

23  and he told you precisely what they said and their relevance

24  to this case.

25         So when I mention that there was a workers'

THURSDAY, JUNE 25th, 2009

1  compensation case which was going down a parallel railroad

2  track to this case, as I discussed with the plaintiff, she

3  filed a workers' compensation claim after the March 1st, '05,

4  incident, she received 55 weeks of payment for her wages.

5  Following the expiration of the 55 weeks' payment, she

6  submitted her claim to the Department of Victims Compensation,

7  and then got another half year in benefits.

8          What happened in the workers' compensation case, and

9  you're going to have it in your binders and you're going to be

10  able to see the full history, the full file.  I think it's

11  Exhibit number 42?  42.  It's a separate -- it won't be in

12  your binders now, but you'll get the whole stack or the whole

13  workers' compensation record when you get into the jury room.

14          MS. ELFENBEIN:  43.

15          MR. PALMER:  43, I'm sorry.  But what you'll see is

16  that she originally settled her workers' compensation case.

17  And then what happened after that is after she settled the

18  case in March of 2006, she appealed.  And she appealed the

19  appeal.  She appealed the dismissal.  And there's numerous

20  documents which she authored which are all extremely

21  interesting reading, when -- and they are in that workers'

22  compensation file.

23          What was going on during the pendency of our

24  litigation, this is still going on, she's trying to convince

25  the workers' compensation board that as a result of the March

1    1st, 2005 incident, her life has been ruined.  She never told

2    them about this incident.  She's trying to convince the

3    workers' compensation board still.  She's been thrown out of

4    court a number of times on this, you'll see this in that

5    binder.  But she's trying to convince them that all of her

6    injuries, all of her pain and suffering, everything bad that

7    has happened to her, that she's totally infirm, is related to

8    the March 1st, 2005 incident.

9         She has filed several motions in that case.  She has

10   filed affidavits in that case.  And I want to show you one

11   here.  This is three months after -- three months after the

12   incident that we're here about.

13        THE COURT:  I think we need to have written

14   instructions for our hand-held microphone.

15        MR. PALMER:  Hello.

16        You got -- okay.

17        This is a motion for extension of time.  It's not

18   real important what it is.  But this is something drafted by

19   Ms. Mathura.  And you see down here that it's got her name.

20   But if you just look at what she's telling this court.  And

21   I'm going to play a segment from an actual hearing she

22   attended, audio segment, and you'll get the impression as to

23   what's going on here.

24        The claimant, and this is the claimant in the

25   workers' compensation case, she's suing her school for

1    benefits.  The claimant is still totally disabled from the

2    violent attack on her person during the work-related crime

3    that occurred on March 1st, 2005.

4        (Phone ringing.)

5           MR. PALMER:  What was that?  Tell them we're busy.

6           Presently, the claimant suffers from posttraumatic

7    stress disorder, major depression, anxiety, cervical lumbar

8    radiculopathy, sacroiliitis, cephalgia, sciatica,

9    osteoarthritis, and chronic pain.  This is written by a lady

10   who doesn't know she's taking narcotic medication.

11          Does that -- it doesn't make sense that the answers

12   you hear in here, the things that they're trying to convince

13   you of, and you see things like this.

14          She goes on and says, "Because of her limiting

15   disability, she needs more time to prepare."

16          Can we play the tape?

17          This is a hearing from August 12, 2008.  It's

18   contained on a CD which is in Tab Number 43, which you'll have

19   when you go back in the jury room.

20          (Audio tape played.)

21          MR. PARKER:  Objection, Your Honor.  May we have a

22   sidebar?

23          THE COURT:  Okay.

24       (Sidebar discussion on the record as follows:)

25          MR. PARKER:  Your Honor, what this seems to be going

1    on is selective quotes, and the quotes broken by the stop.  We

2    don't know what come next.  That's not fair.  It's prejudicial

3    and it's not something that -- it will confuse the jury,

4    because it's obviously missing statements by the stops and

5    then continues.  We are hearing selected quotes.

6          MR. PALMER:  We made all those available to

7    plaintiff's counsel.  He knew it was our exhibit.  And, in

8    fact, even during the portion of the time in the courtroom

9    before I started it, I told everybody exactly what I was going

10   to be doing.

11         THE COURT:  You were going to play excerpts?

12         MR. PALMER:  That's correct.

13         THE COURT:  How many excerpts are you going to play?

14         MS. ELFENBEIN:  I'm on the last one.

15         THE COURT:  You can have rebuttal.  You can play

16   whatever it is you need to play from the hearing.  And you can

17   point out that it's selective and you don't know what came

18   before or came after.  So you'll be able to address that.

19         MR. PARKER:  Thank you, Your Honor.

20         THE COURT:  Okay.  Thank you.

21         (End of sidebar discussion.)

22         THE COURT:  Thank you.  You can continue.

23         (Audio tape played.)

24         MR. PALMER:  Is that it?

25         MS. ELFENBEIN:  That's it.

THURSDAY, JUNE 25th, 2009

1           MR. PALMER:  Okay.  As we indicated, the whole CD is

2     an exhibit.  And if you want to listen to two hours of that,

3     feel free.  But I think -- I submit to you that it is fairly

4     obvious what is going on here.

5           She's appearing before the workers' compensation

6     board and saying the same things that she's trying to convince

7     you of.  That all of her injuries, all of her lost wages, all

8     of her medical bills are related to an incident which occurred

9     March 1st of 2005.  She didn't tell anybody about the '06

10    incident when it occurred.

11          There's no evidence, credible evidence that anybody

12    from American Airlines was ever involved with this incident.

13          Before I close my closing, I want to make a comment

14    upon the chiropractor who came in.  I thought that was the

15    most disingenuous testimony I had ever heard in my career.

16    Here's what we heard:

17          We heard a guy who had submitted a health insurance

18    claim form with a date of incident of March 1st, '05.  Who has

19    an initial evaluation note for an accident which occurred on

20    March 1st, 2005, tell you that a member of the bar, the state

21    attorney's office, called him and told him to falsify a health

22    insurance claim form so that the doctor could get money.

23          Okay.  Let's think about this.  The state attorney's

24    office is going to call a chiropractor and say, hey, send me a

25    falsified insurance form, because I want to give you some of

1   the public's money.  Does that make any sense?

2           Ladies and gentlemen, you're going to go back and

3   you're going to get a verdict form, and it's going to look

4   just like this.  The one blowup I don't have.  But, in any

5   event, the verdict form, sorry -- the verdict form has one

6   question at the top of it.  And that question is:  Do you find

7   from a preponderance of the evidence:  Number 1, that the

8   defendant was negligent in the manner claimed by the

9   plaintiff, and that such negligence was a legal cause of

10  damage to the plaintiff?

11          And your answer can be yes or no.  I submit to you

12  that what we have seen in this courtroom occur, that what we

13  have seen occur in the course of discovery in this case, the

14  pattern of concealment, the pattern of hiding things, the

15  pattern of mistruths, the pattern of openly telling complete

16  fabrications about her medical background, about the incident,

17  compels you -- I submit the evidence would compel you in this

18  case to answer that question, no.

19          With an answer, no, you return to the courtroom, we

20  go about leaving the courtroom, and that's the end of the

21  case, as far as American Airlines is concerned.

22          Just one second.

23          If I was a mind reader, hopefully, I could sit down

24  now.  But I've got to do a service to my client, and that is,

25  I have to mention damages.

THURSDAY, JUNE 25th, 2009

1          I would submit to you that there's not one credible

2    scintilla, ounce, whatever you want to call it, a thread of

3    evidence in this case supporting this claim, at all, as far as

4    liability.  But there's even thinner evidence in this case

5    supporting any damages, I submit.

6          The lost -- first, let me tell you about the lost

7    wages' aspect of this case.  I don't -- I didn't -- I came

8    over, my eyes weren't good enough to read the thing, I saw

9    some big number, and I went over and sat down.  But I think

10   they asked for $150,000 in lost wages as a result of this

11   incident?

12         We went through yesterday in cross-examination.  She

13   had seen this Dr. Kolb, another doctor who we didn't hear

14   from, who knows what he was doing, but we do have his patient

15   information form.  What did she say when she saw Dr. Kolb?

16   Did you miss work as a result of this incident?  No.  Are you

17   missing work in the future as a result of this incident?  No.

18         You know why that -- that may be the only truthful

19   thing that she has done in this litigation.  And you know why

20   that's true?  Because she didn't miss work because she was out

21   of work on a workers' compensation disability, and she had

22   been terminated.  That's why she didn't miss work.

23         Secondarily, she had filed a claim to get lost wages

24   related to the March incident from the Department of Workers'

25   Compensation.  So there is -- the claim for lost wages and

THURSDAY, JUNE 25th, 2009

1    I -- I don't -- sometimes you, I want to use words like

2    "laughable" or "outrageous."  But the claim for lost wages, it

3    doesn't even exist.  You ought to be offended by someone

4    coming into this courtroom and attempting to convince you,

5    attempting to tell you, lying, saying directly to your face

6    that as of August 30, 2006, I was perfectly fine; as of August

7    30, 2006, I was working.  Not credible.

8          The answer back -- the answer back, after being told

9    things which are obviously not true, is to say "no" to Number

10   1 and return your verdict to the courtroom.  That's how you

11   answer back.

12         I thank you for being so attentive.

13         Thank you, Your Honor.

14         THE COURT:  Thank you, Counsel.

15         Rebuttal closing, Mr. Parker?

16         MR. PARKER:  Yes, Your Honor.  Rebuttal.

17                     REBUTTAL CLOSING

18         MR. PARKER:  Good morning, ladies and gentlemen.

19         American Airlines, they hire --

20         THE COURT:  You need to turn your microphone on.

21         MR. PARKER:  Hello?

22         THE COURT:  All right.

23         MR. PARKER:  Thank you.

24         American Airlines, they hired a law firm, and the law

25   firm did their interrogatories.  And they came back and they

1   told you that Ms. Mathura did not answer questions, did not

2   declare lawsuits.  We proved that wrong.  We came -- I came

3   back and Ms. Mathura explained on their exhibit what she

4   disclosed.

5         Credibility?  That is credibility.  She explained

6   everything that they explained did not happen, and she

7   explained it clearly through the Exhibit 36, 37, and 34.

8         Dr. Munoz.  She disclosed Dr. Munoz, all the other

9   doctors.  She explained that she was on the medication.  She

10  took lawful medication, prescribed medication, narcotics

11  medication prescribed by doctors.

12        She may not remember everything.  She has nightmares

13  of the terrible flight from Tokyo to Dallas.  That's what she

14  remembered.  She can't remember everybody.  None of us can

15  remember going to the doctors 10 years, 15 years ago, and the

16  doctor tell you "A-B-C."  You may remember "D."  She has done

17  everything that she needs to do.

18        Somebody yesterday came back and said, was there an

19  incident report?  Of course there was an incident report.

20  There was an incident report made up.  And I want to turn your

21  attention to that incident report that's in your package.

22  Janice Petruska, she works for American Airlines.  It's in the

23  interrogatories.  She called her name on the stand.  And if

24  you go down to the top of this paper, you will see

25  headquarters claim address information, passenger claims only.

THURSDAY, JUNE 25th, 2009

1          You go further down, it says American Airlines, Ft.

2    Worth, Texas, Dallas.  That's where she landed from Tokyo.

3    There's no -- there's no big mystery here.  It's right here.

4    The lady, Janice, wrote her name right here.  So we disclosed

5    of that.  There was an incident.

6          The receptionist, person at the desk that was

7    inputting her information, invited her to sit down in the

8    wheelchair.  Remember that when you deliberate.  That's the

9    cause.  Sit down, Ms. Mathura.  A reasonable person would sit

10   down.  There's no wheelchair there.  Bam.  She hit the hard

11   surface.

12         Hiding.  They got caught.  American Airlines in 2008,

13   they make $23 billion.

14         MR. PALMER:  Objection, Your Honor.  That's

15   completely improper.  I'm sorry.

16         THE COURT:  I'll ask the ladies and gentlemen of the

17   jury, you'll need to rely on your recollection of the

18   testimony and the evidence in this case.

19         MR. PARKER:  Thank you, Your Honor.

20         Ms. Mathura, she explain that she had these lawsuits

21   and she disclose every single one of them.  Don't be fooled.

22         Let's get to what's really the deal, the negligence.

23   The negligence of American Airlines and its agent who invited

24   her to sit on the wheelchair.  She didn't have any other

25   opportunity to avoid it.  She was directed to sit on the

60

```
 1  wheelchair.  You heard the testimony.  And you listened to the
 2  affidavit of Mr. Collins to collaborate all of that.
 3          Now, I'm going to go over some issues that was raised
 4  by esteemed counsel for American Airlines.
 5          American Airlines, a major corporation, do you think
 6  that Ms. Mathura would hide information from American
 7  Airlines?  I think not.
 8          MR. PALMER:  Objection.  Statement of personal
 9  belief.
10          MR. PARKER:  And it's reasonable for any reasonable
11  person to do what they have to do in order to provide
12  information.
13          The affidavit of Ms. Mathura about the Hurricane
14  Wilma in 2005; there's nothing novel about that.  She
15  explained to you, members of the jury, that people lose
16  their -- lost their belongings in that hurricane.  It was
17  devastating.  She didn't hide anything.  Stuff gets lost in a
18  hurricane, it's beyond your control.  That is reasonable.
19          Now, Dr. Nordt.  Review one, cherry-pick report.  He
20  doesn't use MRI and he doesn't use x-ray.  Is that reasonable
21  in this day and age?
22          Dr. Livingston, he doesn't know anything about DMX
23  that would -- may possibly reveal injuries.  He came in here
24  with a box.  I thought it was a fan from the 1980s.  And he
25  plug it up.  I was shocked.  The light come on and he has some
```

THURSDAY, JUNE 25th, 2009

1    still pictures there.  And he said he left the CD and the

2    computer.  Maybe that would reveal something different.  We

3    saw still picture there, this wasn't moving.  I don't know

4    what it was.  He said it was three pictures of Ms. Mathura.

5    Is that reasonable?

6         Now, Dr. Rudolph submit a claim to the state

7    attorney.  If the state attorney asks you to do something, the

8    state attorney represent the great State of Florida, asks you

9    to do something, he was not asking for anything -- the state

10   attorney wasn't asking for anything novel.  Was asking about

11   the 2005 incident in which Ms. Mathura was injured.  And he

12   gave that -- he gave that information to the state attorney.

13   Nothing novel.  That's proper.  He function within the ambient

14   of the law.  This Dr. Rudolph did not do anything irregular.

15        What is relevant in this case?  The responsibility of

16   American Airlines on August 30, 2006.  That is what is

17   relevant.

18        THE COURT:  At your request, Counsel, you have ten

19   minutes.

20        MR. PARKER:  Thank you, Your Honor.

21        Now, we're not going to deny to the jury that

22   Ms. Mathura sustained injuries in the past.  We're not going

23   to deny that.  She testified to that.  She disclosed that.

24   We're not hiding anything.  We're asking for justice.  She had

25   some past experience.

THURSDAY, JUNE 25th, 2009

1          August 30, 2006, having prayed and feeling a little

2    better, came to the airport.  And the negligence of American

3    Airlines' agent caused her to reinjure and caused her to set

4    down on the ground, and sent shockwaves up all injuries of her

5    neck down, flared up.  That is the case.  Let no one fool you

6    about that.

7          Old injuries were resurrected.  And she had serious

8    issue, on 9-1-06 she went to the doctor.  She spent no time

9    dillydallying.  She went straight to Dr. Rudolph, 62 straight

10   visits.  What do you think?  62 straight visits.  What do you

11   think?

12         The reaction of bad injuries, and it got worse as

13   time went on.  A woman almost have her PhD.  She will live

14   until she's 65, maybe longer.  Maybe longer.  She was making

15   $49,500 in 2006, working for the school board.  Have her

16   masters degree.  She's definitely going to make more money in

17   the future.

18         And when she retire at 65, I don't think she would,

19   but if she retire at 65, add up the number, times 12 years

20   from now.

21         You know what that is?  $549,000.  $549,000.

22         MR. PALMER:  Judge, that's outside the scope of my

23   closing.

24         THE COURT:  Overruled.

25         MR. PARKER:  Mental and physical pain and anguish,

1  past and future.  We're talking about past, we were talking

2  about future.  She may live for up to 80 years old or more.

3       The pain that she will have, the nightmares she will

4  have coming from Tokyo reliving that nightmare.  $10 million

5  is not an unreasonable demand.

6       She got a disabled child.

7       MR. PALMER:  Objection.

8       THE COURT:  Sustained.

9       MR. PARKER:  Here's a family of four.

10      MR. PALMER:  Objection.

11      THE COURT:  Counsel, let's move on.

12      MR. PARKER:  Yes.

13      THE COURT:  You can talk about her, but not her

14  family.

15      MR. PARKER:  Mental and physical pain and anguish.  I

16  want you to think about that.  I want you to think about the

17  medical and hospital expense of past and future.  We saw just

18  a little in the interrogatories, but use your common sense.

19  Since then there have been more medical expenses.

20      The future expense we had when we had just the ones

21  you heard about, $600,000.  Just the ones you heard about.

22      Dr. Hall says the surgery in this facility and in

23  most reasonable facilities is going to be $30,000.  She may

24  have more than one, maybe two or three surgeries based on the

25  real bad situation she experienced in August 30, 2006, and the

THURSDAY, JUNE 25th, 2009

```
 1   problems thereafter.  The medical problems.  We know about
 2   this.
 3            In the future, she may not be able to get the kind of
 4   job that she wants because of her situation.  Right now, in
 5   the future, she's a PhD candidate.  She may never finish her
 6   PhD candidate because of the taxing situation involved in
 7   those kind of situations.
 8            THE COURT:  Counsel, at your request, five minutes.
 9            MR. PARKER:  Thank you, Your Honor.
10            Yeah, they presented a high-tech case, and also
11   low-tech case.  You heard a CD played in the computer there.
12   You hear patch.  But, listen, you hear patch statements from
13   Ms. Mathura.  You didn't hear the whole thing.  You may need
14   to listen to that.
15            American Airline ticket agent invited Ms. Mathura to
16   sit down on the wheelchair on August 30, 2006.  That's the
17   cause.  Let nobody fool you.  That is the cause.
18            We may look at interrogatories, discovery tools, and
19   everything else.  But Ms. Mathura answered all the questions.
20   She was in pain when she was testifying, anguish.  She will
21   experience the same anguish and pain in the future.  Justice
22   is all we ask, not sympathy.  Justice.  We're not asking for
23   sympathy.
24            We're asking for justice to put Ms. Mathura back in
25   the position that she needs to be in, in order to function
```

THURSDAY, JUNE 25th, 2009

```
 1   effectively in our community.  That's we ask, ladies and
 2   gentlemen, nothing else.  No sympathy here.  Just justice.
 3   Pure justice.  Pure justice.  Do the right thing.  Do the
 4   right thing.  Go back there, deliberate, and do the right
 5   thing.
 6            Thank you, ladies and gentlemen.  Thank you, Your
 7   Honor.  Thank you, Counsels.
 8            THE COURT:  Thank you.
 9            At this time, ladies and gentlemen, you can stand and
10   stretch.  My courtroom deputy, Ms. Williams, will be handing
11   you a copy of the Court's instructions, so that you can read
12   along while I instruct you.
13            Counsel, is there any reason why we need a sidebar at
14   this time, on behalf of the plaintiff?
15            MR. CROOKS:  No, Your Honor.
16            THE COURT:  Okay.  On behalf of the defendant?
17            MR. PALMER:  No, Your Honor.
18            THE COURT:  Thank you.  Okay.  We can take -- we'll
19   take a brief five-minute recess so that people can use the
20   facilities.  And my courtroom deputy will put the instructions
21   on your chairs, while you take a brief recess.
22       (Jury withdrew from the courtroom at 12:06 p.m.)
23            THE COURT:  For the record, the CSO approached and
24   advised that one of the jurors needed to use the bathroom.  So
25   Counsel is free to, as well.  And when the jury is ready, we
```

THURSDAY, JUNE 25th, 2009

1  will then instruct them.

2         So we'll be in recess.

3     (Court recessed at 12:06 p.m., and proceedings continued

4  as follows at 12:12 p.m.)

5         THE COURT:  If you will bring the jury in.  I assume

6  there's nothing before we bring in the jury?

7         MR. PALMER:  Nothing.

8         MR. PARKER:  That is correct.

9     (Jury enters the courtroom at 12:13 p.m.)

10                    JURY INSTRUCTIONS

11        THE COURT:  Good afternoon, please be seated.

12        I assume you found your package of jury instructions

13 on your seats and, members of the jury, I will now explain to

14 you the rules of law that you must follow and apply in

15 deciding this case.

16        When I have finished, you will go to the jury room

17 and begin your discussions, what we call your deliberations.

18        Consideration of the evidence, duty to follow

19 instructions.  In deciding the case, you must follow and apply

20 all of the law as I explain it to you, whether you agree with

21 that law or not.  And you must not let your decision be

22 influenced in any way by sympathy or by prejudice for or

23 against anyone.

24        The fact that a corporation is involved as a party

25 must not affect your decision in any way.  A corporation and

THURSDAY, JUNE 25th, 2009

1    all other persons stand equal before the law, and must be

2    dealt with as equals in a court of justice.  When a

3    corporation is involved, of course, it may act only through

4    people as its employees.  And, in general, a corporation is

5    responsible under the law for any of the acts and statements

6    of its employees that are made within the scope of their

7    duties as employees of the company.

8            In your deliberations, you should consider only the

9    evidence; that is, the testimony of the witnesses and the

10   exhibits I have admitted in the record.  But as you consider

11   the evidence, both direct and circumstantial, you may make

12   deductions and reach conclusions which reason and common sense

13   lead you to make.

14           Direct evidence is the testimony of one who asserts

15   actual knowledge of a fact, such as an eyewitness.

16           Circumstantial evidence is proof of a chain of facts

17   and circumstances tending to prove or disprove any fact in

18   dispute.  The law makes no distinction between the weight you

19   may give to either direct or circumstantial evidence.

20   Remember, that anything the lawyers say is not evidence in a

21   case.  And except for my instructions to you on the law, you

22   should disregard anything I may have said during the trial in

23   arriving at your decision concerning the facts.  It is your

24   own recollection and interpretation of the evidence that

25   controls.

THURSDAY, JUNE 25th, 2009

1          Credibility of witnesses.  Now, in saying that you

2     must consider all the evidence, I do not mean that you must

3     accept all of the evidence as true or accurate.  You should

4     decide whether you believe what each witness had to say, and

5     how important that testimony was.  In making that decision,

6     you may believe or disbelieve any witness in whole or in part.

7          Also, the number of witnesses testifying concerning

8     any particular dispute is not controlling.

9          Some of the testimony you heard was in the form of a

10    sworn statement or deposition taken before trial.  You are to

11    consider and weigh this deposition testimony as though the

12    witness had testified, here, in person.

13         In deciding whether you believe or do not believe any

14    witness, I suggest that you ask yourself a few questions.  Did

15    the witness impress you as one who was telling the truth?  Did

16    the witness have any particular reason not to tell the truth?

17    Did the witness have a personal interest in the outcome of the

18    case?  Did the witness seem to have a good memory?  Did the

19    witness have the opportunity and ability to observe accurately

20    the things he or she testified about?  Did the witness appear

21    to understand the questions clearly and answer them directly?

22    Did the witness testimony differ from other testimony or other

23    evidence?

24         Impeachment of witnesses.  You should also ask

25    yourself whether there was evidence tending to prove that the

1  witness testified falsely concerning some important fact, or

2  whether there was evidence that at some other time the witness

3  said or did something, or failed to say or do something, which

4  was different from the testimony the witness gave before you

5  during the trial.

6         You should keep in mind, of course, that a simple

7  mistake by a witness does not necessarily mean that the

8  witness was not telling the truth, as he or she remembers it,

9  because people naturally tend to forget some things or

10  remember other things inaccurately.

11        So if a witness has made misstatement, you need to

12  consider whether that misstatement was simply an innocent

13  lapse of memory, or an intentional falsehood.  And the

14  significance of that may depend on whether it has to do with

15  an important fact or with only an unimportant detail.

16        Expert witnesses.  When knowledge of a technical

17  subject matter might be helpful to the jury, a person having

18  special training or experience in that technical field is

19  permitted to state an opinion concerning those technical

20  matters.  Merely because such a witness has expressed an

21  opinion, however, does not mean that you must accept that

22  opinion.  The same as with any other witness, it is up to you

23  to decide whether to rely upon it.

24        Spoliation of evidence.  Independent witness

25  testimony in this matter establishes that the plaintiff was in

THURSDAY, JUNE 25th, 2009

1    possession of the November 10, 2005, lumbar spine MRI as

2    recently as April of 2008.  Plaintiff should have reasonably

3    known that the November 10, 2005, lumbar spine MRI images

4    should have been preserved as evidence in this case.  However,

5    the plaintiff failed to preserve these MRI images.

6         You shall infer that the November 10, 2005, lumbar

7    spine MRI images would have been unfavorable to the

8    plaintiff's position in this case.

9         Burden of proof.  In this case each party asserting a

10   claim or a defense has the responsibility to prove every

11   essential part of the claim or defense by a preponderance of

12   the evidence.  This is sometimes called the burden of proof,

13   or the burden of persuasion.  A preponderance of the evidence

14   simply means an amount of evidence that is enough to persuade

15   you that a claim or contention is more likely true than not

16   true.

17        In deciding whether any fact has been proved by a

18   preponderance of the evidence, you may consider the testimony

19   of all of the witnesses, regardless of who called them, and

20   all of the exhibits received in evidence, regardless of who

21   may have produced them.

22        If the proof fails to establish any essential part of

23   a claim or contention by a preponderance of the evidence, you

24   should find against the party making that claim or contention.

25        Negligence.  Comparative negligence defense.  In this

1  case, the plaintiff claims that the defendant was negligent,

2  and that such negligence was a legal cause of damage sustained

3  by the plaintiff.

4        Specifically, the plaintiff alleges that the

5  defendant was negligent because:

6        (1), the wheelchair did not lock causing it to roll

7  backwards when plaintiff attempted to sit in it;

8        (2), it lacked written warnings;

9        (3), it lacked appropriate safety devices to make it

10  stationary;

11        (4), inadequate testing was performed;

12        (5), there was improper supervision in the use and

13  maintenance of the wheelchair;

14        (6), there was an improper inspection of the

15  wheelchair prior to its use by American Airlines' agents.

16        In order to prevail on this claim, the plaintiff must

17  prove both of the following facts by a preponderance of the

18  evidence.  First, that the defendant was negligent; and,

19  second, that such negligence was a legal cause of damage

20  sustained by the plaintiff.

21        In the verdict form, that I will explain in a moment,

22  you will be asked to answer a series of questions concerning

23  each of these factual issues.  Negligence is the failure to

24  use reasonable care.  Reasonable care is that degree of care

25  that a reasonably, careful person would use under like

THURSDAY, JUNE 25th, 2009

1  circumstances.

2          Negligence may consist either in doing something that

3  a reasonably careful person would not do under like

4  circumstances, or in failing to do something that a reasonably

5  careful person would do under like circumstances.

6          Negligence is a legal cause of damage, if it directly

7  and in natural and continuous sequence produces or contributes

8  substantially to producing such damage.  So that it can

9  reasonably be said that except for the negligence, the loss,

10 injury, or damage would not have occurred.

11         Negligence may be a legal cause of damage even though

12 it operates in combination with the act of another, some

13 natural cause, or some other cause, if such other cause occurs

14 at the same time as the negligence, and if the negligence

15 contributes substantially to producing such damage.

16         If a preponderance of the evidence does not support

17 the plaintiff's claim, then your verdict should be for the

18 defendant.  If, however, a preponderance of the evidence does

19 support the plaintiff's claim, you will then consider the

20 defense raised by the defendant.

21         The defendant contends that the plaintiff was also

22 negligent, and that such negligence was a legal cause of the

23 plaintiff's own injury.  This is a defensive claim.  And the

24 burden of proving that claim by a preponderance of the

25 evidence is upon the defendant, who must establish, first,

1  that the plaintiff was also negligent; and, second, that such

2  negligence was a legal cause of the plaintiff's own damage.

3       In the verdict form that I will explain in a moment,

4  you will be asked to answer a series of questions concerning

5  each of these factual issues.  Finding in favor of the

6  defendant on this defense will not prevent recovery by the

7  plaintiff, it will only reduce the amount of the plaintiff's

8  recovery.  In other words, if you find that the accident was

9  due partly to the fault of the plaintiff, that the plaintiff's

10 own negligence was, for example, 50 percent responsible for

11 the plaintiff's own damage, then you would fill in that

12 percentage as your finding on the special verdict form that I

13 will explain in a moment.

14      Such a finding would not prevent the plaintiff from

15 recovering.  The Court will reduce the plaintiff's total

16 damages by the percentage that you insert.  Of course, by

17 using the number 50 percent as an example, I do not mean to

18 suggest to you any specific figure at all.  If you find that

19 the plaintiff was negligent, you might find 1 percent or 99

20 percent, or any other percent.

21      If the evidence proves negligence on the part of the

22 defendant that was a legal cause of damage to the plaintiff,

23 you should award the plaintiff an amount of money that will

24 fairly and adequately compensate the plaintiff for such

25 damage.

THURSDAY, JUNE 25th, 2009

1           In considering the issue of the plaintiff's damages,

2   you are instructed that you should assess the amount you find

3   to be justified by a preponderance of the evidence as full,

4   just, and reasonable compensation for all of the plaintiff's

5   damages, no more, and no less.

6           Compensatory damages are not allowed as punishment,

7   and must not be imposed or increased to penalize the

8   defendant.  Also, compensatory damages must not be based on

9   speculation or guesswork, because it is only actual damages

10  that are recoverable.

11          On the other hand, compensatory damages are not

12  restricted to actual loss of time or money.  They cover both

13  the mental and physical aspects of the injury.  Tangible and

14  intangible.  Thus, no evidence of the value of such intangible

15  things as pain and suffering has been or need be introduced.

16  In that respect, it is not value you are trying to determine,

17  but an amount that will fairly compensate the plaintiff for

18  those claims of damage.  There is no exact standard to be

19  applied.  Any such award should be fair and just in light of

20  the evidence.

21          You should consider the following elements of damage

22  to the extent you find them proved by a preponderance of the

23  evidence, and no others.

24          (A), medical and hospital expenses, past and future;

25          (B), mental or physical pain and suffering, past and

THURSDAY, JUNE 25th, 2009

1   future;

2           (C), net lost wages and benefits to the date of

3   trial;

4           (D), loss of future earning capacity.

5           Duty to mitigate.  You are instructed that any person

6   who claims damages as a result of an alleged wrongful act on

7   the part of another has a duty under the law to mitigate those

8   damages.  That is, to take advantage of any reasonable

9   opportunity that may have existed under the circumstances to

10  reduce or minimize the loss or damage.

11          So if you should find from a preponderance of the

12  evidence that the plaintiff failed to seek out or take

13  advantage of a business or employment opportunity that was

14  reasonably available under all the circumstances shown by the

15  evidence, then you should reduce the amount of the plaintiff's

16  damages by the amount that could have been reasonably realized

17  if the plaintiff had taken advantage of such opportunity.

18          The plaintiff also has a duty to minimize damages by

19  following the expert recommendations of the physicians.  In

20  other words, a person who has suffered injury by reason of a

21  defendant's negligence is bound to use reasonable and proper

22  effort to make the damages as small as practicable, and to act

23  in good faith to adopt reasonable methods and follow

24  reasonable programs of medical care or treatment to restore or

25  correct the injured condition.

THURSDAY, JUNE 25th, 2009

1         Failure of the plaintiff to make a reasonable effort

2    to minimize damages does not prevent all recovery, but does

3    prevent recovery of such damages as might have been avoided.

4         Life expectancy.  If a preponderance of the evidence

5    shows that the plaintiff has been permanently injured, you may

6    consider the plaintiff's life expectancy.  You may consider

7    all evidence in the case bearing on the plaintiff's own

8    health, age, occupation, and physical condition before and

9    after the injury in determining the probable length of the

10   plaintiff's life.

11        When considering life expectancy in determining

12   future damages, you should bear in mind, of course, the

13   distinction between entire life expectancy and work life

14   expectancy.  And those elements of damage related to future

15   income should be measured only by the plaintiff's remaining

16   work life expectancy.

17        Effective income taxes, recovery of take-home pay.

18        Under the law, any award made to the plaintiff in

19   this case for past or future lost earnings is not subject to

20   federal or state income tax.  Therefore, in computing the

21   amount of any damages that you may find the plaintiff is

22   entitled to recover for lost earnings, the plaintiff is

23   entitled to recover only the net, after-tax income.  In other

24   words, the plaintiff is entitled to recover only take-home pay

25   that you find the plaintiff has lost in the past or will lose

1  in the future.

2        Reduction to present value.

3        If you should find that the plaintiff has proved a

4  loss of future earnings, any amount you award for that loss

5  must be reduced to present value.  This must be done in order

6  to take into account the fact that the award will be paid now,

7  and the plaintiff will have the use of that money now and in

8  the near future, even though the total loss will not be

9  sustained until later in the future.

10        Attorney's fees and court costs.  If you find for the

11  plaintiff, you must not take into account any consideration of

12  attorney's fees or court costs in determining the amount of

13  plaintiff's damages.

14        Duty to deliberate.  Of course, the fact that I have

15  given you instructions concerning the issue of plaintiff's

16  damages should not be interpreted in any way as an indication

17  that I believe the plaintiff should or should not prevail in

18  this case.  Any verdict you reach in the jury room must be

19  unanimous.

20        In other words, to return a verdict, you must all

21  agree.  Your deliberations will be secret.  You will never

22  have to explain your verdict to anyone.

23        It is your duty, as jurors, to discuss the case with

24  one another in an effort to reach agreement, if you can do so.

25  Each of you must decide the case for yourself, but only after

THURSDAY, JUNE 25th, 2009

1   full consideration of the evidence, with the other members of

2   the jury.

3          While you are discussing the case, do not hesitate to

4   re-examine your own opinion and change your mind if you become

5   convinced that you were wrong.  But do not give up your honest

6   beliefs solely because the others think differently or merely

7   to get the case over with.

8          Remember, that in a very real way, you are judges,

9   judges of the facts.  Your only interest is to seek the truth

10  from the evidence in the case.

11         Election of foreperson.  Explanation of verdict form.

12         When you go to the jury room, you should first select

13  one of your members to act as your foreperson.  The foreperson

14  will preside over your deliberations and will speak for you

15  here in court.  And you will be given a form jury note when

16  you go back so that if you need to communicate with the Court,

17  you can use that form jury note that you'll be given.

18         A form of verdict has been prepared for your

19  convenience, and you have a copy of it on your seat.  It

20  should have been behind your instructions.  And I'm going to

21  review it with you now.

22         The verdict form asks a series of questions.  And it

23  begins:

24         "Do you find from a preponderance of the evidence:

25         (1), That the defendant was negligent in the manner

1 | claimed by the plaintiff, and that such negligence was a legal

2 | cause of damage to the plaintiff?"  And there's a place for

3 | you to answer and write in, yes or no.

4 |      Now, if you answered "no" to Question Number 1, you

5 | should not answer the remaining questions.  The foreperson

6 | should sign -- should date and sign the verdict form.  And on

7 | the second page, there's a place for the foreperson's

8 | signature, as well as the date.

9 |      "(2) That the plaintiff was also negligent in the

10 | manner claimed by the defendant, and that such negligence was

11 | a legal cause of the plaintiff's own damage?"  And, here, you

12 | would answer, yes or no.

13 |      If your answer to Question 2 is "no," you will skip

14 | Question 3 and go directly to Question 4.

15 |      If the answer is "yes," you'll go on to Question 3.

16 |      "Question 3:  If you answered "yes" to Question 2,

17 | what proportion or percentage of the plaintiff's damage do you

18 | find from a preponderance of the evidence to have been legally

19 | caused by the negligence of the respective parties?"

20 |      Answer in terms of percentages.  There's a place

21 | where it says "The defendant," and then a place for you to

22 | write in a percentage.  And then a place for you to write in

23 | "The plaintiff" and to write in that percentage.

24 |      Note the total of the percentages given in your

25 | answer should equal 100 percent.

THURSDAY, JUNE 25th, 2009

1          "Question 4:  If you answered yes to Question 1, what

2      sum of money do you find from a preponderance of the evidence

3      to be the total amount of the plaintiff's damages?"

4          Now, in determining the amount of damages, do not

5      make any reduction because of the negligence, if any, of Lorna

6      Beach-Mathura.  If you find that Lorna Beach-Mathura was

7      negligent, the Court, in entering judgment will make an

8      appropriate reduction in the damages awarded.

9          And then there is a list of the four elements that

10     you should consider:

11         (A), medical and hospital expenses past and future.

12     And there's a place for you to fill in a dollar amount.

13         (B), mental or physical pain and anguish, past and

14     future.  And there's a place for you to put in a dollar

15     amount.

16         (C), net lost wages and benefits to the date of the

17     trial.  And there's a place for you to put in an amount.

18         And (D), net lost wages and benefits in the future,

19     reduced to present value.  And there's a place for you to

20     enter a number next to a dollar sign.

21         And then it says, "So say we all."  Because your

22     verdict has to be unanimous, and there's a place for the

23     foreperson to sign and to date the verdict form.

24         You will take the verdict form to the jury room.  And

25     when you have reached unanimous agreement, you will have your

THURSDAY, JUNE 25th, 2009

1   foreperson fill in the verdict form, date, and sign it, and

2   then send me a note which states you have reached a verdict.

3          If you should desire to communicate with me at any

4   time, please write down your message or question, and pass the

5   note to the court security officer who will bring it to my

6   attention.

7          I will then respond as promptly as possible, either

8   in writing or by having you returned to the courtroom so that

9   I can address you orally.

10          I caution you, however, with regard to any message or

11   question you might send, that you should not tell me your

12   numerical division at that time, except, of course, to advise

13   me that you have reached a unanimous verdict.

14          Okay.  Counsel, do you -- I need to see you at

15   sidebar for any issues you might wish to raise on behalf of

16   the plaintiff.

17          MR. CROOKS:  Yes, Your Honor.

18          THE COURT:  Okay.  Then let's go to sidebar.

19      (Sidebar discussion on the record as follows:)

20          MR. PARKER:  Yes, in the abundance of caution, can we

21   give this to you now?

22          THE COURT:  No.  What's going to happen is I'll let

23   the jury go out, their lunch has arrived, and they can begin.

24   And then each side will look at the exhibit notebooks and make

25   sure that they have what you think they have.  And then if

THURSDAY, JUNE 25th, 2009

1   there are any objections, I'll resolve them.

2        And the exhibit notebooks aren't going to go back

3   until the two sides have conferred and agreed that the exhibit

4   notebooks and exhibits should go back.  So you'll have a

5   chance to look at everything they said they want to send back.

6   You look at everything they want to send back.

7        Were there any objections to the instructions as

8   given?

9        MR. CROOKS:  No, Your Honor.

10       MS. ELFENBEIN:  No, Your Honor.

11       THE COURT:  Okay.

12       MR. PARKER:  Thank you.

13       THE COURT:  Thank you.

14    (End of sidebar discussion.)

15       THE COURT:  Ladies and gentlemen, you can now retire

16  to the jury room.  Leave your instructions and verdict form

17  and exhibit notebooks on your chairs.  You can take your own

18  personal notepads that you wrote notes in during the trial,

19  but everything else needs to be left in the courtroom.

20       I'll be sending back to you one set of exhibits, and

21  one set of instructions, and, obviously, one verdict form.

22       So everything except your little notepad that you

23  were taking notes in needs to stay in the courtroom.

24       Ma'am, you need to leave your instructions in the

25  courtroom, too.

THURSDAY, JUNE 25th, 2009

1          (Jury withdrew from the courtroom at 12:40 p.m.)

2                       DELIBERATIONS BEGIN

3          THE COURT:  You can be seated.

4          As I said at sidebar, you can now show each other

5   your respective notebooks that you want to go back into the

6   jury room, as well as the supplemental exhibits that weren't

7   in the notebook on the part of the defendants.

8          My courtroom deputy will show you the jury note, the

9   form that I send back.  It basically has a case style and then

10  a place for them to write, whatever, and signed and dated by

11  the foreperson.

12         And I, generally, send two notes back to them and no

13  more than two pieces of paper for them to write a note on.  If

14  they use that, then I'll send, you know, another one to

15  replace it.  But I don't want to send a whole sheaf of notes

16  and thereby make them feel that they should be sending out

17  notes.

18         So, in any event, is there anything further that I

19  need to do on behalf of the plaintiff, either Mr. Crooks or

20  Mr. Parker?

21         MR. CROOKS:  No, Your Honor.

22         MR. PARKER:  No, Your Honor.

23         THE COURT:  Okay.  On behalf of the defendant?

24         MR. PALMER:  No, Your Honor, we're okay.

25         THE COURT:  Okay.  What I would like you to do is I'd

THURSDAY, JUNE 25th, 2009

1  like you to remain in this general vicinity for just about 15

2  minutes.  And then you can take -- you can go to lunch.  And,

3  you know, I would say, eat a quick lunch because I don't want

4  you, you know, too far away.  But we are about 12:40 right

5  now.  So if you can just stay here, I would just say, until

6  about 12:50.  Sometimes a jury has a real quick question.

7         Then at 12:50, you can go to lunch until about 1:45.

8  And after that, I want you on a 15-minute callback.  So as

9  long as you give my courtroom deputy your phone number, cell

10 phone, some way of reaching you, you can go about your

11 business as long as you can be back to the courthouse within

12 15 minutes after getting a call from us.

13        Any questions about that, or other, you know,

14 alternatives, suggestions, on behalf of the plaintiff?

15        MR. PARKER:  That is quite prudent, Your Honor.

16        THE COURT:  Okay.  And on behalf of the defendant?

17        MR. PALMER:  I agree with plaintiff's counsel.

18        THE COURT:  Okay.  Well, I'll take agreement wherever

19 we can get it.  Thank you.

20        So we'll be -- we'll be in recess until we hear from

21 the jury.

22    (Court recessed at 12:43 p.m., and proceedings continued

23 as follows at 1:50 p.m.:)

24        THE COURT:  Appearances are as previously noted.

25        Counsel, while you were at lunch, we had two notes

1    come in from the jury.

2          The first note, which is signed at 1:15, says "Please

3    provide timeline of lawsuits."

4          The second note says, "Please provide CD player."

5          So let's take the notes one at a time.  And I'll get

6    your suggestions on what the response should be.

7          First, from the plaintiff?

8          MR. PARKER:  Yes, may it please the Court.

9          THE COURT:  And I'm going to just put a Number 1 and

10   a Number 2, just so that we have the order of the notes, I'm

11   adding that to their note, okay?

12         So as to Note Number 1?

13         MR. PARKER:  That would be, please provide timeline

14   of lawsuits?

15         THE COURT:  Right.

16         MR. PARKER:  Your Honor, I believe that whatever

17   lawsuits that the jury is talking about is already provided

18   in --

19         THE COURT:  Okay.  All I want you to tell me is what

20   do you recommend I say to the jury.  I don't need argument

21   right now.

22         MR. CROOKS:  Your Honor, if I may?

23         THE COURT:  Okay.

24         MR. CROOKS:  Sorry.  No.  That's what I would

25   recommend.  That's a demonstrative aid, Your Honor, with

THURSDAY, JUNE 25th, 2009

1    respect to the fact that it was utilized during opening

2    statement.

3            THE COURT:  Okay.  So you're suggesting -- I'm not

4    going to just say no and send it back to the jury.

5            What I will say is, "You must rely only on the

6    exhibits which were admitted into evidence --"

7            MR. CROOKS:  Thank you, Your Honor.

8            THE COURT:  Okay.  "-- and which have been provided

9    to you."

10           Okay.  And so that's what the plaintiff's suggestion

11   is?

12           MR. CROOKS:  Yes, Your Honor.

13           THE COURT:  And what about the defendant?

14           MR. PALMER:  Your Honor, I have the timeline, I would

15   send it back.

16           THE COURT:  And on what theory would you send back

17   something that wasn't admitted into evidence?

18           MR. PALMER:  Well, it's a summary of evidence.  And

19   under the rules of evidence, you're allowed to submit

20   summaries.

21           THE COURT:  I agree with you, absolutely 100 percent

22   that you are entitled, under appropriate circumstances, to

23   have a summary marked as an exhibit and to have that exhibit

24   admitted into evidence; and that if you do so, that exhibit

25   could go back to the jury.

THURSDAY, JUNE 25th, 2009

1        I am unaware of any authority that would allow me to

2   permit a summary used as a demonstrative aid in opening

3   statement that was never admitted into evidence to go back to

4   the jury.

5        I mean, if you know something I'm not aware of, it

6   wasn't -- it could have been.  Any summary could have been,

7   you know, offered and then they would have had a chance to

8   object and we would have -- they would have heard about it.

9        MR. PALMER:  Secondarily, I think the suggestion that

10  you tell them that they are to rely upon the evidence that has

11  been presented would be an appropriate instruction.

12       THE COURT:  So what I'm going to do is, I will

13  simply -- I can write on this note, "You must rely only on the

14  exhibits which were admitted into evidence and which have been

15  provided to you."

16       And I will just write that and then sign it, and then

17  just send the note back into the jury.  I don't see any need

18  to bring them in for that purpose, do you?  On behalf of the

19  plaintiff?

20       MR. CROOKS:  The plaintiff would agree with that,

21  Your Honor.

22       THE COURT:  Okay.  On behalf of the defendant?

23       MR. PALMER:  I would agree.

24       THE COURT:  Okay.  I'm just going to write that on.

25     (Pause.)

THURSDAY, JUNE 25th, 2009

1          THE COURT:  Okay.  Let me ask my courtroom deputy,

2    will you make a copy of this note for both counsel and myself,

3    and then I'll hand the note to the CSO, and he can just take

4    it into the jury.

5          Okay.  Now, with respect to Jury Note Number 2, what

6    is the plaintiff's position?  You, who requested -- told the

7    jury they would be entitled to listen to the entire CD, and

8    you asked that they do so?

9          MR. PARKER:  Your Honor, things have changed.  The CD

10   player may have had -- may have, what you call, information on

11   it that come from external sources that may be accessible on

12   the CD player itself.  It's an electronic device that could,

13   basically, corrupt the disposition of the proceedings in the

14   jury room and that would be prejudicial.

15         I would -- I would say that I did say that the --

16   they could listen to it, but having considered it carefully,

17   at this point, I think it would be prudent to leave whatever

18   they have in there --

19         THE COURT:  Well, there's an alternative, is they can

20   come into the courtroom and we can play the entire CD for

21   them.  And that way -- and thus limit their access to the

22   player.

23         MR. PARKER:  That could be an option, Your Honor, but

24   we would not support that at this time.

25         THE COURT:  So you think that I should tell the jury

THURSDAY, JUNE 25th, 2009

1  that despite the fact we admitted a CD into evidence, which

2  you were invited to listen to, we are not going to let you do

3  it?  Is that the answer you suggest that I write back to them?

4           MR. PARKER:  Your Honor, what was sent back there was

5  a CD.

6           THE COURT:  Correct.  And not for them to look at.

7           MR. PARKER:  Not for them to look at.  It is a

8  slippery slope --

9           THE COURT:  Do we have a transcript of that

10 proceeding?

11          MR. PALMER:  No, Your Honor.

12          MR. PARKER:  It would be good.

13          MR. PALMER:  It is a computer disk.  And I think your

14 suggestion that -- my suggestion to the Court as to what the

15 note should say, you are more than welcome to listen to the

16 entire CD.  However to do so, you must come back into the

17 courtroom and we'll put it up on the -- what do you call it,

18 laptop, and play it for you in the courtroom.  And we'll do

19 that, and they can do it as part of their deliberations,

20 obviously, and attorneys and everyone else will have to clear

21 and vacate the courtroom when that goes on.  I don't have a

22 problem with that.

23          But, I think, that's how we handle the situation,

24 because it's evidence in the case.

25          THE COURT:  Well, I don't think we have to clear the

THURSDAY, JUNE 25th, 2009

 1  courtroom, if all we're doing is playing a CD.  Nobody will be

 2  making any comments.  You know, it will be playing, they'll

 3  listen to it.  When they're finished, they'll retire.

 4       The alternative is to get a computer, a laptop that

 5  has nothing else on it.  I don't know what our computer

 6  department has.

 7       All right.

 8  (Off-the-record discussion, and proceedings continued:)

 9       THE COURT:  There is a possibility we could get a

10  laptop that doesn't have anything on it.  But, of course, it

11  would come preloaded with whatever applications, you know,

12  windows or calculator or, I mean, it wouldn't be connected to

13  the internet, so you wouldn't have internet access, we could

14  have to rely on the jury to not do anything other than play

15  it.

16       MR. CROOKS:  Your Honor.

17       THE COURT:  Yes, Mr. Crooks?

18       MR. CROOKS:  With respect to the information on that

19  CD, opposing counsel has provided a summary in written form,

20  and attached it to that CD.  An alternative would be for Your

21  Honor to instruct the jury to review that summary with respect

22  to any issues pertaining to that CD, instead of having them

23  come back out here and play the entire CD.

24       THE COURT:  I'm not sure what the summary -- I didn't

25  view that exhibit before it went back in the jury room since

THURSDAY, JUNE 25th, 2009

1    it wasn't in my notebook.  It wasn't provided to me before it

2    was -- before it went back.

3         MS. ELFENBEIN:  Your Honor, I'm not aware of any

4    summary.  I'm not sure exactly what opposing counsel is

5    referring to, if they could be more specific.  We received

6    that CD as a certified copy of records from the judge of

7    compensation claim case from their clerk and the CD, itself,

8    has -- only has audio clips.  That's the only thing they

9    provided to us is digital audio clips.

10        MR. CROOKS:  They were attached to various

11   transcripts with regards to that, I believe the CDs were with

12   them.  If I'm mistaken, then I'm mistaken.  But what I saw

13   were various documents that the CDs were attached to.

14        MS. ELFENBEIN:  The CDs were attached to the actual

15   docket, the filings, the motions of the workers' compensation

16   case.  There is -- to my knowledge, those were never

17   transcribed by any kind of court reporting service.  We

18   certainly did not receive that.

19        THE COURT:  And you don't have a summary, it's just

20   the docket sheet.

21        MS. ELFENBEIN:  Well, it's not even the docket sheet.

22   It's a certified copy of the entire workers' compensation file

23   as provided by the clerk from the JCC's office.  And the CD

24   containing any recorded hearings in the case.  That's it.

25        THE COURT:  So -- all right.  Does the CD have

1    various hearings on it?

2         MS. ELFENBEIN:  It has a few hearings on it.  They're

3    identified.  They have, like, a time stamp on them that

4    identifies the hearing.

5         THE COURT:  When you say "they have a time stamp on

6    them," what are you referring to?

7         MS. ELFENBEIN:  The CD, itself, has the time stamp on

8    the file that has the date of the hearing.  And then if you

9    click on it, then the audio plays.  It also has, on the CD

10   that came from the judge of compensation claims clerk, the

11   software that is necessary, because it's a special, I guess

12   court reporter digital software is also on that certified copy

13   of the CD.

14        THE COURT:  So on the face of the CD, itself, when

15   the CD is -- what I'm trying to figure out is, when you have

16   the CD in front of you, what do you see?  Not when you put it

17   in the computer what do you see, but the CD itself?

18        MS. ELFENBEIN:  I believe the CD, itself, came marked

19   with a Sharpie pen that said something like the case name, the

20   case number.  Something along those lines.

21        THE COURT:  So that's all you see on that CD?

22        MS. ELFENBEIN:  By looking at the CD itself, yes.

23        THE COURT:  And you are not aware of it being

24   attached to anything other than a certification that it's a

25   true and accurate copy of the hearing?

THURSDAY, JUNE 25th, 2009

```
 1            MS. ELFENBEIN:  That's correct.

 2            THE COURT:  And, Mr. Crooks, you think it's attached

 3    to something else?

 4            MR. CROOKS:  Yes, Your Honor.

 5            THE COURT:  Do we need to retrieve that exhibit from

 6    the jury room so that we can look at it?

 7            MR. PARKER:  I believe so, Your Honor, since

 8    counselor for the defendant mentioned there that there may be

 9    other cases on it, it could be confusing for --

10            THE COURT:  No, it's -- this case is the only case

11    that's on it.  It's this case, but there are -- whatever

12    hearings there were in this case are on that CD.

13            MR. PARKER:  The CD, the duration of the CD, the

14    length of the CD, if there are other things on it that may

15    be -- have some privilege or -- I don't know exactly what's --

16            THE COURT:  Well, it's all admitted into evidence at

17    this point.  The CD, as a whole, has been admitted into

18    evidence and the CD, as a whole, contains audio recordings of

19    the hearings in the workers' compensation case that pertains

20    to your client.  That's only the thing that's on the CD.

21            And so the issue is, the jury wants us to -- is that

22    the only CD that's been introduced into evidence?

23            MS. ELFENBEIN:  That's correct.

24            THE COURT:  Okay.  I don't know if any of the other

25    records had a CD attached to it.
```

THURSDAY, JUNE 25th, 2009

1           So we have to figure out what to tell the jury.  I

2    mean, it's in evidence, the jury is entitled to examine it.  I

3    don't see how I can tell the jury, yes, this was introduced

4    into evidence, nobody objected to it, you were invited to

5    listen to it, but we're not going to let you do it.

6           Now, the jury may reconsider whether they want to do

7    it when they find out how that is going to occur.  The only

8    thing that I can -- the only thing that I can suggest, and I

9    don't know, is that it be listened to in the courtroom, was

10   the clip.  And I don't know what hearings are contained on the

11   CD and how the jury would even know what the dates of the

12   hearings were on the CD, at this point, which points to the

13   difficulty of introducing such evidence.

14          MS. ELFENBEIN:  The only way the jury would be able

15   to know the hearing dates is they would have to physically

16   look at the screen and see the time stamps that will say for

17   example, 08/12/08, or whatever the date of the hearing may

18   have been.

19          THE COURT:  Okay.  Here's a suggestion.  If we get a

20   laptop that's a brand-new laptop that doesn't have anything

21   other than your basic applications.  And we -- with Counsel

22   present, put the laptop in the jury room, put the CD in the

23   laptop, and open it to that screen, and then instruct the jury

24   that they're not to use the laptop for any other purpose or

25   use any other applications.

THURSDAY, JUNE 25th, 2009

1         Since there's no data on it and there's no internet

2    connection on it, the only thing we would have is, maybe, like

3    a word perfect program or something like that, which we could

4    just say you only -- whenever you want to listen to something,

5    you click the icon and listen to whatever portion of the tape

6    you want to.  I don't know if it's self-explanatory, or not,

7    in terms of how it's used.

8         Or we could bring them back in the courtroom and

9    say -- and just tell them, we cannot provide you with a CD

10   player, the disk needs to be played on a computer.  And if you

11   want to listen to it, we will bring you back into the

12   courtroom and let you listen to the -- listen to the CD, I

13   mean.

14        MR. PARKER:  The second option is more prudent, I

15   believe, Your Honor.

16        MS. ELFENBEIN:  Judge, will they have the option of

17   understanding that there might be multiple hearings so they

18   can select if there's a date that they were interested in?

19        Otherwise, I'll submit to the Court that there are

20   hours of hearings on there.  I think it's probably up to, at

21   least, four hours of hearings.  And I think the jury might

22   want to know that.

23        Yes, the jury can scroll through.

24        THE COURT:  Well, the jury can scroll through it.

25   Except, here in the courtroom, we don't have the ability to

THURSDAY, JUNE 25th, 2009

1   project the computer screen in a location where the jury can

2   view it, unless we first bring the jury back in and say, there

3   are several hearings on the CD, we will bring the CD into the

4   jury room and -- I don't know what computer you have there,

5   if -- do you have a computer there?

6            MS. ELFENBEIN:  We packed it up, but we have it here.

7            THE COURT:  And just say, we will show you a screen,

8   the first screen which lists the hearings, and at that time,

9   you can retire to your -- back to the jury room and determine

10  which of these hearings you want to listen to, and we will

11  play it for you in the courtroom.

12           And that way they will have the opportunity to see

13  the -- to see the screen that shows the hearings.  So there is

14  no other place in which the hearing dates are listed that they

15  can look at back in the jury room?

16           MS. ELFENBEIN:  I mean, they would have to look at

17  the notices of hearing and figure it out based on --

18           THE COURT:  How many hearings are on that tape -- or

19  on that CD?

20           MS. ELFENBEIN:  I think about four, but I'm not

21  positive, Judge.  I haven't looked --

22           THE COURT:  The other alternative is we can advise

23  them, the CD which contains hearings has -- if the parties

24  stipulate, has hearings on the following dates.  If you

25  identify which hearing you want to hear, we will bring you

THURSDAY, JUNE 25th, 2009

1   back in the courtroom and play that hearing for you.

2         MR. PALMER:  That's acceptable, too.

3         THE COURT:  And this way Counsel can look at it here

4   in the courtroom and you can decide.  But you're going to need

5   to unpack your, you know -- or I can let Counsel go out into

6   the attorney conference room, that you've both used next to

7   the courtroom, has a computer in it.  I don't know how hard is

8   it to unpack your laptop.

9         MS. ELFENBEIN:  Just take a minute.

10        MR. PALMER:  Very easy.  We can do it right now.

11        THE COURT:  Do you have another copy of the CD?

12        MS. ELFENBEIN:  No, Your Honor, that's the only CD.

13        THE COURT:  Should we retrieve that exhibit from the

14  jury now so that it can be examined?

15        MR. PALMER:  I would think so, Your Honor.  I think

16  that's the first step.  And then Ms. Elfenbein has the laptop

17  set up and we can just take a minute to --

18        THE COURT:  And which exhibit number is this?

19        MR. PALMER:  43.

20        THE COURT:  43.  Okay.  Mr. Parker, or Mr. Crooks, do

21  you agree we should retrieve Exhibit 43 from the jury at this

22  point so Counsel can examine it?

23        MR. PARKER:  Yes, Your Honor.

24        MR. CROOKS:  Yes.

25        THE COURT:  I'll ask the CSO if you could retrieve

                    THURSDAY, JUNE 25th, 2009

1  Exhibit 43 from the jury?

2          COURTROOM DEPUTY:  Yes, Your Honor.

3          THE COURT:  Okay.  He didn't realize that you had

4  handed me --

5          COURTROOM DEPUTY:  You said you were going to give it

6  to him.

7          THE COURT:  Okay.  So I handed the CSO jury note

8  Number 1, that's being sent back to the jury.  I didn't

9  realize that you had given me the jury's copy, as well as my

10  own.

11      Okay.  Here is the CD which is clipped to the paper.

12  And why don't we all go around the computer so we can look at

13  what happens when we put it in.

14      (Pause.)

15      If you're going to say something on the record, it

16  has to be in the microphone, otherwise just go through it.

17          MS. ELFENBEIN:  Five hearings.  There is a total of

18  five hearings.  And also part of the CD contains the software

19  that the jury needs to put onto whatever laptop or computers

20  they are using in order to hear the audio.

21          THE COURT:  Okay.  Well, what we're going to do is

22  bring the jury back into the courtroom to listen to whatever

23  it is they want to hear.  The issue that I want to deal with,

24  now, is whether we can stipulate to the dates of the -- of the

25  hearings, which I don't know if you need to pull it up, or you

THURSDAY, JUNE 25th, 2009

1    can tell from the file name.  But what I want to do is see if

2    we can tell the jury that the CD contains -- that there is no

3    CD player we can send back into the jury room.  But we will

4    play whatever portions of the CD -- we will play whatever

5    hearing they want to hear, in the courtroom, for them.

6          And they will need -- they can identify which

7    hearings they want played for them.  The following are the

8    dates of the hearings.

9          At which point they will ask you which hearing you

10   quoted in your -- or you played in the closing argument, would

11   be my guess, but, anyway -- which you identified.  I don't

12   know if they wrote it down.

13         But, in any event, what I would just suggest, I'm not

14   going to -- that was just me speculating on what the next

15   question might be.  I would suggest that we tell them the CD

16   contains the following hearing dates.  If you tell us which

17   dates you want to hear, we will bring you back into the

18   courtroom and we will play that -- we will play what you

19   request.  Is that acceptable?

20         MR. PARKER:  That is fair.

21         MR. CROOKS:  Yes, Your Honor.

22         MS. ELFENBEIN:  Yes, Your Honor.

23         THE COURT:  Okay.  So what you need to do is tell me

24   what the dates are.  I don't know if the two of you want to

25   agree or -- I'm going to go back on the bench.  And I'm going

THURSDAY, JUNE 25th, 2009

1    to hand the microphone to whoever's going to speak.

2              MR. PALMER:  First hearing date is March 25, 2008.

3              THE COURT:  Wait until I get up there.  Okay.  March

4    25, 2008.  Is there any indication on how long that hearing

5    is?

6              MR. PALMER:  It's about -- 328 kilobytes.

7              MS. ELFENBEIN:  Your Honor, we -- if I recall

8    correctly, if we open up the file, it will tell us how many

9    minutes that it is.  But we have to open it up.

10             THE COURT:  I suggest we tell them the minutes, too.

11   But I'll write out what I propose sending back to them and

12   read it to you so that you'll have a chance to think about it.

13       (Pause.)

14             MS. ELFENBEIN:  It looks like the hearing from

15   3/25/2008 is 18 minutes and 7 seconds.

16             The next hearing is May 6, 2008, and that one is 24

17   minutes, 40 seconds.

18             The next hearing is August 12, 2008, and that one is

19   25 minutes, 50 seconds.

20             The next hearing is February 5, 2009, and that one is

21   one hour, 17 minutes, 6 seconds.

22             And the last hearing on here is October 30, 2008, and

23   that one is 20 minutes, 39 seconds in duration.

24             THE COURT:  Okay.  So those last two are not in the

25   correct order?

THURSDAY, JUNE 25th, 2009

1           MS. ELFENBEIN:  They are not in chronological order,

2    that's correct.

3           THE COURT:  Okay.

4           MS. ELFENBEIN:  And the one that was played in clips

5    was August 12, 2008, during closing argument.

6           THE COURT:  Okay.  Well, what I would -- so that the

7    note -- so here is the note as I've drafted it.

8           It says, "We do not have equipment to send into the

9    jury room.  If you tell us what you want to hear, we will play

10   it for you in the courtroom.  The following hearing dates are

11   on the CD:

12           3/25/08, 18 minutes, 7 seconds.

13           5/6/08, 24 minutes 40 seconds.

14           8/12/08, 25 minutes, 50 seconds.

15           10/30/08, 20 minutes, 39 seconds.

16           2/5/09, one hour, 17 minutes, 6 seconds.

17           Any objection from the plaintiff?

18           MR. CROOKS:  No objection from the plaintiff, Your

19   Honor.

20           THE COURT:  Ms. Elfenbein?  Mr. Palmer?

21           MS. ELFENBEIN:  None from the defendant.

22           MR. PALMER:  But in order to avoid the next question,

23   should -- I'm sure they're relying on their own collective

24   memories, but the one we read was 8/12.  Should we tell them

25   that we read from 8/12?  I think that would save some time,

THURSDAY, JUNE 25th, 2009

1    here.  That's my suggestion to the Court.

2           MR. PARKER:  Our thinking on that is we're not sure

3    if the jury was told that in...

4           MR. PALMER:  Well, I said that.

5           THE COURT:  Well, that's easy enough.  I believe the

6    jury was -- I believe that -- my recollection is the jury was

7    told that.  But let me see if I've can -- if I can go back.

8           Perhaps the court reporter can --

9       (Court Reporter reads portion of transcript)

10          I could hear you.  And, actually, I happened to find

11   that portion in my real-time transcript, as well.  So,

12   Mr. Crooks, you said that you didn't believe that they were

13   told.  They were clearly told.  I don't know if --

14          MR. CROOKS:  No, that was Mr. Parker, but...

15          THE COURT:  Sorry.  That's what happens when you

16   double-team me on these arguments. I can't remember who said

17   what.

18          MR. CROOKS:  I apologize, Your Honor.

19          THE COURT:  I should say plaintiff's counsel.

20          MR. CROOKS:  That's fine, Your Honor.  Your

21   instruction is fine with plaintiff's counsel.

22          THE COURT:  And what about telling them that the

23   excerpt in court, played in -- the excerpt played during

24   closing argument was from the August 12, 2008 hearing?

25          MR. CROOKS:  That's fine, Your Honor.

THURSDAY, JUNE 25th, 2009

1          THE COURT:  Okay.

2      (Pause.)

3          THE COURT:  Okay.  So I'm going to have to write tiny

4  here.  I'm going to write this out.  I like to write the

5  answers out and send it back and I'll tell you why.  Because I

6  find sometimes when I don't do that, I then have various

7  jurors popping up with questions, you know, and it doesn't

8  give us an opportunity to talk about their questions.  So

9  that's why I tend to write the answers.

10          Okay.

11      (Pause.)

12          THE COURT:  Okay.  What I have written is:  "We do

13  not have equipment to send into the jury room.  If you tell us

14  what you want to hear, we will play it for you in the

15  courtroom.  The following hearings are on the CD:

16              3/25/08, 18 minutes 7 seconds.

17              5/6/08, 24 minutes, 40 seconds.

18              8/12/08, 25 minutes, 50 seconds.

19              10/30/08, 20 minutes, 39 seconds.

20              2/5/09, one hour, 17 minutes, 6 seconds.

21          The excerpt played during closing argument was from

22  the August 12, 2008 hearing.

23          And then I've signed it and given the time.

24          MR. CROOKS:  That's fine with plaintiff's attorney,

25  Your Honor.

THURSDAY, JUNE 25th, 2009

1          THE COURT:  Okay.  And defendants?  Defendant, I

2   should say.

3          MR. PALMER:  That's fine.

4          THE COURT:  Okay.  Thank you.  Let me have my

5   courtroom deputy make a copy of the note and then the CSO will

6   take it into the jury room.  And we will be in recess until we

7   hear further from the jury.

8          Thank you.

9     (Court recessed at 2:28 p.m., and proceedings continued as

10  follows at 2:54 p.m.:)

11         THE COURT:  Please be seated.  We've received a note

12  from the jury dated June 25, 2009, 2:51 p.m., and it says, "We

13  have a verdict."

14         So will you please bring the jury in.

15    (Jury enters the courtroom at 2:55 p.m.)

16         THE COURT:  Good afternoon, please be seated.

17         I received a jury note that says we have a verdict.

18  And it's signed by the foreperson, I believe, Jorge Lamus.

19         Mr. Lamus, will you hand the verdict to the court

20  security officer, and he'll hand it to me.

21         I'm not sure how we get around all the equipment.

22         COURTROOM DEPUTY:  Make sure I step in the right

23  spot.

24         THE COURT:  Okay.  I will publish the verdict.

25         "United States District Court, Southern District of

THURSDAY, JUNE 25th, 2009

1    Florida.   Case Number 08-21925, Civil, Simonton, consent case.

2    Lorna Beach-Mathura, plaintiff, versus American Airlines,

3    Incorporated, defendant, verdict form.

4            "Do you find from a preponderance of the evidence:

5            (1), That the defendant was negligent in the manner

6    claimed by the plaintiff and that such negligence was a legal

7    cause of damage to the plaintiff?  Answer, yes or no."

8            And the answer "no" is written in.  The remaining

9    questions are not answered.

10           "Therefore," and it is signed by the foreperson with

11   today's date.

12           Is there any request to poll the jury on behalf of

13   the plaintiff?

14           MR. PARKER:  No, Your Honor.

15           THE COURT:  Okay.  Thank you.  On behalf of the

16   defendant?

17           MR. PALMER:  No, Your Honor.

18           THE COURT:  Is there anything that I need do before I

19   discharge this jury?  Okay.

20           On behalf of the plaintiff?

21           MR. CROOKS:  No, Your Honor.

22           THE COURT:  On behalf of the defendant?

23           MR. PALMER:  No, Your Honor.

24           THE COURT:  Okay.  Thank you.

25           Ladies and gentlemen, I'd like to thank you for your

THURSDAY, JUNE 25th, 2009

1   service on this jury.  You've been very attentive.  You've

2   been prompt.  I apologize for any delays that have been caused

3   during the trial, but I do want to express my appreciation.

4          And in a moment I'll come back and I have some

5   certificates of appreciation that have been prepared for you

6   to acknowledge your service on this jury.  Perhaps suitable

7   for framing, but of course, we don't provide the frame.

8          So thank you, very much.

9      (Jury was released at 2:58 p.m., and proceedings

10  continued:)

11         THE COURT:  You can be seated.

12         What I'd like to do is release the original exhibits

13  back to Counsel and ask that you keep them in your custody, so

14  that, if necessary, they can be filed for any further

15  purposes.

16         But I have a copy.  And I think it's easiest, instead

17  of trying to file them somewhere in the court file, if we

18  return them back to Counsel.  Is that acceptable?  So

19  plaintiff's exhibits would go back to plaintiff, and

20  defendant's exhibits would go back to defendant; is that

21  acceptable?

22         MR. CROOKS:  Yes, Your Honor.

23         MR. PALMER:  Yes, Your Honor.

24         THE COURT:  Okay.  Is there anything further that I

25  need to do at this time?

THURSDAY, JUNE 25th, 2009

1          MR. PALMER:  Your Honor, I would ask that my binders,

2     the big black, thick binders, I'd hate to see those go to

3     waste.

4          THE COURT:  I would ask that you collect your binders

5     from the jury seats.

6          MR. PALMER:  All right.

7          THE COURT:  And if you want your copies, you can take

8     them.  If you don't want them, we'll put them in our recycle

9     bin.

10          MR. PALMER:  I'll take them.  I just wanted to get

11     permission from the Court to go back there and get my binders.

12          THE COURT:  Oh, absolutely.  And if you hadn't asked

13     for permission, we'd probably be calling you up and telling

14     you to take them.

15          Is there anything further on behalf of the plaintiff

16     or the defendant before we recess?

17          MR. PARKER:  No, Your Honor.

18          MR. PALMER:  No, Your Honor.

19          THE COURT:  All right.  Thank you.  I would like to

20     thank both parties for your professionalism during the trial.

21     For your, you know, the way in which you conducted yourself,

22     conducted the trial.  I think you are all a credit to the

23     legal profession.

24          And I want to just let you know that it's been a

25     pleasure for me to have you in front of me.  I look forward to

THURSDAY, JUNE 25th, 2009

108

1  having you in front of me again, both sides.  I think you all,

2  as I say, did a very professional job.  You disagreed where

3  you had to disagree and you agreed where you could agree.

4       And, again, I want to thank you, very much and just

5  express that appreciation to all of you.

6       MR. PALMER:  Thanks for having us, Judge, on such

7  short notice.

8       MR. PARKER:  Thank you, Your Honor.

9       THE COURT:  My pleasure.  Actually, there's nothing I

10  would rather do than be in the courtroom in trial.  That's

11  sort of my perspective of things.  So I'm very happy that you

12  were here.

13       MR. CROOKS:  Thank you, very much, Your Honor.  It

14  was a pleasure.

15       MR. PARKER:  It was a pleasure.

16       THE COURT:  Thank you.

17    (Proceedings were adjourned at 3:01 p.m.)

18                          * * *

19       I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above matter.

21

22  Date:  Saturday, August 21, 2010

23

24       s/ JUDITH M. SHELTON, CERTIFIED REALTIME REPORTER
         Signature of Court Reporter

25

THURSDAY, JUNE 25th, 2009

```
1                            *  *  *

2                      INDEX TO EXHIBITS

3                            I.D.        ADMITTED

4   DEFENDANTS

5     41 (CCCC)                             10

6     42 (F)                  6             10

7     43 (I)                  6             10

8

9                     INDEX TO TRANSCRIPT

10

11  Plaintiff rests .............................   10

12  Motion for Judgment renewed .................   11

13  Closing Argument by Plaintiff
        by Attorney Crooks .....................  16/34
14
    Closing Argument by Defense
15      by Attorney Palmer .....................   35

16  Rebuttal Argument by Plaintiff
        by Attorney Parker .....................   57
17
    Jury Instructions ...........................   66
18
    Deliberations Begin .........................   82
19
    Jury Questions ..............................   84
20
    Jury Verdict ................................  104
21

22

23

24

25
```

THURSDAY, JUNE 25th, 2009

**5:00** [1]  30/6

**6**

**60** [1]  13/14
**62** [2]  62/9 62/10
**64** [1]  28/22
**65** [5]  35/12 35/15 62/14 62/18 62/19
**655-0239** [1]  1/13
**66** [1]  109/17

**8**

**8/12** [2]  101/24 101/25
**8/12/08** [2]  101/14 103/18
**80** [2]  1/19 63/2
**82** [1]  109/18
**84** [1]  109/19
**8N09** [1]  1/23
**8th** [1]  1/19

**9**

**9-1-06** [1]  62/8
**9/23/2005** [1]  49/11
**9041** [1]  1/19
**99** [2]  1/12 73/19
**9:40** [1]  1/7
**9:49** [1]  8/24
**9:54** [1]  11/17
**9:59** [1]  14/22

**A**

**A-B-C** [1]  58/16
**a.m** [6]  1/7 8/24 11/17 14/22 14/23 15/15
**ability** [5]  42/10 47/7 47/14 68/19 95/25
**able** [5]  32/11 50/10 53/18 64/3 94/14
**about** [101]  3/11 8/11 8/15 11/9 11/10 17/6 17/24 18/23 19/19 22/7 23/5 24/4 24/5 25/4 25/11 26/7 26/23 29/4 29/12 29/12 29/13 30/20 31/6 31/7 31/9 31/19 33/25 34/1 34/4 34/15 34/21 34/22 34/23 35/2 36/10 36/11 37/15 38/1 38/3 38/13 38/19 39/2 39/12 39/21 40/14 41/8 43/4 43/16 43/23 44/4 44/7 44/9 44/16 44/25 45/6 45/6 45/17 46/18 47/6 47/15 48/9 48/25 49/1 49/2 49/21 51/2 51/12 54/9 54/23 55/16 55/16 55/20 56/6 60/13 60/14 60/22 61/10 62/6 63/1 63/2 63/13 63/16 63/16 63/21 63/21 64/1 68/20 84/1 84/4 84/7 84/10 84/13 85/17 86/13 87/8 96/20 100/6 100/12 102/22 103/8
**above** [2]  38/23 108/20
**abroad** [1]  19/6
**abs** [1]  24/19
**absent** [1]  14/22
**absolute** [1]  37/23
**absolutely** [4]  40/10 47/9 86/21 107/12
**abundance** [1]  81/20
**accept** [2]  68/3 69/21
**acceptable** [5]  5/18 97/2 99/19 106/18 106/21
**access** [2]  88/21 90/13
**accessibility** [1]  19/7
**accessible** [1]  88/11
**accident** [19]  17/1 37/24 43/1 43/6 43/9 44/16 44/17 44/19 45/1 45/6 45/23 45/23 46/5 46/8 46/10 46/14 47/2 54/19 73/8
**accidents** [2]  18/3 18/20
**accomplishing** [1]  7/10
**account** [2]  77/6 77/11
**accurate** [2]  68/3 92/25
**accurately** [1]  68/19

**$**

**$1,700** [1]  34/20
**$10** [4]  35/5 36/13 46/11 63/4
**$10,000** [1]  35/1
**$135** [1]  34/20
**$14,000** [3]  17/2 28/21 34/20
**$150,000** [1]  56/10
**$150,000.00** [1]  35/10
**$23** [1]  59/13
**$30,000** [1]  34/22 34/24 63/23
**$49,500** [2]  35/14 62/15
**$49,500.00** [1]  35/9
**$5,000** [1]  34/21
**$549,000** [2]  62/21 62/21
**$600,000** [2]  35/1 63/21

**'**

**'04** [1]  42/19
**'05** [4]  42/19 48/16 50/3 54/18
**'06** [2]  42/4 54/9
**'08** [1]  40/9
**'09** [2]  42/21 42/22
**'Mr.** [1]  27/1
**'Mr. Crooks,'** [1]  27/1

**0**

**01-9041** [1]  1/19
**0239** [1]  1/13
**06** [1]  62/8
**08** [9]  94/17 101/12 101/13 101/14 101/15 103/16 103/17 103/18 103/19
**08-21925** [1]  105/1
**08-21925-CIV** [1]  1/3
**08/12/08** [1]  94/17
**09** [2]  101/16 103/20

**1**

**10** [8]  58/15 70/1 70/3 70/6 109/5 109/6 109/7 109/11
**10-minute** [1]  13/20
**10/30/08** [2]  101/15 103/19
**100** [3]  31/4 79/25 86/21
**104** [2]  1/12 109/20
**10:19** [1]  14/23
**10:21** [1]  15/15
**11** [1]  109/12
**12** [13]  18/16 26/3 26/4 35/13 35/13 52/17 62/19 100/18 101/5 101/24 101/25 102/24 103/22
**127** [1]  1/5
**12:06** [2]  65/22 66/3
**12:12** [1]  66/4
**12:13** [1]  66/9
**12:40** [2]  83/1 84/4
**12:43** [1]  84/22
**12:50** [2]  84/6 84/7
**13899** [1]  1/15
**14** [1]  28/22
**15** [5]  18/16 44/17 58/15 84/1 84/12
**15-minute** [1]  84/8
**153** [1]  1/15
**15th** [2]  46/6 46/7
**16/34** [1]  109/13
**17** [4]  18/16 100/21 101/16 103/20
**18** [3]  100/15 101/12 103/16
**183rd** [1]  1/12
**1980s** [1]  60/24
**1996** [2]  39/7 40/15
**1:15** [1]  85/2
**1:45** [1]  84/7
**1:50** [1]  84/23
**1st** [8]  43/14 50/3 51/1 51/8 52/3 54/9 54/18 54/20

**2**

**2/5/09** [1]  46/16 103/20
**20** [5]  13/3 32/18 100/23 101/15 103/19
**2005** [16]  37/16 43/6 43/14 44/14 48/1 49/11 51/1 51/8 52/3 54/9 54/20 60/14 61/11 70/1 70/3 70/6
**2006** [17]  16/13 20/19 22/17 30/24 35/19 43/7 43/8 44/17 45/12 50/18 57/6 57/7 61/16 62/1 62/15 63/25 64/16
**2008** [12]  52/17 59/12 70/2 100/2 100/4 100/15 100/16 100/18 100/22 101/5 102/24 103/22
**2009** [3]  1/6 100/20 104/12
**2010** [1]  108/22
**21** [3]  18/16 48/14 108/22
**21925** [1]  105/1
**23** [1]  18/16
**24** [3]  100/16 101/13 103/17
**25** [7]  1/6 100/2 100/4 100/19 101/14 103/18 104/12
**2:28** [1]  104/9
**2:51** [1]  104/12
**2:54** [1]  104/10
**2:55** [1]  104/15
**2:58** [1]  106/9

**3**

**3/25/08** [2]  101/12 103/16
**3/25/2008** [1]  100/15
**30** [7]  57/6 57/7 61/16 62/1 63/25 64/16 100/22
**3000** [1]  1/18
**305** [4]  1/13 1/16 1/20 1/24
**30th** [1]  45/12
**328** [1]  100/6
**33101** [1]  1/20
**33128** [1]  1/23
**33169** [1]  1/13
**33181** [1]  1/15
**34** [2]  58/7 109/13
**341-3420** [1]  1/16
**3420** [1]  1/16
**35** [5]  18/15 24/8 39/4 46/20 109/15
**358-5577** [1]  1/12
**36** [2]  18/15 58/7
**37** [2]  18/15 58/7
**39** [3]  100/23 101/15 103/19
**3:01** [1]  108/17

**4**

**40** [7]  9/15 9/18 9/18 24/9 100/17 101/13 103/17
**40/20** [1]  13/3
**400** [1]  1/23
**41** [5]  6/22 9/15 9/21 10/5 109/5
**42** [7]  6/19 9/16 9/23 10/5 50/11 50/11 109/6
**43** [12]  6/21 9/16 10/1 10/5 50/14 50/15 52/18 97/19 97/20 97/21 98/1 109/7

**5**

**5/6/08** [2]  101/13 103/17
**50** [6]  13/16 73/10 73/17 100/19 101/14 103/18
**50-something-year-old** [1]  24/18
**523-5294** [1]  1/24
**5294** [1]  1/24
**53** [1]  35/12
**55** [2]  50/4 50/5
**5577** [1]  1/20
**57** [1]  109/16

**A**

acknowledge [1] 106/6
across [2] 21/7 23/23
act [5] 67/3 72/12 75/6 75/22 78/13
acts [1] 67/5
actual [5] 51/21 67/15 74/9 74/12 91/14
actually [4] 9/17 14/16 102/10 108/9
add [1] 62/19
adding [2] 4/16 85/11
addition [1] 42/9
additional [8] 2/21 4/15 4/21 4/22 6/22 9/9 9/12 33/13
Additionally [1] 18/22
additions [1] 3/9
address [5] 4/20 36/21 53/18 58/25 81/9
adequately [1] 73/24
adjourned [1] 108/17
Adjusting [1] 21/23
admitted [16] 9/17 9/19 10/4 10/5 10/15 27/15 67/10 86/6 86/17 86/24 87/3 87/14 89/1 93/16 93/17 109/3
adopt [1] 75/23
advantage [3] 75/8 75/13 75/17
adverse [1] 37/18
advice [1] 23/12
advise [3] 44/19 81/12 96/22
advised [1] 65/24
advising [1] 13/23
affect [1] 66/25
affidavit [11] 6/22 9/21 36/25 37/1 37/2 41/5 41/5 41/6 41/11 60/2 60/13
affidavits [1] 51/10
after [32] 14/2 14/4 14/15 14/19 17/2 22/4 22/25 25/23 28/19 34/3 36/4 36/11 38/1 41/6 42/7 44/16 44/18 45/23 46/6 47/2 50/3 50/17 50/17 51/11 51/11 53/18 57/8 76/9 76/23 77/25 84/8 84/12
after-tax [1] 76/23
afternoon [3] 15/2 66/11 104/16
again [6] 23/19 44/13 45/11 45/14 108/1 108/4
against [3] 43/12 66/23 70/24
age [3] 35/15 60/21 76/8
agent [7] 21/1 21/4 21/11 25/1 59/23 62/3 64/15
agent's [1] 23/12
agents [1] 71/15
ago [2] 9/20 58/15
agree [9] 66/20 77/21 84/17 86/21 87/20 87/23 97/21 99/25 108/3
agreed [2] 82/3 108/3
agreement [3] 77/24 80/25 84/18
agrees [1] 46/4
ahead [3] 6/2 34/5 34/6
aid [2] 85/25 87/2
Air [1] 22/2
airline [2] 19/2 64/15
airlines [46] 1/6 2/14 12/8 16/16 17/17 18/25 19/4 19/5 21/11 21/22 21/25 22/4 22/19 23/13 23/17 24/2 25/1 25/2 25/3 27/17 28/15 28/16 29/14 29/18 29/20 30/25 31/10 35/4 36/24 43/13 43/19 44/24 48/7 54/12 55/21 57/19 57/24 58/22 59/1 59/12 59/23 60/4 60/5 60/7 61/16 105/2
Airlines' [7] 21/1 21/4 21/11 21/12 23/11 62/3 71/15
airport [3] 19/4 20/21 62/2
alert [2] 3/10 4/4
all [64] 4/12 10/23 11/14 18/12 18/20 18/20 19/4 20/7 23/10 31/9 34/23

38/20 39/9 40/2 40/5 40/8 41/11 41/18 42/25 42/21 42/22 44/7 49/3 49/10 50/20 51/5 51/9 53/6 54/7 54/7 54/7 56/3 57/22 58/8 60/2 62/4 64/19 64/22 66/20 67/1 68/2 68/3 70/19 70/20 73/18 74/4 75/14 76/2 76/7 77/20 80/21 85/19 90/1 90/7 91/25 92/21 93/16 98/12 104/21 107/6 107/19 107/22 108/1 108/5
all-time [1] 108/1
alleged [2] 44/6 75/6
alleges [1] 71/4
Allen [1] 3/20
allow [1] 87/1
allowed [9] 26/10 26/21 28/3 36/6 37/17 39/11 39/14 74/6 86/19
almost [1] 62/13
along [6] 8/16 13/25 27/24 42/7 65/12 92/20
already [3] 20/7 31/8 85/17
also [24] 6/9 8/5 12/10 12/13 12/13 18/5 23/3 24/20 29/19 30/20 32/22 35/2 43/11 64/10 68/7 68/24 72/21 73/1 74/8 75/18 79/9 92/9 92/12 98/18
altercation [1] 49/15
alternative [4] 88/19 90/4 90/20 96/22
alternatives [1] 84/14
although [2] 12/9 12/11
always [1] 20/21
am [6] 3/2 7/7 38/19 47/9 49/10 87/1
amazing [2] 39/6 45/19
ambient [1] 61/13
AMERICAN [52] 1/6 2/14 12/8 16/16 17/17 18/24 19/4 21/1 21/3 21/11 21/11 21/12 21/22 21/25 22/4 22/18 23/11 23/16 24/2 25/1 25/2 25/2 27/16 28/15 28/16 29/13 29/18 29/19 30/25 31/10 35/4 36/24 43/12 43/18 44/24 48/7 54/12 55/21 57/19 57/24 58/22 59/1 59/12 59/23 60/4 60/5 60/6 61/16 62/2 64/15 71/15 105/2
amount [18] 17/1 32/5 33/5 70/14 73/7 73/23 74/2 74/17 75/15 75/16 76/21 77/4 77/12 80/3 80/4 80/12 80/15 80/17
amounts [2] 31/20 33/6
analogy [1] 48/16
analysis [4] 27/11 28/18 28/24 29/1
analyze [2] 19/21 25/5
ANDREA [1] 1/9
anguish [6] 35/3 62/25 63/15 64/20 64/21 80/13
announce [1] 5/6
announcement [1] 4/22
another [16] 18/7 20/6 26/15 30/19 40/20 40/25 45/7 48/11 48/21 50/7 56/13 72/12 75/7 77/24 83/14 97/11
answer [25] 18/9 19/25 20/1 40/24 41/9 55/11 55/18 55/19 57/8 57/8 57/11 58/1 68/21 71/22 73/4 79/3 79/5 79/12 79/13 79/15 79/20 79/25 89/3 105/7 105/8
answered [7] 19/20 31/7 64/19 79/4 80/21 80/1 105/9
answers [28] 18/8 18/12 18/14 18/15 20/7 29/6 31/9 37/13 37/14 38/14 39/3 39/10 39/23 39/25 40/3 40/6 41/19 41/19 41/20 41/20 41/25 42/17 42/18 43/21 43/22 52/11 103/5 103/9
anxiety [1] 52/7
any [82] 3/9 4/21 4/22 4/24 4/25 5/1 5/11 9/9 9/11 9/12 10/25 11/15 11/19 11/22 14/11 21/17 24/25 27/9 29/3 31/19 38/9 41/25 44/9 46/7 46/8 48/19 49/12 49/14 55/1 55/4 56/5 59/24

60/10 65/13 66/22 66/25 67/5 67/17 70/22 73/18 73/20 74/19 75/5 75/8 76/18 76/21 77/4 77/11 77/16 77/18 80/5 80/5 81/3 81/10 81/15 82/1 82/7 83/18 84/13 87/1 87/6 87/17 90/2 90/22 91/3 91/17 91/24 93/24 94/24 94/25 99/13 100/4 101/17 105/12 106/2 106/14
anybody [2] 54/9 54/11
anyone [2] 66/23 77/22
anything [28] 4/7 4/10 10/7 13/25 14/8 15/9 31/21 41/13 44/9 45/11 45/12 45/23 60/17 60/22 61/9 61/10 61/14 61/24 67/20 67/22 83/18 90/10 90/14 92/24 94/20 105/18 106/24 107/15
anything's [1] 24/14
anyway [1] 99/11
anywhere [1] 44/25
apart [1] 39/21
apologize [2] 102/18 106/2
appeal [1] 50/19
appealed [3] 50/18 50/18 50/19
appear [1] 68/20
appearances [4] 1/11 2/2 15/2 84/24
appearing [1] 54/5
appears [3] 19/15 19/20 49/10
applicable [1] 18/10
application [1] 22/24
applications [3] 90/11 94/21 94/25
applied [1] 74/19
apply [2] 66/14 66/19
appreciate [1] 32/17
appreciation [3] 106/3 106/5 108/5
approached [1] 65/23
appropriate [7] 4/3 4/24 5/10 71/9 80/8 86/22 87/11
approval [1] 8/11
April [1] 70/2
are [95] 3/23 4/12 6/1 6/4 7/11 7/20 9/14 9/15 9/19 10/5 10/24 11/19 14/7 14/10 15/2 16/1 18/6 18/12 18/13 19/7 20/7 23/23 23/24 26/24 26/25 27/2 27/14 30/22 31/4 32/1 34/19 35/17 36/16 36/17 36/17 38/1 38/22 38/23 40/9 40/9 40/10 40/18 40/20 40/20 42/9 47/17 48/11 48/17 48/25 49/6 49/16 49/17 50/20 50/21 53/5 53/13 54/8 56/16 57/9 67/6 68/10 74/2 74/6 74/10 74/11 74/16 75/5 78/3 78/8 82/1 84/4 84/24 86/22 87/10 89/2 89/15 92/6 92/23 93/11 93/12 93/14 94/10 95/19 96/3 96/14 96/18 98/20 99/7 99/24 100/24 101/1 101/10 103/15 105/9 107/22
area [1] 8/12
areas [3] 27/9 27/9 33/5
aren't [2] 14/11 82/2
argue [1] 32/24
argument [18] 8/7 8/15 12/5 15/25 16/1 16/5 27/23 30/16 32/15 35/23 85/20 99/10 101/5 102/24 103/21 109/13 109/14 109/16
arguments [9] 11/1 11/8 11/10 12/17 15/18 15/24 31/22 36/13 102/16
around [2] 98/12 104/21
arrived [4] 2/16 11/11 21/5 81/23
arriving [1] 67/23
Asian [1] 22/3
ask [23] 3/8 4/19 4/21 4/25 8/11 11/19 11/22 18/7 30/7 35/4 38/7 38/15 59/16 64/22 65/1 68/14 68/24 88/1 97/25 99/9 106/13 107/1 107/4
asked [21] 19/13 19/14 19/18 21/2 21/17 22/18 23/15 24/22 25/10 26/22

# A

asked... **[11]** 26/23 27/7 28/14 39/10 42/25 44/15 56/10 71/22 73/4 88/8 107/12
asking **[9]** 20/6 38/18 41/4 61/9 61/10 61/10 61/24 64/22 64/24
asks **[3]** 61/7 61/8 78/22
aspect **[1]** 56/7
aspects **[1]** 74/13
asserting **[1]** 70/9
asserts **[1]** 67/14
assess **[1]** 74/2
assessment **[4]** 25/17 25/19 25/20 25/22
assist **[1]** 23/2
assistance **[2]** 19/8 20/24
assisted **[2]** 22/17 23/3
assume **[2]** 66/5 66/12
assumed **[1]** 12/25
asterisk **[1]** 23/23
asterisks **[3]** 23/22 23/24 24/1
atrophy **[1]** 26/18
attached **[8]** 3/22 90/20 91/10 91/13 91/14 92/24 93/2 93/25
attack **[1]** 52/2
attempted **[1]** 71/7
attempting **[2]** 57/4 57/5
attendant **[2]** 21/6 23/8
attended **[1]** 51/22
attention **[4]** 23/21 47/18 58/21 81/6
attentive **[2]** 57/12 106/1
attorney **[13]** 12/21 12/22 39/13 61/7 61/7 61/8 61/10 61/12 97/6 103/24 109/13 109/15 109/16
attorney's **[4]** 54/21 54/23 77/10 77/12
attorneys **[6]** 18/6 37/20 39/10 39/12 42/9 89/20
audio **[10]** 6/8 7/15 51/22 52/20 53/23 91/8 91/9 92/9 93/18 98/20
audiotape **[1]** 7/5
August **[19]** 16/13 20/19 35/19 43/7 45/10 45/12 46/6 52/17 57/6 57/6 61/16 62/1 63/25 64/16 100/18 101/5 102/24 103/22 108/22
authored **[1]** 50/20
authority **[1]** 67/17
available **[5]** 18/11 27/6 30/12 53/6 75/14
Aventura **[2]** 25/9 25/22
Avenue **[1]** 1/23
avoid **[3]** 5/4 59/25 101/22
avoided **[1]** 76/3
award **[5]** 73/23 74/19 76/18 77/4 77/6
awarded **[1]** 80/8
aware **[3]** 87/5 91/3 92/23
away **[1]** 84/4

# B

baby **[1]** 43/2
back **[85]** 5/8 8/3 8/5 8/6 11/4 11/12 14/5 14/7 14/8 14/10 18/18 20/5 20/18 25/6 25/14 32/7 32/12 33/10 33/20 36/4 39/5 39/7 39/7 40/5 40/19 40/21 42/5 42/18 42/20 45/14 45/16 45/18 46/13 52/19 55/2 57/8 57/8 57/11 57/25 58/3 58/18 64/24 65/4 78/16 82/2 82/4 82/5 82/6 82/20 83/5 83/9 83/12 84/11 86/4 86/15 86/16 86/25 87/3 87/17 89/3 89/4 89/16 90/23 90/25 91/2 95/8 95/11 96/6 96/15 97/1 98/8 98/22 99/3 99/17 99/25 100/11 102/7 103/5 106/4 106/13 106/18 106/19 106/20 107/11
background **[1]** 55/16
backwards **[1]** 71/7
bad **[3]** 5/16 62/2 68/25
ballet **[1]** 8/16
Bam **[1]** 59/10
banner **[1]** 38/23
bar **[1]** 54/20
based **[10]** 26/4 37/10 37/19 43/21 44/1 49/9 49/11 63/24 74/8 96/17
basic **[1]** 94/21
basically **[4]** 48/20 49/9 83/9 88/13
bathroom **[1]** 65/24
Bayview **[1]** 1/18
be **[119]**
BEACH **[6]** 1/3 1/15 2/10 80/6 80/6 105/2
BEACH-MATHURA **[5]** 1/3 2/10 80/6 80/6 105/2
beamed **[1]** 22/15
bear **[1]** 76/12
bearing **[1]** 76/7
beating **[1]** 39/5
because **[30]** 3/25 4/4 6/21 7/24 10/25 14/14 19/21 23/5 39/5 45/15 45/16 45/20 52/14 53/4 54/25 56/20 56/20 64/4 64/6 69/9 69/20 71/5 74/9 78/6 80/5 80/21 84/3 89/24 92/11 103/5
become **[3]** 6/19 6/20 78/4
becomes **[1]** 4/2
been **[36]** 19/4 33/8 36/9 39/2 44/19 46/13 46/13 46/14 46/20 51/1 51/3 56/22 63/19 70/4 70/7 70/17 74/15 75/16 76/3 76/5 78/18 78/20 79/18 86/8 87/6 87/6 87/11 87/14 93/17 93/22 94/18 106/1 106/2 106/2 106/5 107/24
before **[42]** 1/9 4/7 5/21 5/22 12/4 12/14 13/18 13/25 14/5 14/14 14/16 15/9 27/11 31/14 32/6 34/6 37/17 39/2 40/12 40/18 40/19 40/21 43/8 44/16 45/22 46/5 46/21 47/1 53/9 53/18 54/5 54/13 66/6 67/1 68/10 69/4 76/8 90/25 91/1 91/2 105/18 107/16
befriended **[1]** 20/22
begin **[4]** 66/17 81/23 83/2 109/18
beginning **[1]** 33/4
begins **[1]** 78/23
behalf **[19]** 2/12 2/14 10/7 16/1 25/2 65/14 65/16 81/15 83/19 83/23 84/14 84/16 87/18 87/22 105/12 105/15 105/20 105/22 107/15
behind **[8]** 16/20 21/2 21/6 21/8 21/15 23/1 23/2 78/20
being **[14]** 10/15 19/16 22/7 36/23 37/6 39/12 39/22 44/5 45/15 49/2 57/8 57/12 92/23 98/8
beings **[1]** 37/23
belief **[1]** 60/9
beliefs **[1]** 78/6
believe **[25]** 2/9 3/21 6/21 9/21 10/13 11/3 12/13 19/16 22/2 38/6 38/6 68/4 68/6 68/13 68/13 77/17 85/16 91/11 92/18 93/7 95/15 102/5 102/6 102/12 104/18
belongings **[1]** 60/16
bench **[3]** 14/11 38/23 99/25
bending **[1]** 27/4
benefits **[6]** 35/11 50/7 52/1 75/2 80/16 80/18
beside **[1]** 43/18
best **[2]** 3/3 44/21
better **[6]** 13/10 28/5 39/10 39/23 39/25 62/2
between **[3]** 17/7 67/18 76/13
beyond **[3]** 17/3 17/8 60/18
big **[6]** 24/17 47/15 49/21 56/9 59/3
107/2
biggest **[1]** 40/10
billion **[1]** 40/10
bills **[3]** 28/21 47/21 54/8
bin **[1]** 107/9
binder **[6]** 9/15 9/19 10/11 46/5 48/12 51/5
binders **[6]** 50/9 50/12 107/1 107/2 107/4 107/11
Biscayne **[1]** 1/15
bit **[5]** 24/4 24/20 34/17 43/10 49/8
black **[4]** 9/15 9/19 18/13 107/2
blank **[2]** 23/24 44/7
blowup **[1]** 55/4
Blvd **[1]** 1/15
board **[10]** 16/24 18/2 23/5 25/9 25/16 25/22 50/25 51/3 54/6 62/15
board-certified **[3]** 25/9 25/16 25/22
boarding **[1]** 29/18
body **[6]** 26/3 26/4 35/13 35/14 40/12 41/1
book **[2]** 20/8 25/14
boom **[3]** 26/13 26/13 26/13
both **[9]** 4/19 13/9 67/11 71/17 74/12 88/2 97/6 107/20 108/1
bottom **[1]** 46/3
bought **[1]** 44/2
bound **[1]** 75/21
box **[14]** 1/19 16/22 16/23 20/16 20/16 22/15 24/6 25/3 25/10 26/7 26/11 26/12 28/2 60/24
brand **[1]** 94/20
brand-new **[1]** 94/20
breach **[7]** 12/2 16/14 16/18 31/1 31/2 34/16 35/17
breached **[2]** 16/17 29/21
break **[4]** 2/24 3/3 8/2 14/15
Brickell **[1]** 1/18
brief **[5]** 11/2 11/15 14/18 65/19 65/21
bring **[14]** 4/8 6/5 8/7 8/23 15/10 15/14 28/7 28/8 33/9 66/5 66/6 81/5 87/18 95/8 95/11 96/2 96/3 96/25 98/22 99/17 104/14
bringing **[1]** 7/1
broken **[1]** 53/1
brought **[7]** 7/15 18/2 21/14 28/4 36/23 37/2 37/4
bunch **[1]** 31/7 32/8
burden **[5]** 17/8 70/9 70/12 70/13 72/24
Bureau **[6]** 6/5 6/15 6/18 9/24
business **[4]** 19/1 19/2 75/13 84/11
busy **[1]** 52/5

# C

Calculate **[1]** 35/14
calculated **[1]** 32/5
calculator **[1]** 90/12
CALDWELL **[1]** 1/18
call **[12]** 4/19 5/4 5/19 5/22 13/20 27/1 54/24 56/2 66/17 84/12 88/10 89/17
callback **[1]** 84/8
called **[6]** 26/11 48/5 54/21 58/23 70/12 70/19
calling **[1]** 107/13
came **[30]** 17/18 18/1 18/1 18/22 20/16 21/13 22/19 23/1 24/6 25/1 26/6 26/22 28/19 41/13 41/16 46/21 46/23 47/20 53/17 53/18 54/14 56/7 57/25 58/2 58/2 58/18 60/23 62/2 92/10 92/18
can **[95]** 3/11 4/22 4/23 5/8 5/9 5/11 6/13 8/14 8/16 8/16 8/20 8/23 11/12 13/6 14/24 16/4 20/25 22/5 22/8 27/4 31/16 32/10 33/14 34/7 34/8 34/8 35/24 41/18 48/13 49/5 49/13 52/16

**C**

can... [63] 53/15 53/15 53/16 53/22
55/11 58/14 63/13 65/9 65/11 65/18
65/19 72/8 77/24 78/17 81/9 81/20
81/23 82/15 82/17 83/3 83/4 84/2 84/2
84/5 84/7 84/10 84/11 84/19 87/13
88/3 88/19 88/20 89/19 93/6 94/3 94/8
94/8 95/18 95/23 95/24 96/1 96/9
96/15 96/22 97/3 97/4 97/5 97/10
97/14 97/17 97/22 98/12 98/24 99/1
99/2 99/3 99/6 102/7 102/7 102/8
106/11 106/14 107/7
can't [4] 33/9 36/4 58/14 102/16
candidate [4] 19/23 35/7 64/5 64/6
candor [2] 43/22 44/1
cannot [2] 25/17 95/9
capacity [2] 7/14 75/4
care [8] 16/16 16/17 31/1 48/13 71/24
71/24 71/24 75/24
career [1] 54/15
careful [4] 22/22 71/25 72/3 72/5
carefully [1] 88/16
case [98] 1/3 5/1 5/2 5/6 5/7 5/11 5/12
7/22 10/18 10/24 12/2 16/11 16/14
17/4 17/7 17/7 17/7 17/10 17/23 19/11
29/11 29/12 29/13 30/20 31/6 31/9
32/4 32/16 36/11 36/14 36/17 36/23
37/11 37/22 37/24 38/11 38/25 39/1
39/2 39/19 40/1 40/13 40/20 41/6
42/2 43/11 43/19 43/20 49/24 50/1
50/2 50/8 50/16 50/18 51/9 51/10
51/25 55/13 55/18 55/21 56/3 56/4
56/7 59/18 61/15 62/5 64/10 64/11
66/15 66/19 67/21 68/18 70/4 70/8
70/9 71/1 76/7 76/19 77/18 77/23
77/25 78/3 78/7 78/10 83/9 89/24 91/7
91/16 91/24 92/19 92/20 93/10 93/10
93/11 93/12 93/19 105/1 105/1
case-in-chief [2] 12/2 32/4
cases [1] 93/9
cassettes [1] 28/10
catastrophic [1] 46/10
caught [1] 59/12
causation [5] 12/3 12/14 16/14 34/16
35/17
cause [20] 16/18 29/22 31/2 55/9 59/9
64/17 64/17 71/2 71/19 72/6 72/11
72/13 72/13 72/17 72/22 73/2 73/22
79/2 79/11 105/7
caused [4] 29/22 45/2 62/3 62/3 79/19
106/2
causing [1] 71/6
caution [2] 81/10 81/20
CCCC [1] 109/5
CD [61] 6/8 28/10 52/18 54/1 61/1
64/11 85/4 88/7 88/9 88/12 88/20 89/1
89/5 89/16 90/1 90/19 90/20 90/22
90/23 91/6 91/7 91/23 91/25 92/7 92/9
92/13 92/14 92/15 92/16 92/17 92/18
92/21 92/22 93/12 93/13 93/13 93/14
93/17 93/18 93/20 93/22 93/25 94/11
94/12 94/22 95/9 95/12 96/3 96/3
96/19 96/23 97/11 97/12 98/11 98/18
99/2 99/3 99/4 99/15 101/11 103/15
CDs [3] 91/11 91/13 91/14
cell [1] 84/9
central [2] 19/11 22/7
Centre [1] 1/18
cephalgia [1] 52/8
certain [3] 19/13 19/25 20/1
certainly [3] 34/12 37/8 91/18
certificates [1] 106/5
certification [1] 92/24
certified [12] 1/22 6/6 6/7 6/9 16/24

25/9 25/16 25/22 91/6 91/22 92/12
106/4
certify [1] 108/19
cervical [1] 52/7
chain [1] 67/16
chair [1] 28/6
chairs [3] 8/18 65/21 82/17
challenged [1] 26/19
chance [5] 2/23 36/3 82/5 87/7 100/12
change [4] 45/24 46/7 47/2 78/4
changed [2] 2/19 45/8 88/9
changes [1] 3/9
Charge [1] 3/20
chart [2] 27/18 27/18
charts [2] 32/3 32/8
check [1] 44/23
check-in [1] 44/23
checked [1] 21/7
cherry [1] 60/19
cherry-pick [1] 60/19
chief [2] 12/2 32/4
child [1] 63/6
chiropractor [4] 16/25 47/20 54/14
54/24
chronic [1] 52/9
chronological [1] 101/1
Circuit [1] 3/22
circumstances [7] 67/17 72/1 72/4 72/5
75/9 75/14 86/22
circumstantial [3] 67/11 67/16 67/19
city [1] 38/22
CIV [1] 1/3
civil [4] 3/20 17/7 17/10 105/1
claim [25] 6/8 6/20 10/2 37/24 50/3
50/6 54/18 54/22 56/3 56/23 56/25
57/2 58/25 61/6 70/10 70/11 70/15
70/23 70/24 71/16 72/17 72/19 72/23
72/24 91/7
claimant [4] 51/24 51/24 52/1 52/6
claimed [4] 55/8 79/1 79/10 105/6
claiming [2] 40/13 41/6
claims [8] 39/3 39/7 40/4 58/25 71/1
74/18 75/6 92/10
classic [1] 40/25
clear [7] 12/24 33/2 36/18 47/1 47/3
89/20 89/25
clearly [4] 4/5 58/7 68/21 102/13
clerk [3] 91/7 91/23 92/10
click [2] 92/9 95/5
client [2] 55/24 93/20
clip [1] 94/10
clipped [1] 98/11
clips [4] 7/7 91/8 91/9 101/4
close [8] 5/5 5/10 5/12 8/11 12/1 17/18
23/21 54/13
closed [1] 33/4
closing [44] 7/8 8/6 8/15 11/1 11/8
11/19 12/17 12/22 12/23 13/10 13/11
13/11 13/12 13/13 13/13 15/4 15/18
15/24 16/1 16/5 31/15 32/12 33/4 34/5
34/6 34/14 35/22 35/25 36/10 36/13
36/21 37/5 38/2 46/18 54/13 57/15
57/17 62/23 99/10 101/5 102/24
103/21 109/13 109/14
closing-closing [2] 13/11 13/13
closings [5] 14/1 14/2 14/4 14/21 38/1
collaborate [1] 60/2
collect [1] 107/4
collective [1] 101/23
collectively [1] 42/23
Collins [8] 20/23 22/10 22/12 22/17
22/21 29/19 37/7 60/2
Collins' [3] 36/25 37/1 37/2
combination [1] 72/12
come [21] 8/5 8/6 14/10 21/2 25/8

26/11 27/17 28/1 32/12 33/10 40/1
35/6 47/25 70/22 78/11 88/20
89/16 90/11 90/23 106/4
comes [3] 14/19 48/24 49/19
coming [5] 45/14 45/16 47/13 57/4
63/4
comment [1] 54/13
comments [1] 90/2
common [12] 18/17 19/3 21/21 22/5
23/20 24/1 25/7 28/12 28/17 31/6
63/18 67/12
communicate [2] 78/16 81/3
community [1] 65/1
company [1] 67/7
Comparative [1] 70/25
compared [1] 45/9
compel [1] 55/17
compels [1] 55/17
compensate [2] 73/24 74/17
compensation [31] 6/6 6/8 6/15 6/17
6/19 6/20 7/6 9/24 10/2 42/20 44/14
47/22 50/1 50/3 50/6 50/8 50/13 50/16
50/22 50/25 51/3 51/25 54/5 56/21
56/25 74/4 91/7 91/15 91/22 92/10
93/19
compensatory [3] 74/6 74/8 74/11
complaint [1] 42/8
complete [9] 4/16 5/25 6/5 6/6 6/7
37/11 37/12 40/3 55/15
completed [1] 9/8
completely [2] 48/8 59/15
component [1] 19/11
computer [16] 27/21 28/4 28/7 28/11
61/2 64/11 89/13 90/4 90/5 92/17
95/10 96/1 96/4 96/5 97/7 98/12
computers [1] 98/19
computing [1] 76/20
concealment [1] 55/14
concerned [1] 55/21
concerning [7] 67/23 68/7 69/1 69/19
71/22 73/4 77/15
conclusion [1] 9/7
conclusions [3] 10/25 36/7 67/12
concourse [1] 22/1
concrete [2] 21/9 23/1
condition [6] 24/18 45/7 45/9 46/7
75/25 76/8
conditioning [1] 24/20
conduct [1] 45/21
conducted [4] 37/19 37/21 107/21
107/22
conference [2] 8/13 97/6
conferred [1] 82/3
conferring [1] 34/4
confirm [1] 9/18
confuse [1] 53/3
confusing [1] 93/9
confusing for [1] 93/9
connected [1] 90/12
connection [1] 95/2
consent [1] 105/1
consider [11] 8/7 67/10 68/2 68/11
69/12 70/18 72/19 74/21 76/6 76/6
80/10
consideration [3] 66/18 77/11 78/1
considered [2] 20/12 88/16
considering [2] 74/1 76/11
consist [1] 72/2
consistency [1] 2/20
consistent [2] 48/17 49/6
consultation [4] 25/11 25/12 25/12
25/13
contained [5] 9/15 41/11 48/12 52/18
94/10
containing [2] 6/8 91/24

**C**

**contains [5]** 93/18 96/23 98/18 99/2 99/16
**contends [1]** 72/21
**content [1]** 46/4
**contention [3]** 70/15 70/23 70/24
**continue [2]** 33/11 53/22
**continued [9]** 14/23 34/13 34/14 45/9 66/3 84/22 90/8 104/9 106/10
**continues [1]** 53/5
**continuous [1]** 72/7
**contrary [2]** 12/9 12/12
**contributes [2]** 72/7 72/15
**control [1]** 60/18
**controlling [1]** 68/8
**controls [1]** 67/25
**convenience [1]** 78/19
**convince [8]** 42/6 47/20 50/24 51/2 51/5 52/12 54/6 57/4
**convinced [1]** 78/5
**convincing [1]** 47/3
**copies [1]** 107/7
**copy [13]** 14/12 14/13 65/11 78/19 88/2 91/6 91/22 92/12 92/25 97/11 98/9 104/5 106/16
**corporate [2]** 29/14 35/16
**corporation [7]** 19/5 35/4 60/5 66/24 66/25 67/3 67/4
**correct [20]** 2/10 2/11 6/24 6/25 7/3 9/21 9/22 9/25 10/3 13/19 31/8 53/12 66/8 75/25 89/6 93/1 93/23 100/25 101/2 108/19
**corrections [1]** 91/16
**correctly [3]** 19/24 20/1 100/8
**corroborated [1]** 34/18
**corroborates [1]** 22/10
**corrupt [1]** 88/13
**costs [2]** 77/10 77/12
**could [25]** 7/21 8/10 12/9 12/11 25/18 28/5 36/10 54/22 55/23 75/16 86/25 87/6 87/6 88/12 88/16 88/23 90/9 90/13 91/5 93/9 95/3 95/8 97/25 102/10 108/3
**counsel [46]** 2/1 2/7 2/9 3/8 3/10 6/3 8/14 13/23 14/6 15/2 15/17 15/24 16/7 17/16 17/17 21/16 23/15 27/24 29/5 29/8 30/17 31/16 34/4 42/23 53/7 57/14 60/4 61/18 63/11 64/8 65/13 65/25 81/14 84/17 84/25 88/2 90/19 91/4 94/21 97/3 97/5 97/22 102/19 102/21 106/13 106/18
**counselor [1]** 93/8
**Counsels [1]** 65/7
**counter [2]** 21/2 44/24
**country [1]** 38/21
**couple [3]** 14/15 25/24 36/20
**course [13]** 19/7 28/25 28/25 55/13 58/19 67/3 69/6 73/16 76/12 77/14 81/12 90/10 106/7
**court [39]** 1/1 1/22 14/22 17/12 26/21 30/11 36/1 37/25 39/24 41/9 42/11 42/23 51/4 51/20 66/3 67/2 73/15 77/10 77/12 78/15 78/16 80/7 81/5 84/22 85/8 89/14 91/17 92/12 95/19 102/1 102/8 102/9 102/23 104/9 104/19 104/25 106/17 107/11 108/24
**Court's [2]** 11/1 65/11
**courthouse [1]** 84/11
**courtroom [58]** 8/4 8/24 11/2 11/17 14/11 14/19 15/15 36/18 37/13 37/20 37/21 38/16 38/17 40/1 41/16 42/8 42/12 43/5 49/19 53/8 55/12 55/19 55/20 57/4 57/10 65/10 65/20 65/22 66/9 81/8 82/19 82/23 82/25 83/1 83/8

84/9 88/1 88/20 89/17 89/18 89/21 90/1 94/7 95/8 95/1 99/25 99/1 99/16 97/4 97/7 98/22 99/5 99/18 101/10 103/15 104/5 104/15 108/10
**courtrooms [1]** 38/22
**cover [1]** 74/12
**credentials [1]** 26/8
**credibility [14]** 17/24 17/24 17/24 19/10 19/12 22/7 29/12 29/13 30/20 37/11 38/3 58/5 58/5 68/1
**credible [9]** 18/4 41/13 41/14 42/24 47/4 47/14 54/11 56/1 57/7
**credit [1]** 107/22
**crime [1]** 52/2
**criminal [2]** 17/7 17/7
**critical [1]** 37/16
**Crooks [16]** 1/14 2/6 2/25 8/9 9/1 16/1 16/7 27/1 31/19 34/1 83/19 90/17 93/2 97/20 102/12 109/13
**Crooks,' [1]** 27/1
**cross [11]** 19/13 20/2 20/4 20/9 21/16 23/15 24/22 28/14 30/13 38/16 56/12
**cross-examination [10]** 19/13 20/2 20/4 20/9 21/16 23/15 24/22 28/14 38/16 56/12
**cross-examine [1]** 30/13
**CSO [5]** 65/23 88/3 97/25 98/7 104/5
**CT [1]** 24/24
**custody [1]** 106/13
**cut [1]** 13/24
**cutting [1]** 27/5
**cutting-edge [1]** 27/5

**D**

**Dallas [5]** 23/10 23/11 23/13 58/13 59/2
**damage [21]** 12/11 55/10 71/2 71/19 72/6 72/8 72/10 72/11 72/15 73/2 73/11 73/22 73/25 74/18 74/21 75/10 76/14 79/2 79/11 79/17 105/7
**damages [34]** 16/15 16/19 16/21 16/23 29/23 29/23 32/5 33/5 34/16 34/17 35/17 55/25 56/5 73/16 74/1 74/5 74/6 74/8 74/9 74/11 75/6 75/8 75/16 75/18 75/22 76/2 76/3 76/12 76/21 77/13 77/16 80/3 80/4 80/8
**dance [1]** 8/16
**data [1]** 95/1
**date [24]** 18/24 26/14 26/14 26/15 35/6 35/6 35/18 43/1 44/12 44/22 45/19 54/18 75/2 79/6 79/8 80/16 80/23 81/1 92/8 94/17 95/18 100/2 105/11 108/22
**dated [3]** 43/8 83/10 104/12
**dates [13]** 18/3 40/7 40/7 94/11 94/15 96/14 96/24 98/24 99/8 99/16 99/17 99/24 101/10
**day [4]** 27/17 35/19 44/18 60/21
**days [1]** 40/14
**dead [1]** 39/5
**deal [5]** 19/17 47/15 49/21 59/22 98/23
**dealt [1]** 67/2
**deceiving [2]** 37/13 38/14
**deception [1]** 39/9
**decide [4]** 68/4 69/23 77/25 97/4
**decided [2]** 12/20 13/2
**deciding [5]** 38/6 66/15 66/19 68/13 70/17
**decision [5]** 14/17 66/21 66/25 67/23 68/5
**declare [1]** 58/2
**deductions [1]** 67/12
**deemed [1]** 5/10
**defend [1]** 47/14
**defendant [44]** 3/9 4/11 5/11 10/16 17/17 19/4 21/12 21/16 24/2 27/16

30/25 31/10 31/15 32/25 42/3 47/6 72/20 72/21 72/25 73/6 73/22 74/8 78/25 79/10 79/21 83/23 84/16 86/13 87/22 93/8 101/21 104/1 105/3 105/5 105/16 105/22 106/20 107/16
**defendant's [14]** 5/5 5/10 6/19 6/21 9/20 9/23 10/1 10/5 18/14 20/8 29/2 31/15 75/21 106/20
**defendants [7]** 1/7 1/17 2/12 22/1 83/7 104/1 109/4
**defense [19]** 9/5 10/8 11/22 13/14 15/7 15/20 30/4 31/23 32/6 34/6 35/22 35/22 42/23 70/10 70/11 70/25 72/20 73/6 109/14
**defendant [1]** 72/23
**defer [1]** 3/7
**definitely [1]** 62/16
**degree [2]** 62/16 71/24
**delays [1]** 106/2
**deliberate [6]** 11/13 11/13 25/15 59/8 65/4 77/14
**deliberating [1]** 18/18
**deliberation [1]** 25/7
**deliberations [7]** 66/17 67/8 77/21 78/14 83/2 89/19 109/18
**demand [2]** 36/13 63/5
**demeanor [1]** 37/10
**demonstrative [3]** 32/9 85/25 87/2
**denied [4]** 39/8 40/4 40/5 40/5
**deny [4]** 12/5 12/15 61/21 61/23
**department [6]** 7/19 46/24 47/22 50/6 56/24 90/6
**depend [1]** 69/14
**deposition [18]** 9/8 22/13 30/7 30/8 30/9 42/10 42/13 42/14 42/25 43/3 43/22 44/15 45/9 47/25 48/3 48/14 68/10 68/11
**depositions [2]** 9/12 42/10
**depression [1]** 52/7
**deputy [10]** 8/4 11/3 14/11 14/19 65/10 65/20 83/8 84/9 88/1 104/5
**desire [1]** 81/3
**desk [4]** 21/15 23/1 23/2 59/6
**despite [5]** 39/6 42/20 47/21 47/22 89/1
**destruction [1]** 37/16
**detail [3]** 36/16 43/10 69/15
**detailed [1]** 32/3
**determine [2]** 74/16 96/9
**determining [4]** 76/9 76/11 77/12 80/4
**devastating [1]** 60/17
**device [1]** 88/12
**devices [2]** 18/7 71/9
**did [46]** 4/4 17/11 18/3 18/19 20/15 21/17 21/20 24/23 24/25 28/23 29/3 29/3 31/1 33/4 33/13 38/7 38/8 38/10 38/11 38/11 38/13 38/17 39/18 41/21 42/25 44/15 44/18 56/15 56/16 57/25 58/1 58/1 58/6 61/14 68/14 68/15 68/18 68/18 68/20 68/22 69/3 71/6 88/15 91/18 108/2
**didn't [33]** 20/11 21/17 21/19 21/19 27/1 27/14 28/7 28/22 28/8 31/19 32/20 37/8 44/22 45/6 45/17 46/17 46/19 47/17 48/2 48/14 49/16 54/9 56/7 56/13 56/20 56/22 59/24 60/17 64/13 90/24 98/3 98/8 102/12
**differ [1]** 68/22
**difference [1]** 20/13
**different [5]** 42/15 43/14 43/18 61/2 69/4
**differently [1]** 78/6
**difficult [2]** 19/16 19/22
**difficulty [1]** 94/13

**D**

**digital [7]** 24/24 26/24 27/2 27/3 27/7 91/9 92/12
**dillydallying [1]** 62/9
**dire [2]** 17/6 26/21
**direct [9]** 16/18 20/2 24/9 29/22 31/2 34/21 67/11 67/14 67/19
**directed [1]** 59/25
**directly [7]** 17/1 22/16 36/3 57/5 68/21 72/6 79/14
**disability [3]** 41/23 52/15 56/21
**disabled [2]** 52/1 63/6
**disagree [1]** 108/3
**disagreed [1]** 108/2
**disbelieve [1]** 68/6
**disc [1]** 34/23
**discectomy [1]** 34/23
**discharge [1]** 105/19
**disclose [4]** 18/3 18/19 20/10 59/21
**disclosed [5]** 29/7 58/4 58/8 59/4 61/23
**discovery [10]** 18/4 18/7 18/10 20/5 38/18 41/18 41/25 43/21 55/13 64/18
**discretion [2]** 33/18 33/19
**discuss [5]** 4/2 10/24 36/7 38/2 77/23
**discussed [3]** 9/20 39/4 50/2
**discussing [2]** 36/17 78/3
**discussion [7]** 31/17 34/2 52/24 53/21 81/19 82/14 90/8
**discussions [1]** 66/17
**disingenuous [1]** 54/15
**disk [4]** 28/4 28/8 89/13 95/10
**dismissal [1]** 50/19
**disorder [1]** 52/7
**disparity [1]** 27/23
**disposal [1]** 27/19
**disposition [1]** 88/13
**disprove [1]** 67/17
**dispute [2]** 67/18 68/8
**disregard [1]** 67/22
**distinction [3]** 17/6 67/18 76/13
**distraction [1]** 49/1
**DISTRICT [4]** 1/1 1/1 104/25 104/25
**divide [1]** 12/20
**division [2]** 1/2 81/12
**DMX [4]** 26/25 26/25 27/14 60/22
**do [92]** 4/14 4/19 5/1 5/4 8/16 9/9 9/11 9/12 11/4 11/14 12/7 12/23 13/4 13/9 13/22 13/25 14/4 15/9 23/25 33/18 33/19 38/6 45/15 46/12 47/9 49/12 55/6 55/24 56/14 58/17 60/5 60/11 60/11 61/7 61/9 61/14 62/10 62/10 65/3 65/3 65/4 68/2 68/13 69/3 69/14 72/3 72/4 72/5 73/17 77/24 78/3 78/5 78/24 79/17 80/2 80/4 81/14 83/19 83/25 85/20 86/24 87/12 87/18 88/8 89/2 89/9 89/16 89/17 89/18 89/19 90/14 92/16 92/17 93/5 94/5 94/6 96/5 97/10 97/11 97/20 98/21 99/1 99/23 101/8 103/6 103/12 105/4 105/18 106/3 106/12 106/25 108/10
**docket [3]** 91/15 91/20 91/21
**doctor [15]** 28/3 28/14 44/13 44/17 45/13 45/14 45/23 47/24 48/4 48/8 48/11 54/22 56/13 58/16 62/8
**doctor's [1]** 24/10
**doctors [16]** 18/20 34/19 40/15 40/18 40/20 41/22 44/11 46/12 47/18 48/25 49/16 49/17 49/17 58/9 58/11 58/15
**documents [7]** 7/2 18/10 19/19 20/5 28/20 50/20 91/13
**does [12]** 5/14 10/18 23/17 52/11 55/1 69/7 69/21 72/16 72/18 76/2 76/2 91/25
**doesn't [19]** 8/1 13/24 37/1 37/2 37/3

37/7 42/6 44/9 48/9 48/19 52/10 52/11 57/8 60/20 60/20 60/22 70/19 94/20 103/7
**doing [6]** 8/19 45/15 53/10 56/14 72/2 90/1
**dollar [1]** 80/12 80/14 80/20
**domestic [1]** 19/5
**don't [57]** 4/13 5/19 6/2 7/21 8/17 10/9 10/8 24/14 31/25 32/7 32/7 32/11 32/14 32/15 32/16 32/23 33/8 36/21 44/25 44/25 46/11 47/6 48/3 49/14 53/2 53/17 55/4 56/7 57/1 59/21 61/3 62/18 83/15 84/3 85/20 87/17 89/21 89/25 90/5 91/19 93/15 93/24 94/3 94/9 94/10 95/6 95/25 96/4 97/7 98/12 98/25 99/11 99/24 102/13 103/6 106/7 107/8
**done [7]** 26/8 37/16 38/1 42/20 56/19 58/16 77/5
**Donovan [2]** 1/12 2/4
**double [1]** 102/16
**double-team [1]** 102/16
**doubt [3]** 17/4 17/8 45/11
**down [24]** 20/18 20/18 21/7 21/8 24/15 24/16 24/17 24/21 36/4 45/2 50/1 51/19 55/23 56/9 58/24 59/1 59/7 59/9 59/10 62/4 62/5 64/16 81/4 99/12
**DPI [1]** 34/20
**Dr [2]** 28/19 46/16
**Dr. [67]** 16/24 16/24 16/24 16/25 24/4 24/4 24/5 24/6 24/22 25/5 25/8 25/10 25/16 25/21 26/6 26/7 26/10 26/22 26/24 28/20 28/21 34/20 34/20 34/21 34/21 41/21 41/22 44/12 44/12 44/13 45/13 45/17 45/17 45/25 46/3 46/16 46/19 46/19 46/22 47/19 47/25 48/2 48/2 48/3 48/3 48/4 48/8 48/12 48/13 48/17 48/18 49/5 49/7 49/7 49/8 49/19 49/22 56/13 56/15 58/8 58/8 60/19 60/22 61/6 61/14 62/9 63/22
**Dr. Frank [6]** 34/21 44/12 45/13 45/17 45/25 46/3
**Dr. Gelbard [1]** 41/21
**Dr. Hall [8]** 16/24 16/24 25/8 25/10 25/16 25/21 34/21 63/22
**Dr. Hyde [4]** 48/12 48/17 49/5 49/8
**Dr. Hyde's [1]** 48/13
**Dr. Kolb [2]** 56/13 56/15
**Dr. Livingston [8]** 26/6 26/7 26/10 26/22 26/24 46/22 49/22 60/22
**Dr. Munoz [6]** 34/20 44/12 44/13 45/17 58/8 58/8
**Dr. Munoz's [1]** 46/16
**Dr. Nordt [9]** 24/5 24/6 24/22 46/19 46/19 48/2 49/7 49/19 60/19
**Dr. Nordt's [1]** 25/5
**Dr. Osborn [8]** 47/19 48/2 48/3 48/3 48/4 48/8 48/18 49/7
**Dr. Osborn's [1]** 47/25
**Dr. Rosen [1]** 41/22
**Dr. Rudolph [10]** 16/24 16/25 24/4 24/4 28/20 28/21 34/20 61/6 61/14 62/9
**drafted [2]** 51/18 101/7
**draw [4]** 36/6 37/17 43/16 47/18
**drawn [1]** 36/7
**Drs [1]** 41/21
**drugs [1]** 41/24
**Duane [3]** 1/14 2/6 16/7
**due [1]** 73/9
**duration [3]** 24/8 93/13 100/23
**during [21]** 3/3 8/11 8/15 16/11 17/6 18/22 38/16 43/11 44/22 50/23 52/2 53/8 67/22 69/5 82/18 86/1 101/5 102/23 103/21 106/3 107/20
**duties [1]** 67/7

**duty [18]** 12/3 16/14 16/16 16/16 16/17 17/3 17/9 57/25 81/24 83/4 87/4 88/18 90/22 91/1 91/4 91/15 91/17 91/17
49/13 66/18 75/5 75/7 75/18 77/14 77/23

**E**

**each [10]** 11/9 14/6 43/18 68/4 70/9 71/23 73/5 77/25 81/24 83/4
**earlier [3]** 11/4 30/9 44/23
**early [2]** 11/5 44/20
**earning [1]** 75/4
**earnings [4]** 35/12 76/19 76/22 77/4
**easiest [1]** 106/16
**easy [2]** 97/10 102/5
**eat [4]** 11/6 11/13 11/13 84/3
**economic [1]** 27/22
**edge [1]** 27/5
**educated [1]** 46/23
**education [1]** 26/23
**Effective [1]** 76/17
**effectively [1]** 65/1
**effort [3]** 75/22 76/1 77/24
**either [4]** 67/19 72/2 81/7 83/19
**Election [1]** 78/11
**electro [1]** 28/23
**electro-stem [1]** 28/23
**electronic [2]** 34/23 88/12
**element [1]** 35/2
**elements [3]** 74/21 76/14 80/9
**Eleventh [1]** 3/21
**Elfenbein [13]** 1/17 2/13 7/13 9/4 17/17 18/22 19/10 29/11 30/8 30/19 36/16 97/16 101/20
**ELMO [2]** 7/11 27/19
**else [7]** 49/18 64/19 65/2 82/19 89/20 90/5 93/3
**employee [1]** 21/11
**employees [3]** 67/4 67/6 67/7
**employment [2]** 43/8 75/13
**end [7]** 2/25 13/18 32/15 34/2 53/21 55/20 82/14
**enough [5]** 20/24 22/22 56/8 70/14 102/5
**enter [1]** 80/20
**entering [1]** 80/7
**enters [4]** 8/24 15/15 66/9 104/15
**entire [11]** 26/3 26/4 35/13 35/14 43/5 76/13 88/7 88/20 89/16 90/23 91/22
**entirely [2]** 37/23 38/17
**entitled [6]** 76/22 76/23 76/24 86/22 88/7 94/2
**epidural [2]** 40/21 43/1
**equal [2]** 67/1 79/25
**equals [1]** 67/2
**equipment [3]** 101/8 103/13 104/21
**Esq [4]** 1/12 1/14 1/17 1/17
**essential [2]** 70/11 70/22
**essentially [1]** 26/15
**establish [4]** 12/7 20/15 70/22 72/25
**establishes [1]** 69/25
**esteemed [1]** 60/4
**estimate [1]** 34/22
**evaluation [3]** 24/23 25/23 54/19
**even [17]** 7/24 37/2 37/3 37/14 45/17 45/25 46/1 46/1 46/21 48/9 53/8 56/4 57/3 72/17 77/8 91/21 94/11
**event [4]** 11/15 55/5 83/18 99/13
**events [5]** 17/11 30/23 38/12 44/2 47/13
**ever [6]** 39/2 40/12 41/1 42/25 54/12 54/15
**every [2]** 59/21 70/10
**everybody [6]** 8/3 31/18 53/9 58/14
**everyone [1]** 89/20
**everything [12]** 22/10 38/17 42/3 51/6

## E

**everything... [8]** 58/6 58/12 58/17 64/19 82/5 82/6 82/19 82/22
**evidence [83]** 2/25 10/6 10/24 12/2 12/7 12/10 17/5 17/11 17/20 27/15 36/5 36/7 36/22 37/6 37/7 37/14 41/13 47/3 48/12 49/14 54/1 54/11 55/7 55/17 56/3 56/4 59/18 66/18 67/9 67/11 67/14 67/16 67/19 67/20 67/24 68/2 68/3 68/23 68/25 69/2 69/24 70/4 70/12 70/13 70/14 70/18 70/20 70/23 71/18 72/16 72/18 72/25 73/21 74/3 74/14 74/20 74/23 75/12 75/15 76/4 76/7 78/1 78/10 78/24 79/18 80/2 86/6 86/17 86/18 86/19 86/24 87/3 87/10 87/14 89/1 89/24 93/16 93/18 93/22 94/2 94/4 94/13 105/4
**exact [2]** 22/21 74/18
**exactly [3]** 53/9 91/4 93/15
**exaggerating [1]** 48/6
**exam [1]** 49/12
**examination [15]** 19/13 20/2 20/4 20/9 21/16 23/15 24/7 24/9 24/22 25/6 28/14 29/2 38/16 48/15 56/12
**examine [5]** 30/13 48/5 78/4 94/2 97/22
**examined [2]** 24/11 97/14
**example [3]** 73/10 73/17 94/17
**except [5]** 67/21 72/9 81/12 82/22 95/25
**excerpt [3]** 102/23 102/23 103/21
**excerpts [2]** 53/11 53/13
**excuse [2]** 3/9 5/8
**exhibit [35]** 6/11 6/12 6/14 6/19 6/21 6/22 7/2 9/23 10/1 18/14 20/8 25/13 29/17 34/11 43/7 44/6 46/5 50/11 53/7 54/2 58/3 58/7 81/24 82/2 82/3 82/17 86/23 86/23 86/24 90/25 93/5 97/13 97/18 97/21 98/1
**exhibits [30]** 4/13 4/17 4/22 5/25 6/1 9/10 9/13 9/14 9/18 9/21 10/5 10/10 10/15 14/3 14/5 14/6 14/6 14/12 32/9 67/10 70/20 82/4 82/20 83/6 86/6 87/14 106/12 106/19 106/20 109/2
**exist [1]** 57/3
**existed [1]** 75/9
**expectancy [8]** 35/15 35/15 76/4 76/6 76/11 76/13 76/14 76/16
**expense [2]** 63/17 63/20
**expenses [10]** 29/24 31/20 31/21 33/7 34/19 34/25 35/1 63/19 74/24 80/11
**experience [3]** 61/25 64/21 69/18
**experienced [1]** 63/25
**expert [7]** 26/19 26/20 28/1 28/9 28/11 69/16 75/19
**expiration [1]** 50/5
**explain [8]** 28/23 59/20 66/13 66/20 71/21 73/3 73/13 77/22
**explained [6]** 58/3 58/5 58/6 58/7 58/9 60/15
**Explanation [1]** 78/11
**explanatory [1]** 95/6
**express [2]** 106/3 108/5
**expressed [1]** 69/20
**extension [1]** 51/17
**extent [1]** 74/22
**external [1]** 88/11
**extract [1]** 39/18
**extremely [2]** 49/6 50/20
**eyes [1]** 56/8
**eyewitness [1]** 67/15

## F

**fabrications [2]** 40/11 55/16
**face [3]** 40/2 57/5 92/14

---

**facilities [2]** 63/23 65/20
**facility [1]** 63/22
**fact [20]** 28/2 37/14 38/22 39/6 40/7 45/11 47/21 47/22 49/7 53/8 66/24 67/15 67/17 69/1 69/15 70/17 77/6 77/14 86/1 89/1
**facts [6]** 36/15 36/17 67/16 67/23 71/17 78/9
**factual [2]** 71/23 73/5
**failed [4]** 20/10 69/3 70/5 75/12
**failing [1]** 72/4
**fails [1]** 70/22
**failure [1]** 71/23 76/1
**fair [3]** 53/2 74/19 99/20
**fairly [4]** 47/1 54/3 73/24 74/17
**faith [1]** 75/23
**faking [1]** 24/14
**fallen [1]** 44/23
**falsehood [3]** 40/4 43/2 69/13
**falsely [1]** 69/1
**falsified [1]** 54/25
**falsify [1]** 54/21
**familiar [1]** 26/25
**family [2]** 63/9 63/14
**fan [1]** 60/24
**far [4]** 26/8 55/21 56/3 84/4
**farther [1]** 48/4
**fashion [1]** 49/2
**fat [1]** 24/17
**fault [1]** 73/9
**favor [1]** 73/5
**February [1]** 100/20
**federal [1]** 76/20
**feel [2]** 54/3 83/16
**feeling [1]** 62/1
**fees [2]** 77/10 77/12
**feigning [1]** 48/6
**fell [4]** 21/9 22/20 22/25 23/18
**few [5]** 9/20 12/16 38/7 68/14 92/2
**field [2]** 27/7 69/18
**figure [4]** 73/18 92/15 94/1 96/17
**file [18]** 6/6 6/6 6/7 6/19 6/20 9/16 9/24 10/2 41/9 42/3 50/10 50/22 91/22 92/8 99/1 100/8 106/17 106/17
**filed [7]** 38/25 41/5 50/3 51/9 51/10 56/23 106/14
**files [1]** 41/10
**filing [1]** 42/8
**filings [1]** 91/15
**fill [3]** 73/11 80/12 81/1
**film [1]** 37/10
**final [4]** 8/3 25/12 25/19 25/23
**finally [2]** 39/17 39/21
**find [28]** 12/7 12/9 12/10 12/11 41/7 41/25 47/8 47/10 55/6 70/24 73/8 73/18 73/19 74/2 74/22 75/11 76/21 76/25 77/3 77/10 78/24 79/18 80/2 80/6 94/7 102/10 103/6 105/4
**finding [4]** 39/21 73/5 73/12 73/14
**findings [1]** 49/12
**finds [1]** 26/1
**fine [15]** 3/6 3/13 3/15 5/17 5/19 7/9 10/12 31/21 32/14 57/6 102/20 102/21 102/25 103/24 104/3
**finish [1]** 64/5
**finished [2]** 66/16 90/3
**firm [2]** 57/24 57/25
**first [23]** 12/21 18/1 24/5 25/12 25/13 31/23 32/13 36/10 36/12 36/22 40/8 46/12 47/23 56/6 71/18 72/25 78/12 85/2 85/7 96/2 96/8 97/16 100/2
**five [10]** 13/5 13/8 33/25 34/1 34/4 39/6 64/8 65/19 98/17 98/18
**five-minute [3]** 13/5 13/8 65/19
**FL [1]** 1/13 1/15 1/23

---

**flared [1]** 62/5
**flight [1]** 23/13
**flipping [1]** 20/5
**floor [2]** 21/9 22/20
**FLORIDA [10]** 1/1 1/20 6/5 6/15 6/17 6/18 9/24 46/25 61/8 105/1
**fluoroscopic [1]** 27/4
**focus [2]** 29/5 30/19
**follow [4]** 66/14 66/18 66/19 75/23
**followed [3]** 5/15 5/16 30/2
**following [10]** 4/23 50/5 71/17 74/21 75/19 96/24 99/7 99/16 101/10 103/15
**follows [7]** 14/23 31/17 52/24 66/4 81/19 84/23 104/10
**food [1]** 11/6
**fool [2]** 62/5 64/17
**fooled [1]** 59/21
**forced [2]** 41/9 47/9
**foregoing [1]** 108/19
**foreperson [9]** 78/11 78/13 78/13 79/5 80/23 81/1 83/11 104/18 105/10
**foreperson's [1]** 79/7
**forget [2]** 36/22 69/9
**form [27]** 2/19 14/13 54/18 54/22 54/25 55/3 55/5 55/5 56/15 68/9 71/21 73/3 73/12 78/11 78/15 78/17 78/18 78/22 79/6 80/23 80/24 81/1 82/16 82/21 83/9 90/19 105/3
**forth [6]** 18/1 20/5 27/11 32/4 32/7 37/21
**forthright [1]** 40/24
**forthrightness [1]** 37/12
**fortunately [1]** 43/25
**forward [3]** 8/22 21/2 107/25
**found [3]** 2/18 48/13 66/12
**foundation [1]** 26/20
**four [5]** 39/7 63/9 80/9 95/21 96/20
**frame [2]** 12/17 106/7
**framing [1]** 106/7
**Frank [7]** 34/21 44/12 45/13 45/17 45/22 45/25 46/3
**Frank's [1]** 46/16
**free [3]** 26/10 54/3 65/25
**freely [2]** 8/11 8/15
**front [9]** 7/16 18/13 18/23 20/24 21/1 22/18 92/16 107/25 108/1
**Ft [1]** 59/1
**Fulgueira [1]** 1/17
**full [4]** 50/10 50/10 74/3 78/1
**function [2]** 61/13 64/25
**functionaries [1]** 38/20
**functions [1]** 39/12
**further [7]** 10/7 59/1 83/18 104/7 106/14 106/24 107/15
**fused [1]** 27/3
**future [27]** 29/25 31/20 34/25 35/1 35/11 56/17 62/17 63/1 63/2 63/17 63/20 64/3 64/5 64/21 74/24 75/1 75/4 76/12 76/14 76/19 77/1 77/4 77/8 77/9 80/11 80/14 80/18

## G

**gait [1]** 48/18
**gave [12]** 3/5 4/5 16/9 16/10 25/3 30/1 41/23 42/17 42/18 61/12 61/12 69/4
**Gelbard [1]** 41/21
**general [3]** 32/13 67/4 84/1
**generally [1]** 83/12
**gentleman [2]** 20/22 22/3
**gentlemen [25]** 10/22 15/23 16/6 18/17 19/3 21/21 23/19 27/6 27/16 28/12 30/21 31/5 34/3 34/15 35/18 36/2 37/10 55/2 57/18 59/16 65/2 65/6 65/9 82/15 105/25
**get [46]** 11/5 11/6 12/17 13/16 14/16

## G

**get...** [41] 18/6 18/8 20/24 20/25 21/19
22/12 25/3 31/15 32/11 32/12 32/19
34/6 36/4 37/15 37/18 39/14 39/15
41/7 41/9 41/10 42/8 43/10 47/12
50/12 50/13 51/22 54/22 55/3 56/23
59/22 64/3 78/7 84/19 85/5 90/4 90/9
94/19 100/3 104/21 107/10 107/11
**gets** [1] 60/17
**getting** [2] 39/17 84/12
**give** [16] 3/18 4/3 12/16 12/21 12/22
13/6 38/14 39/23 39/24 54/25 67/19
78/5 81/21 84/9 98/5 103/8
**given** [17] 2/16 4/1 11/3 11/9 31/8 36/9
37/25 40/4 42/9 48/1 77/15 78/15
78/17 79/24 82/8 98/9 103/23
**giving** [4] 16/1 40/20 42/15 46/13
**glaring** [2] 20/9 20/13
**go** [59] 2/23 4/13 5/8 6/2 8/1 8/3 11/4
11/12 14/2 14/5 14/7 18/18 20/24 25/6
25/14 28/3 31/14 32/7 33/5 33/20 34/5
34/6 36/5 36/9 36/15 39/14 47/8 47/10
52/19 55/2 55/20 58/24 59/1 60/3 65/4
66/16 78/12 78/16 79/14 79/15 81/18
81/23 82/2 82/4 83/5 84/2 84/7 84/10
86/25 87/3 97/5 98/12 98/16 99/25
102/7 106/19 106/20 107/2 107/11
**goes** [5] 3/19 14/14 48/24 52/14 89/21
**going** [84] 3/23 3/23 4/5 4/25 7/7 7/11
7/13 8/22 8/23 10/23 12/5 16/22 17/12
18/11 19/25 20/1 23/23 30/10 31/6
31/22 32/5 32/11 32/18 32/19 32/23
33/9 34/5 34/16 36/14 37/15 37/25
38/2 38/4 39/5 39/7 41/6 43/10 43/11
43/17 43/20 46/12 47/18 50/1 50/9
50/9 50/23 50/24 51/21 51/23 52/25
53/9 53/11 53/13 54/4 54/24 55/2 55/3
55/3 58/15 60/3 61/21 61/22 62/16
63/23 78/20 81/22 82/2 85/9 86/4
87/12 87/24 89/2 94/5 94/7 97/4 98/5
98/15 98/21 99/14 99/25 99/25 100/1
103/3 103/4
**good** [19] 2/4 2/6 7/23 8/25 15/2 15/16
16/6 28/3 36/2 38/11 39/12 40/25 56/8
57/18 66/11 68/18 75/23 89/12 104/16
**got** [16] 16/9 23/10 24/6 25/10 26/7
39/21 43/19 47/1 47/1 47/10 50/7
51/16 51/19 55/24 59/12 62/12 63/6
**grabbing** [1] 17/18
**grand** [1] 28/22
**grandstanding** [1] 19/16
**gray** [1] 26/17
**great** [1] 61/8
**Greg** [1] 2/13
**Gregory** [1] 1/17
**ground** [1] 62/4
**grounds** [1] 12/1
**group** [1] 11/7
**guess** [4] 14/2 22/8 92/11 99/11
**guesswork** [1] 74/9
**guy** [2] 49/22 54/17
**guys** [3] 17/18 18/23 45/18

## H

**had** [44] 2/15 2/23 4/4 6/21 16/16
16/19 17/18 17/19 17/23 21/14 23/2
28/4 28/19 28/23 29/21 32/6 39/6 42/5
44/19 44/23 45/5 45/7 46/10 49/8
54/15 54/17 56/13 56/21 56/23 59/20
61/24 62/7 63/20 63/20 68/4 68/12
75/17 84/25 87/7 88/10 93/25 98/3
98/9 108/3
**hadn't** [1] 107/12
**half** [1] 36/12 50/7

## Hall

**Hall** [8] 16/24 16/24 25/8 25/10 25/16
25/45 34/23 63/23
**hand** [11] 7/22 8/14 17/18 17/22 17/23
51/14 74/11 88/3 100/1 104/19 104/20
**hand-held** [3] 7/22 8/14 51/14
**handed** [2] 98/4 98/7
**handing** [1] 65/10
**handle** [3] 2/24 3/3 89/23
**happen** [5] 32/6 46/17 47/11 58/6
81/22
**happened** [6] 27/13 43/6 50/8 50/17
51/7 102/10
**happens** [4] 41/10 42/7 98/13 102/15
**happy** [1] 108/11
**hard** [3] 22/25 59/10 97/7
**has** [60] 4/21 4/21 7/19 20/18 26/8
26/18 27/3 28/21 33/8 34/4 35/12
36/18 37/12 37/19 46/20 48/7 48/23
51/1 51/7 51/9 51/9 54/18 55/5 56/19
58/12 58/16 60/25 69/11 69/14 69/20
70/10 70/17 74/15 75/7 75/18 75/20
76/5 76/25 77/3 78/18 80/22 81/23
83/9 84/6 87/10 90/5 90/6 90/19 91/8
91/8 92/2 92/7 92/8 92/9 93/17 96/23
96/24 97/7 97/16 98/16
**hasn't** [1] 43/6
**hate** [1] 107/2
**have** [190]
**haven't** [3] 7/21 10/25 96/21
**having** [9] 5/4 14/19 62/1 69/17 81/8
88/16 90/22 108/1 108/6
**he** [94] 4/21 16/10 16/12 16/13
16/20 17/3 19/14 19/19 20/10 20/23
21/1 22/17 22/21 24/7 24/7 24/11
24/12 24/12 24/13 24/15 24/16 24/16
24/17 24/21 24/23 24/25 24/25 25/17
25/18 25/23 25/23 25/24 25/24 25/25
26/1 26/1 26/2 26/8 26/12 26/12 26/13
26/13 26/25 27/1 27/2 27/8 27/10
27/12 27/13 28/4 28/5 28/7 28/7 28/8
28/15 28/17 28/21 28/23 28/24 28/24
28/25 28/25 30/2 30/2 34/4 37/3 45/8
47/23 48/5 48/15 48/18 48/20 49/19
49/23 53/7 56/14 60/19 60/20 60/22
60/23 60/24 60/25 61/1 61/1 61/4 61/9
61/11 61/12 61/13 68/20 69/8 88/3
98/3
**he'll** [1] 104/20
**he's** [4] 44/15 46/19 46/20 47/21
**headquarters** [1] 58/25
**health** [4] 38/15 54/17 54/21 76/8
**hear** [16] 47/12 52/12 56/13 64/12
64/12 64/13 84/20 96/25 98/20 98/23
99/5 99/17 101/9 102/10 103/14 104/7
**heard** [14] 5/24 10/23 10/25 23/7 40/14
54/15 54/16 54/17 60/1 63/21 63/21
64/11 68/9 87/8
**hearing** [27] 7/24 51/21 52/17 53/5
53/16 92/4 92/8 92/25 94/15 94/17
96/14 96/17 96/25 97/1 99/5 99/9
99/16 100/2 100/4 100/14 100/16
100/18 100/20 100/22 101/10 102/24
103/22
**hearings** [24] 6/9 91/24 92/1 92/2
93/12 93/19 94/10 94/12 95/17 95/20
95/21 96/3 96/8 96/10 96/13 96/18
96/23 96/24 98/17 98/18 98/25 99/7
99/8 103/15
**heightened** [1] 24/15
**held** [3] 7/22 8/14 51/14
**Hello** [3] 21/24 51/15 57/21
**helpful** [1] 69/17
**her** [112]
**here** [53] 17/16 18/22 19/5 24/6 24/14
25/1 26/3 26/6 26/11 26/17 26/22

## (continued)

27/18 28/6 30/7 30/22 30/22 31/6
31/8 32/2 38/13 40/19 35/12 40/6
42/20 47/13 47/20 49/10 51/11 51/12
51/19 51/23 52/12 54/4 59/3 59/3 59/4
60/23 65/2 68/12 78/15 79/11 84/5
90/23 95/25 96/6 97/3 98/11 100/22
101/7 102/1 103/4 108/12
**here's** [4] 49/7 54/16 63/9 94/19
**herniation** [2] 26/1 26/2
**herself** [4] 21/9 22/20 24/18 37/20
**hesitate** [1] 78/3
**hey** [1] 54/24
**hide** [5] 19/17 38/18 42/3 60/6 60/17
**hiding** [4] 37/14 55/14 59/12 61/24
**high** [3] 17/8 39/9 64/10
**high-tech** [1] 64/10
**him** [14] 4/21 20/23 25/11 26/19 26/20
26/22 26/23 27/7 28/23 34/5 49/21
54/21 54/21 98/6
**hire** [5] 47/8 47/16 47/17 48/3 57/19
**hired** [2] 48/4 57/24
**hiring** [1] 47/15
**his** [26] 17/14 24/12 24/23 25/11 25/12
25/12 25/13 25/23 26/7 26/23 29/1
34/4 44/15 46/8 46/25 46/25 47/23
48/1 48/3 48/10 48/12 48/14 48/14
49/5 49/6 56/14
**history** [3] 18/20 26/9 50/10
**hit** [1] 59/10
**hold** [2] 11/8 34/11
**holding** [1] 17/22
**home** [2] 76/17 76/24
**honest** [4] 39/22 40/24 41/15 78/5
**Honor** [102] 2/6 2/11 3/2 3/6 3/12 3/15
4/9 4/12 5/15 8/8 8/21 9/3 9/6 9/11
9/22 10/3 10/9 10/16 10/19 10/21
11/21 11/24 13/2 13/7 13/19 15/5 15/6
15/8 15/11 15/12 15/19 15/21 16/3
27/25 29/10 30/15 30/18 32/17 33/17
33/23 33/24 34/7 34/10 52/21 52/25
53/19 57/13 57/16 59/14 59/19 61/20
64/9 65/7 65/15 65/17 81/17 82/9
82/10 83/21 83/22 83/24 84/15 85/16
85/22 85/25 86/7 86/12 86/14 87/21
88/9 88/23 89/4 89/11 90/16 90/21
91/3 93/4 93/7 95/15 97/12 97/15
97/23 98/2 99/21 99/22 100/7 101/19
102/18 102/20 102/25 103/25 105/14
105/17 105/21 105/23 106/22 106/23
107/1 107/17 107/18 108/8 108/13
**Honor's** [1] 8/11
**HONORABLE** [3] 1/9 26/21 30/10
**hopefully** [1] 55/23
**hoping** [2] 43/21 43/23
**horse** [1] 39/5
**hospital** [4] 34/19 63/17 74/24 80/11
**hospitals** [1] 46/24
**hour** [7] 11/9 36/9 36/11 36/15 100/21
101/16 103/20
**hours** [4] 14/15 54/2 95/20 95/21
**how** [21] 7/10 12/19 14/14 14/16 31/3
32/5 37/24 45/9 53/13 57/10 68/5
89/23 94/3 94/7 94/11 95/7 96/18 97/7
100/4 100/8 104/21
**however** [11] 9/13 10/9 19/18 28/1 29/2
30/12 69/21 70/4 72/18 81/10 89/16
**human** [1] 37/22
**hurricane** [4] 41/12 60/13 60/16 60/18
**hurry** [1] 13/25
**hurt** [2] 40/13 46/10
**Hyde** [4] 48/12 48/17 49/5 49/8
**Hyde's** [1] 48/13

## I

**I'd** [4] 83/25 105/25 106/12 107/2

**I**

**I'll [39]** 3/7 3/8 4/19 4/20 4/24 5/4 5/6 6/4 9/18 11/11 11/19 12/15 14/4 14/5 14/6 14/10 14/14 20/24 31/13 31/15 35/21 35/22 35/24 37/18 49/8 59/16 81/22 82/1 82/20 83/14 84/18 85/5 88/3 95/19 97/25 100/11 103/5 106/4 107/10
**I'm [52]** 3/23 4/5 4/25 5/16 12/5 13/23 13/24 17/12 18/11 30/9 31/22 32/5 32/7 32/18 32/19 32/24 33/9 34/5 34/16 36/6 36/14 36/14 38/2 43/10 47/18 50/15 51/21 53/14 59/15 60/3 78/20 85/9 85/10 86/3 87/5 87/12 87/24 90/24 91/3 91/4 91/12 91/12 92/15 96/20 99/13 99/25 99/25 101/23 103/3 103/4 104/21 108/11
**I've [11]** 11/9 20/6 31/8 32/6 36/4 36/9 47/10 55/24 101/7 102/7 103/23
**I.D [1]** 109/3
**icon [1]** 95/5
**idea [1]** 7/23
**identified [3]** 6/16 92/3 99/11
**identifies [1]** 92/4
**identify [2]** 96/25 99/6
**images [6]** 25/24 25/25 26/1 70/3 70/5 70/7
**imaging [7]** 24/23 24/25 25/18 25/19 25/23 27/7 29/3
**IME [2]** 24/8 24/8
**immediately [1]** 21/4
**impaired [1]** 26/4
**impairment [6]** 24/16 24/25 25/4 26/3 29/4 35/13
**impeach [1]** 42/13
**impeachment [1]** 68/24
**important [4]** 51/18 68/5 69/1 69/15
**imposed [1]** 74/7
**impress [2]** 38/8 68/15
**impression [1]** 51/22
**improper [5]** 30/15 30/16 59/15 71/12 71/14
**inaccurately [1]** 69/10
**inadequate [1]** 71/11
**incident [44]** 22/25 23/14 23/14 23/16 23/17 23/20 26/5 37/17 40/18 40/19 40/22 42/4 43/4 43/15 43/24 44/6 44/8 44/12 44/15 44/18 46/15 46/19 47/1 47/23 47/24 50/4 51/1 51/2 51/8 51/12 54/8 54/10 54/12 54/18 56/11 56/11 56/16 56/16 56/24 58/19 58/19 58/20 58/21 59/5 61/11
**included [3]** 3/20 4/4 18/9
**including [1]** 6/8
**income [5]** 29/25 76/15 76/17 76/20 76/23
**Incorporated [1]** 105/3
**increased [1]** 74/7
**independent [3]** 24/7 25/5 29/2 48/8 69/24
**index [5]** 10/10 10/12 10/13 109/2 109/9
**indicate [1]** 7/5
**indicated [1]** 54/1
**indicating [1]** 46/4
**indication [2]** 77/16 100/4
**individual [1]** 19/24
**industry [3]** 18/25 19/8 19/9
**infer [1]** 70/6
**inference [1]** 37/18
**inferences [1]** 36/6
**infirm [1]** 51/7
**influenced [1]** 66/22
**information [13]** 18/7 41/12 44/9 46/15

46/16 56/15 58/25 59/7 60/6 60/12 61/15 88/4 90/18
**initial [5]** 25/4 25/12 25/19 39/1 54/19
**injections [2]** 40/21 46/13
**injured [11]** 21/9 22/20 23/9 24/1 39/2 40/12 41/1 48/23 61/11 75/25 76/5
**injuries [15]** 24/15 31/3 39/7 40/5 40/20 41/8 45/18 49/14 51/6 54/7 60/23 61/22 62/4 62/7 62/12
**injury [22]** 16/13 16/18 16/19 16/19 29/22 29/23 31/10 35/8 42/18 42/19 45/2 46/11 46/11 47/3 48/6 48/23 48/24 72/10 72/23 74/13 75/20 76/9
**innocent [1]** 69/12
**inputting [1]** 59/7
**insert [1]** 73/16
**insignia [1]** 21/17
**inspection [1]** 71/14
**instance [2]** 20/9 42/17
**instead [6]** 28/10 28/11 33/19 48/2 90/22 106/16
**instruct [8]** 11/12 14/5 30/10 38/4 65/12 66/1 90/21 94/23
**instructed [4]** 17/6 42/11 74/2 75/5
**instruction [6]** 3/21 4/1 22/12 37/15 87/11 102/21
**instructions [29]** 2/18 2/24 3/2 3/4 3/8 8/6 11/1 14/12 14/14 17/12 17/13 30/11 37/25 38/1 38/3 51/14 65/11 65/20 66/10 66/12 66/19 67/21 77/15 78/20 82/7 82/16 82/21 82/24 109/17
**insurance [4]** 39/15 54/17 54/22 54/25
**intangible [2]** 74/14 74/14
**intend [1]** 32/3
**intentional [1]** 69/13
**interest [3]** 38/10 68/17 78/9
**interested [1]** 95/18
**interesting [2]** 46/2 50/21
**international [1]** 21/25
**internet [3]** 90/13 90/13 95/1
**interpretation [1]** 67/24
**interpreted [1]** 77/16
**interrogatories [13]** 18/5 18/6 29/6 31/8 32/22 40/6 40/8 40/9 41/14 57/25 58/23 63/18 64/18
**interrogatory [3]** 20/6 40/3 41/19
**interrupt [1]** 32/16
**intervention [1]** 39/24
**introduce [3]** 9/10 9/13 9/14
**introduced [3]** 74/15 93/22 94/3
**introducing [3]** 6/2 6/4 94/13
**invade [1]** 8/17
**invite [1]** 23/19
**invited [6]** 21/7 59/7 59/23 64/15 89/2 94/4
**involved [7]** 44/19 46/9 46/14 54/12 64/6 66/24 67/3
**involving [1]** 16/12
**iPod [1]** 28/10
**irregular [1]** 61/14
**is [271]**
**isn't [3]** 18/11 27/5 29/12
**issue [9]** 8/10 12/13 12/25 16/14 62/8 74/1 77/15 93/21 98/23
**issues [5]** 60/3 71/23 73/5 81/15 90/22
**it [226]**
**it's [58]** 4/2 5/3 6/16 12/24 19/21 20/13 27/23 32/5 32/25 39/4 39/6 39/8 40/2 40/5 42/11 42/15 44/6 44/8 44/8 45/16 45/19 46/6 48/20 48/24 50/10 50/11 51/17 51/19 52/17 53/2 53/3 53/4 53/17 55/3 58/22 59/3 60/10 60/18 86/18 88/12 89/24 91/19 91/21 92/12 92/11 92/24 93/2 93/10 93/11 93/16 94/2 95/6 95/7 95/20 100/6 104/18

106/16 107/24
**its [7]** 16/16 29/14 29/16 59/23 67/4 67/6 71/15
**itself [7]** 88/12 91/7 92/7 92/14 92/17 92/18 92/22

**J**

**Janice [2]** 58/22 59/4
**January [2]** 42/21 42/22
**Japan [13]** 16/13 18/24 20/19 20/20 22/2 22/21 23/1 23/9 23/18 26/5 30/24 35/19 44/5
**JCC's [2]** 6/10 91/23
**job [3]** 49/13 64/4 108/2
**Jorge [1]** 104/18
**judge [12]** 1/9 5/18 13/13 17/20 27/22 38/4 62/22 91/6 92/10 95/16 96/21 108/6
**judges [1]** 78/8 78/9
**judgment [3]** 11/25 80/7 109/12
**judgments [1]** 10/25
**judicial [2]** 38/20 39/24
**Judith [2]** 1/22 108/24
**judy [1]** 1/24
**July [1]** 48/1
**JUNE [3]** 1/6 43/8 104/12
**juror [1]** 2/15
**jurors [3]** 65/24 77/23 103/7
**jury [138]**
**jury's [1]** 98/9
**just [55]** 2/16 2/19 3/1 3/25 4/3 5/24 6/4 6/13 7/22 11/15 12/24 13/16 13/22 18/21 22/3 31/18 31/21 31/25 32/8 32/14 32/24 33/2 36/15 40/3 51/20 55/4 55/22 61/3 61/7 63/20 63/21 65/2 74/4 74/19 84/1 84/5 84/5 85/9 85/10 86/4 87/16 87/17 87/24 88/3 91/19 95/4 95/9 96/7 97/9 97/17 98/16 99/13 99/14 107/10 107/24 108/4
**justice [9]** 30/23 61/24 64/21 64/22 64/24 65/2 65/3 65/3 67/2
**justified [1]** 74/3

**K**

**keep [5]** 8/18 45/14 45/15 69/6 106/13
**kept [3]** 14/25 39/5 41/23
**kicked [1]** 24/12
**kilobytes [1]** 100/6
**kind [3]** 64/3 64/7 91/17
**KIRK [1]** 1/18
**knee [1]** 24/12
**knew [1]** 53/7
**know [61]** 7/21 8/15 10/9 12/19 13/1 20/11 24/13 24/13 24/16 27/3 27/13 31/22 31/25 32/8 32/15 32/23 39/10 39/16 41/3 43/2 44/25 45/7 48/3 48/9 48/19 52/10 53/2 53/17 56/18 56/19 60/22 61/3 62/21 64/1 83/14 84/3 84/4 84/13 87/5 87/7 90/2 90/5 90/11 93/15 93/24 94/9 94/10 94/11 94/15 95/6 95/22 96/4 97/5 97/7 98/25 99/12 99/24 102/13 103/7 107/21 107/24
**knowledge [4]** 44/21 67/15 69/16 91/16
**known [2]** 35/3 70/3
**knows [1]** 56/14
**Kolb [2]** 56/13 56/15

**L**

**lack [8]** 12/2 13/10 37/11 37/12 43/22 44/1 46/15 46/16
**lacked [2]** 71/8 71/9
**lacking [1]** 19/17
**ladies [25]** 10/22 15/23 16/6 18/17 19/3 21/21 23/19 27/5 27/16 28/12 30/21

## L

**ladies...** [14] 31/5 34/3 34/15 35/17 36/2 37/10 55/2 57/18 59/16 65/1 65/6 65/9 82/15 105/25
**lady** [2] 52/9 59/4
**Lamus** [2] 104/18 104/19
**landed** [1] 59/2
**lapse** [1] 69/13
**laptop** [12] 7/14 89/18 90/4 90/10 94/20 94/20 94/22 94/23 94/24 97/8 97/16 98/19
**largest** [1] 46/24
**last** [10] 3/12 12/22 14/3 30/5 32/18 36/3 40/16 53/14 100/22 100/24
**late** [2] 2/15 12/24
**later** [7] 17/13 22/12 24/5 36/22 37/18 43/11 77/9
**laughable** [1] 57/2
**law** [14] 11/1 11/25 57/24 57/24 61/14 66/14 66/20 66/21 67/1 67/5 67/18 67/21 75/7 76/18
**lawful** [1] 58/10
**lawsuit** [2] 42/3 43/12
**lawsuits** [7] 39/7 40/5 58/2 59/20 85/3 85/14 85/17
**lawyers** [1] 67/20
**lead** [1] 67/13
**leads** [3] 39/16 39/16 39/16
**learn** [1] 43/23
**learned** [2] 42/22 42/24
**least** [1] 95/21
**leave** [5] 23/6 35/24 82/16 82/24 88/17
**leaving** [1] 55/20
**led** [1] 16/18
**left** [6] 23/24 29/9 33/14 34/4 61/1 82/19
**legal** [12] 55/9 71/2 71/19 72/6 72/11 72/22 73/2 73/22 79/1 79/11 105/6 107/23
**legally** [1] 79/18
**length** [2] 76/9 93/14
**less** [3] 11/9 25/19 74/5
**let** [27] 4/24 5/6 8/3 11/22 13/1 31/13 31/15 31/22 31/22 32/6 32/14 33/19 34/5 35/21 56/6 62/5 64/17 66/21 81/22 88/1 89/2 94/5 95/12 97/5 102/7 104/4 107/24
**let's** [12] 19/21 21/21 24/5 25/4 25/4 27/24 28/17 54/23 59/22 63/11 81/18 85/5
**letter** [1] 43/7
**letting** [2] 31/23 33/20
**level** [1] 39/9
**liability** [3] 23/16 23/22 56/4
**lie** [1] 39/13
**life** [9] 35/15 51/1 76/4 76/6 76/10 76/11 76/13 76/13 76/14
**light** [2] 60/25 74/19
**like** [33] 9/10 9/13 12/19 12/21 13/15 13/24 15/23 21/3 28/9 28/25 31/21 32/3 33/11 33/16 47/9 48/24 52/13 55/4 57/1 71/25 72/3 72/5 83/25 84/1 92/3 92/19 95/2 95/3 100/14 103/4 105/25 106/12 107/19
**likely** [3] 17/11 46/17 70/15
**limit** [1] 88/21
**limiting** [1] 52/14
**limping** [2] 48/21 48/22
**line** [6] 20/20 20/21 20/25 23/22 27/20 27/21
**lines** [2] 23/21 92/20
**list** [5] 6/12 7/3 40/15 41/21 80/9
**listed** [2] 7/2 96/14
**listen** [18] 20/24 26/14 54/2 64/12

64/14 88/7 88/16 89/2 89/15 90/3 94/5 94/19 95/13 96/19 97/18 97/20 10/10 98/22
**listened** [3] 30/7 60/1 94/9
**listening** [1] 36/12
**lists** [1] 96/8
**litigation** [10] 36/19 41/2 42/2 43/12 43/13 47/6 48/9 48/10 50/24 56/19
**little** [12] 12/24 14/24 23/23 24/4 24/20 26/17 34/17 43/10 49/8 62/1 63/18 82/22
**live** [3] 30/3 62/13 63/2
**Livingston** [8] 26/6 26/7 26/10 26/22 26/24 46/22 49/22 60/22
**lobby** [1] 24/10
**located** [3] 20/7 23/21 25/13
**location** [1] 96/1
**lock** [1] 71/6
**logical** [1] 19/23
**long** [9] 8/14 8/17 8/19 14/16 20/21 32/1 84/9 84/11 100/4
**longer** [4] 14/25 24/10 62/14 62/14
**look** [29] 6/13 8/22 18/19 22/9 23/20 25/6 25/14 25/25 41/18 47/10 47/11 47/17 48/13 49/5 51/20 55/3 64/18 81/24 82/5 82/6 89/6 89/7 93/6 94/16 96/15 96/16 97/3 98/12 107/25
**looked** [2] 25/24 96/21
**looking** [3] 20/20 92/22
**looks** [1] 100/14
**LORNA** [5] 1/3 2/9 80/5 80/6 105/2
**lose** [2] 60/15 76/25
**loss** [13] 18/24 29/25 33/5 35/6 35/6 35/19 72/9 74/12 75/4 75/10 77/4 77/4 77/8
**lost** [21] 29/24 33/7 35/10 35/11 41/12 43/4 54/7 56/6 56/6 56/10 56/23 56/25 57/2 60/16 60/17 75/2 76/19 76/22 76/25 80/16 80/18
**lot** [1] 41/3
**loud** [1] 7/20
**low** [1] 64/11
**low-tech** [1] 64/11
**lumbar** [4] 52/7 70/1 70/3 70/6
**lunch** [13] 2/17 2/17 8/4 11/3 11/6 11/11 14/20 14/25 81/23 84/2 84/3 84/7 84/25
**lying** [1] 57/5

## M

**ma'am** [2] 39/22 82/24
**machine** [1] 27/19
**made** [5] 5/5 12/5 25/22 35/8 37/5 39/3 53/6 58/20 67/6 69/11 76/18
**MAGISTRATE** [1] 1/9
**magnification** [1] 49/11
**maintenance** [1] 71/13
**major** [5] 19/5 35/4 45/12 52/7 60/5
**make** [36] 4/22 4/24 4/25 5/6 5/9 5/11 5/12 5/14 8/3 12/24 14/7 14/17 25/17 25/18 31/22 36/16 47/15 48/19 49/21 52/11 54/13 55/1 59/13 62/16 67/11 67/13 71/9 75/22 76/1 80/5 80/7 81/24 83/16 88/2 104/5 104/12
**makes** [4] 36/15 46/1 46/17 67/18
**making** [4] 62/14 68/5 70/24 90/2
**malingering** [2] 24/13 48/6
**management** [1] 44/14
**manner** [4] 55/8 78/25 79/10 105/5
**many** [4] 25/10 53/13 96/18 100/8
**March** [14] 43/6 43/14 47/23 50/3 50/18 50/25 51/8 52/3 54/9 54/18 54/20 56/24 100/2 100/3
**marked** [4] 4/18 18/14 86/23 92/13
**Marty** [3] 1/17 2/13 4/13

**masters** [1] 62/16
**MATSUURA** [20] 1/14 1/18 1/20 18/3 18/19 19/12 20/15 21/2 21/3 21/17 22/10 22/17 22/24 23/8 24/9 24/17 25/3 25/11 26/4 29/17 29/22 30/21 31/1 31/7 32/21 34/18 35/7 35/18 36/24 48/5 51/19 58/1 58/3 59/9 59/20 60/6 60/13 61/4 61/11 61/22 64/13 64/15 64/19 64/24 80/6 80/6 105/2
**Mathura's** [2] 18/9 31/3
**matter** [3] 3/19 11/25 16/12 39/10 41/2 43/14 44/3 69/17 69/25 108/20
**matters** [3] 11/19 11/23 69/20
**may** [38] 8/8 14/13 19/15 52/21 56/18 58/12 58/16 60/23 63/2 63/23 64/3 64/5 64/13 64/18 67/3 67/11 67/19 67/22 68/6 69/14 70/18 70/21 72/2 72/11 75/9 76/5 76/6 76/21 85/8 85/22 88/10 88/10 88/11 93/8 93/14 94/6 94/17 100/16
**maybe** [10] 20/25 22/2 22/2 45/8 45/8 61/2 62/14 62/14 63/24 95/2
**me** [30] 3/9 11/22 13/1 25/18 27/1 36/15 39/2 42/18 47/15 54/24 56/6 81/2 81/3 81/11 81/13 85/19 87/1 88/1 91/1 98/4 98/9 99/14 99/23 102/7 102/16 104/4 104/20 107/25 107/25 108/1
**mean** [10] 32/23 68/2 69/7 69/21 73/17 87/5 90/12 94/2 95/13 96/16
**Meaning** [1] 48/20
**means** [2] 48/22 70/14
**measured** [1] 76/15
**medical** [27] 18/20 20/13 24/7 25/5 28/21 29/2 29/24 31/20 31/20 33/7 34/19 39/15 41/2 41/8 41/24 45/7 45/9 46/7 49/4 54/8 55/16 63/17 63/19 64/1 74/24 75/24 80/11
**medication** [10] 20/11 20/13 34/25 34/25 41/24 52/10 58/9 58/10 58/11
**member** [1] 54/20
**members** [5] 31/13 60/15 66/13 78/1 78/13
**memories** [1] 101/24
**memory** [3] 38/11 68/18 69/13
**mental** [6] 35/2 62/25 63/15 74/13 74/25 80/13
**mention** [5] 31/19 37/2 46/8 49/25 55/25
**mentioned** [7] 19/10 20/10 25/21 29/11 30/9 35/16 93/8
**menus** [3] 2/17 11/4 11/5
**merely** [2] 69/20 78/6
**message** [2] 81/4 81/10
**methods** [1] 75/23
**MIAMI** [5] 1/2 1/13 1/15 1/20 1/23 1/23 8/20 21/23 51/14 57/20 98/16 100/1
**might** [9] 36/7 69/17 73/19 76/3 81/11 81/15 95/17 95/21 99/15
**mike** [3] 8/14 17/19 17/22
**million** [4] 35/5 36/13 46/11 63/4
**mind** [6] 12/18 43/17 55/23 69/6 76/12 78/4
**minimize** [3] 75/10 75/18 76/2
**minute** [10] 5/22 13/5 13/7 13/8 13/20 31/14 65/19 84/8 97/9 97/17
**minutes** [34] 9/20 12/16 13/14 13/16 13/18 13/21 13/23 24/9 29/9 32/18 33/25 34/1 34/4 61/19 64/8 84/2 84/12 100/9 100/10 100/15 100/17 100/19 100/21 100/23 101/12 101/13 101/14 101/15 101/16 103/16 103/17 103/18

**M**

minutes... [2]  103/19 103/20
misleading [1]  37/13
miss [3]  56/16 56/20 56/22
missed [1]  45/8
missing [2]  53/4 56/17
mission [2]  38/20 38/22
misstatement [2]  69/11 69/12
mistake [1]  69/7
mistaken [2]  91/12 91/12
mistruths [1]  55/15
mitigate [2]  75/5 75/7
moment [5]  31/16 71/21 73/3 73/13
106/4
Monday [4]  16/8 17/5 17/14 30/1
money [7]  54/22 55/1 62/16 73/23
74/12 77/7 80/2
months [3]  40/21 51/11 51/11
more [20]  9/12 11/9 13/6 17/11 29/5
34/17 43/10 46/1 46/17 52/15 62/16
63/2 63/19 63/24 70/15 74/5 83/13
89/15 91/5 95/14
morning [10]  2/4 2/6 2/16 8/25 9/2 11/4
15/16 16/6 36/2 57/18
most [3]  20/17 54/15 63/23
motion [10]  11/25 12/5 12/15 24/24
26/24 27/3 27/3 27/7 51/17 109/12
motions [8]  4/24 4/25 5/5 5/9 5/11 41/9
51/9 91/15
mouth [2]  41/14 41/17
move [7]  8/11 8/15 9/14 27/24 34/7
34/8 63/11
moving [1]  61/3
Mr. [53]  2/25 2/25 4/20 5/14 5/17 6/5
8/9 9/1 9/4 9/9 16/1 16/9 16/9 16/9
16/20 17/3 17/14 19/13 19/18 20/4
20/23 22/10 22/12 22/17 22/21 24/22
26/10 27/1 28/3 29/19 30/1 30/7 30/22
31/19 34/1 34/11 36/25 37/1 37/2 37/7
45/22 57/15 60/2 83/19 83/20 90/17
93/2 97/20 97/20 101/20 102/12
102/14 104/19
Mr. Collins [8]  20/23 22/10 22/12 22/17
22/21 29/19 37/7 60/2
Mr. Collins' [3]  36/25 37/1 37/2
Mr. Crooks [12]  2/25 8/9 9/1 16/1 27/1
31/19 34/1 83/19 90/17 93/2 97/20
102/12
Mr. Frank [1]  45/22
Mr. Lamus [1]  104/19
Mr. Palmer [10]  4/20 5/17 9/4 9/9 19/13
20/4 26/10 28/3 30/7 101/20
Mr. Parker [18]  2/25 5/14 6/5 9/1 16/9
16/9 16/20 17/3 17/14 19/18 24/22
30/1 30/22 34/11 57/15 83/20 97/20
102/14
MRI [14]  24/24 25/17 28/24 28/25 29/1
29/3 37/16 49/21 49/22 60/20 70/1
70/3 70/5 70/7
MRIs [5]  46/19 46/21 46/22 46/25
47/11
Ms. [57]  7/13 9/4 16/19 17/1 17/17 18/3
18/9 18/19 18/22 19/10 19/12 20/15
21/2 21/3 21/17 22/10 22/17 22/24
23/8 24/9 24/17 25/3 25/11 26/4 29/11
29/17 29/22 30/8 30/19 30/21 31/1
31/3 31/7 32/21 34/18 35/7 35/18
36/16 36/24 48/5 51/19 58/1 58/3 59/9
59/20 60/6 60/13 61/4 61/11 61/22
64/13 64/15 64/19 64/24 65/10 97/16
101/20
Ms. Elfenbein [11]  7/13 9/4 17/17
18/22 19/10 29/11 30/8 30/19 36/16
97/16 101/20

---

**Ms. Mathura [43]**  16/19 17/1 18/3 18/19
19/10 19/12 21/2 21/3 21/17 22/10
22/17 22/24 23/8 24/9 24/17 25/3
25/11 26/4 29/11 29/22 30/21 31/1
31/7 32/21 34/18 35/7 35/18 36/24
48/5 51/19 58/1 58/3 59/9 59/20 60/6
60/13 61/4 61/11 61/22 64/13 64/15
64/19 64/22
Ms. Mathura's [2]  18/9 31/3
Ms. Williams [1]  65/10
msn.co [1]  1/24
much [5]  25/19 29/10 106/8 108/4
108/13
multiple [1]  95/17
Multiply [1]  35/9
Munoz [6]  34/20 44/12 44/13 45/17
58/8 58/8
Munoz's [1]  46/16
must [21]  66/14 66/19 66/21 66/25
67/1 68/2 68/2 69/21 71/16 72/25 74/7
74/8 77/5 77/5 77/11 77/18 77/20
77/25 86/5 87/13 89/16
my [44]  6/23 7/8 8/2 8/4 9/13 10/10
11/2 14/11 14/19 16/6 33/18 33/19
36/3 38/2 43/2 43/17 44/21 49/12
54/13 54/15 55/24 56/8 62/22 65/10
65/20 67/21 81/5 83/8 84/9 88/1 89/14
91/1 91/16 98/9 99/11 102/1 102/6
102/11 104/4 106/3 107/1 107/11
108/9 108/11
myself [5]  5/16 30/22 36/16 47/15 88/2
mystery [1]  59/3

---

**N**

N-3 [1]  23/22
N-4 [1]  23/22
name [10]  16/7 20/22 21/19 21/19
48/12 51/19 58/23 59/4 92/19 99/1
names [1]  42/1
narcotic [2]  20/12 52/10
narcotics [3]  20/10 20/11 58/10
Narita [8]  16/13 18/24 20/19 23/1
23/18 26/5 30/24 59/5
natural [2]  72/7 72/13
naturally [1]  69/9
near [2]  7/17 77/8
necessarily [1]  69/7
necessary [3]  4/2 92/11 106/14
neck [2]  4/14 62/5
need [31]  2/3 4/1 4/7 4/10 11/5 11/20
11/23 13/25 15/9 20/8 51/13 53/16
57/20 59/17 64/13 65/13 69/11 74/15
78/16 81/14 82/24 83/19 85/20 87/17
93/5 97/4 98/25 99/6 99/23 105/18
106/25
needed [3]  24/18 24/19 65/24
needs [9]  14/15 31/11 52/15 58/17
64/25 82/19 82/23 95/10 98/8
negligence [28]  16/14 24/2 31/3 55/9
59/22 59/23 62/2 70/25 70/25 71/2
71/19 71/23 72/2 72/6 72/9 72/11
72/14 72/14 72/22 73/2 73/10 73/21
75/21 79/1 79/10 79/19 80/5 105/6
negligent [14]  30/25 31/4 31/4 55/8
71/1 71/5 71/18 72/22 73/1 73/19
78/25 79/9 80/7 105/5
net [6]  35/6 35/11 75/2 76/23 80/16
80/18
neurologic [2]  48/23 48/24
neurologist [3]  25/9 25/17 25/22
neurosurgery [1]  16/25
never [8]  41/18 41/18 43/23 51/1 64/5
77/21 87/3 91/16
new [2]  32/25 94/20
next [10]  16/8 25/8 53/2 80/20 97/6

---

99/14 100/16 100/18 100/20 101/22
101/22 102/10 103/22
night [2]  3/13 30/5
nightmare [1]  63/4
nightmares [2]  58/12 63/3
no [91]  1/3 3/12 4/9 4/12 5/2 5/6 7/4
7/11 7/24 10/9 10/19 11/21 14/2 14/7
15/11 15/12 18/10 21/18 21/20 24/24
24/24 24/24 24/24 26/20 27/8 27/10
27/12 30/13 36/10 37/7 40/13 44/21
45/24 46/7 46/8 47/2 47/2 48/7 48/19
49/13 54/11 55/11 55/18 55/19 56/16
56/17 57/9 59/3 59/3 59/10 62/5 62/8
65/2 65/15 65/17 67/18 74/5 74/5
74/14 74/18 74/23 79/3 79/4 79/12
79/13 81/22 82/9 82/10 83/12 83/21
83/22 83/24 85/24 86/4 89/11 93/10
95/1 95/1 96/14 97/12 99/2 101/18
102/14 105/7 105/8 105/14 105/17
105/21 105/23 107/17 107/18
nobody [3]  64/17 90/1 94/4
nonanatomic [1]  49/2
none [3]  5/13 58/14 101/21
nonsustainability [1]  49/1
nonsustainable [1]  48/20
noon [1]  11/10
Nordt [9]  24/5 24/6 24/22 46/19 46/19
48/2 49/7 49/19 60/19
Nordt's [1]  25/5
normal [1]  49/13
North [1]  1/15
not [141]
note [27]  2/1 47/23 49/11 54/19 78/15
78/17 79/24 81/2 81/5 83/8 83/13 85/2
85/4 85/11 85/12 87/13 87/17 88/2
88/3 88/5 89/15 98/7 101/7 101/7
104/5 104/11 104/17
notebook [5]  10/14 18/14 22/10 83/7
91/1
notebooks [6]  18/13 81/24 82/2 82/4
82/17 83/5
noted [3]  15/3 25/25 84/24
notepad [1]  82/22
notepads [1]  82/18
notes [10]  45/3 49/5 82/18 82/23 83/12
83/15 83/17 84/25 85/5 85/10
nothing [11]  26/16 26/18 40/4 40/14
60/14 61/13 65/2 66/6 66/7 90/5 108/9
notice [2]  4/4 108/7
notices [1]  96/17
novel [3]  60/14 61/10 61/13
November [4]  40/9 70/1 70/3 70/6
now [57]  3/10 8/22 11/16 11/20 17/5
17/12 17/16 18/6 18/11 19/10 19/13
19/15 21/10 21/16 22/1 22/12 22/23
25/8 25/21 26/6 27/13 27/16 30/4
32/10 32/15 34/16 37/7 40/1 42/15
42/22 43/2 45/14 50/12 55/24 60/3
60/19 61/6 61/21 62/20 64/4 66/13
68/1 77/6 77/7 78/21 79/4 80/4 81/21
82/15 83/4 84/5 85/21 88/5 94/6 97/10
97/14 98/24
nowhere [2]  23/17 41/25
number [25]  18/16 25/14 25/16 36/23
44/6 50/11 51/4 52/18 55/7 56/9 57/9
62/19 68/7 73/17 79/4 80/20 84/9 85/9
85/10 85/12 83/6 92/20 97/18 98/8
105/1
numbering [1]  2/20
numbers [1]  6/11
numerical [1]  81/12
numerous [1]  50/19
NW [1]  1/12

## Q

**object [3]** 17/20 27/22 87/8
**objected [2]** 26/19 94/4
**objection [11]** 7/4 9/20 10/10 30/15 52/21 59/14 60/8 63/7 63/10 101/17 101/18
**objections [3]** 14/8 82/1 82/7
**objective [1]** 49/12
**observe [2]** 38/12 68/19
**observed [1]** 17/16
**obtained [1]** 28/15
**obvious [1]** 54/4
**obviously [6]** 3/22 32/10 53/4 57/9 82/21 89/20
**occupation [1]** 76/8
**occur [3]** 55/12 55/13 94/7
**occurred [13]** 36/12 36/18 37/24 38/15 42/4 44/5 45/1 45/12 52/3 54/8 54/10 54/19 72/10
**occurs [1]** 72/13
**October [1]** 100/22
**off [5]** 13/25 23/5 23/10 36/21 90/8
**Off-the-record [1]** 90/8
**offended [1]** 57/3
**offered [1]** 87/7
**offering [1]** 22/3
**office [6]** 1/19 6/10 24/10 54/21 54/24 91/23
**officer [2]** 81/5 104/20
**Official [1]** 1/22
**oh [4]** 23/15 24/13 40/2 107/12
**okay [86]** 3/4 3/7 3/14 3/16 4/18 5/3 5/3 5/16 5/19 6/1 6/18 7/1 7/10 8/2 8/22 8/25 9/7 9/17 10/4 10/17 10/20 10/22 11/19 11/22 12/4 13/4 14/18 15/7 15/14 15/22 16/4 24/20 31/13 33/1 34/1 34/3 35/21 45/6 51/16 52/23 53/20 54/1 54/23 65/16 65/18 81/14 81/18 82/11 83/23 83/24 83/25 84/16 84/18 85/11 85/19 85/23 86/3 86/8 86/10 87/22 87/24 88/1 88/5 93/24 94/19 97/20 98/3 98/7 98/11 98/21 99/23 100/3 100/24 101/3 101/6 103/1 103/3 103/10 103/12 104/1 104/4 104/24 105/15 105/19 105/24 106/24
**old [4]** 24/18 35/12 62/7 63/2
**onably [1]** 70/2
**once [3]** 8/23 23/19 41/21
**one [63]** 6/13 6/14 6/16 8/10 12/21 13/6 14/3 14/12 14/13 17/18 17/22 18/7 20/5 20/9 36/23 38/8 39/11 39/12 40/25 41/15 41/15 42/7 43/5 43/19 44/4 46/5 46/6 46/11 46/24 47/1 47/1 47/12 47/18 48/21 51/10 53/14 55/4 55/5 55/22 56/1 59/21 60/19 62/5 63/24 65/24 67/14 68/15 77/24 78/13 82/20 82/21 82/21 83/14 85/5 100/16 100/18 100/20 100/21 100/23 101/4 101/16 101/24 103/20
**ones [4]** 4/15 40/10 63/20 63/21
**ongoing [1]** 18/10
**only [27]** 36/18 43/1 56/18 58/25 67/3 67/8 69/15 73/7 74/9 76/15 76/23 76/24 77/25 78/9 86/5 87/13 91/8 91/8 93/10 93/20 93/22 94/7 94/8 94/14 95/2 95/4 97/12
**open [3]** 94/23 100/8 100/9
**opening [8]** 13/10 13/12 16/9 18/23 27/17 34/5 86/1 87/2
**opening-closing [2]** 13/10 13/12
**openly [1]** 55/15
**operates [1]** 71/20
**opinion [6]** 28/1 48/10 69/19 69/21 69/22 78/4
**opinions [3]** 48/1 48/1 49/6
**opportunity [4]** 13/20 30/1 57/23 33/20 36/5 38/12 49/9 59/25 68/19 75/9 75/13 75/14 96/12 103/8
**opposing [6]** 6/2 17/16 23/15 29/5 90/19 91/4
**option [3]** 88/23 95/14 95/16
**orally [1]** 81/9
**order [13]** 11/7 11/13 14/25 18/21 60/11 64/25 71/16 77/5 85/10 98/20 100/25 101/1 101/22
**ordering [1]** 14/25
**orders [3]** 11/3 11/5 14/20
**original [3]** 39/3 41/19 106/12
**originally [1]** 50/16
**orthopedic [1]** 46/20
**Osborn [8]** 47/19 48/2 48/3 48/3 48/4 48/8 48/18 49/7
**Osborn's [1]** 47/25
**osteoarthritis [1]** 52/9
**other [42]** 3/19 6/15 12/22 17/19 17/22 21/10 37/5 39/3 40/5 43/18 43/24 45/13 49/18 58/8 59/24 67/1 68/22 68/22 69/2 69/10 69/22 72/13 72/13 73/8 73/20 74/11 75/20 76/23 77/20 78/1 83/4 84/13 90/14 92/24 93/9 93/14 93/24 94/21 94/24 94/25 96/14 96/22
**other else [1]** 49/18
**others [2]** 74/23 78/6
**otherwise [3]** 47/11 95/19 98/16
**ought [2]** 45/20 57/3
**ounce [1]** 56/2
**our [20]** 4/13 7/19 8/1 11/25 21/21 28/17 28/18 38/20 38/21 38/21 39/1 43/8 43/12 50/23 51/14 53/7 65/1 90/5 102/2 107/8
**out [34]** 2/17 7/21 8/3 14/19 15/1 32/2 35/7 37/4 39/14 39/18 39/20 39/21 41/7 41/13 41/16 41/23 46/21 47/8 47/10 51/3 53/17 56/20 75/12 81/23 83/16 90/23 92/15 94/1 94/7 96/17 97/5 100/11 103/4 103/5
**outcome [2]** 38/10 68/17
**outline [4]** 17/14 17/15 30/2 30/2
**outlined [1]** 18/2
**outraged [1]** 45/20
**outrageous [1]** 57/2
**outset [1]** 38/25
**outside [2]** 24/10 62/22
**Overruled [1]** 17/21 62/24
**overtop [1]** 27/20
**overweight [1]** 24/20
**own [12]** 49/17 67/24 72/23 73/2 73/10 73/11 76/7 78/4 79/11 82/17 98/10 101/23

## P

**p.m [13]** 65/22 66/3 66/4 66/9 83/1 84/22 84/23 104/9 104/10 104/12 104/15 106/9 108/17
**package [5]** 3/20 3/22 4/5 58/21 66/12
**packed [1]** 96/6
**page [2]** 38/3 79/7
**pages [2]** 1/5 3/2
**paid [3]** 25/2 28/16 77/6
**pain [18]** 20/18 29/24 35/3 41/24 42/5 44/14 46/14 49/2 51/6 52/9 62/25 63/3 63/15 64/20 64/21 74/15 74/25 98/11 109/15
**Palmer [13]** 1/17 2/13 4/20 5/17 9/4 9/9 19/13 20/4 26/10 28/3 30/7 101/20 109/15
**paper [4]** 17/19 58/24 83/13 98/11
**paperwork [1]** 17/23
**parallel [1]** 50/1
**pardon [1]** 25/18
**parked [2]** 20/20 20/21
**part [14]** 7/6 12/21 12/22 19/9 40/12 41/1 68/6 70/11 70/22 73/21 75/7 83/7 89/19 98/18
**particular [4]** 19/23 38/9 68/8 68/16
**parties [3]** 79/19 96/23 107/20
**partly [1]** 73/9
**party [3]** 66/24 70/9 70/24
**passenger [4]** 16/17 29/18 29/19 58/25
**passengers [3]** 19/6 29/15 29/16
**past [13]** 18/20 31/20 61/22 61/25 63/1 63/1 63/17 74/24 74/25 76/19 76/25 80/11 80/13
**patch [2]** 64/12 64/12
**patient [1]** 56/14
**pattern [5]** 3/21 55/14 55/14 55/15 55/15
**patterns [1]** 49/2
**Pause [6]** 34/9 87/25 98/14 100/13 103/2 103/11
**pay [4]** 15/24 23/21 76/17 76/24
**payment [2]** 50/4 50/5
**pen [1]** 92/19
**penalize [1]** 74/7
**pendency [2]** 43/12 50/23
**people [4]** 60/15 65/19 67/4 69/9
**percent [12]** 26/3 26/4 31/4 35/13 35/13 73/10 73/17 73/19 73/20 73/20 79/25 86/21
**percentage [5]** 73/12 73/16 79/17 79/22 79/23
**percentages [2]** 79/20 79/24
**perfect [1]** 95/3
**perfectly [1]** 57/6
**perform [1]** 24/25
**performed [2]** 48/15 71/11
**Perhaps [2]** 102/8 106/6
**permanently [1]** 76/5
**permission [2]** 107/11 107/13
**permit [3]** 12/21 12/23 87/2
**permitted [1]** 69/19
**person [24]** 21/10 21/13 21/14 22/2 22/3 22/14 22/15 23/1 23/2 23/12 48/22 48/23 48/23 52/2 59/6 59/9 60/11 68/12 69/17 71/25 72/3 72/5 75/5 75/20
**personal [4]** 38/10 60/8 68/17 82/18
**persons [1]** 67/1
**perspective [1]** 108/11
**persuade [1]** 70/14
**persuasion [1]** 70/13
**pertaining [2]** 33/5 90/22
**pertains [1]** 93/19
**Petruska [1]** 58/22
**PhD [5]** 19/23 35/7 62/13 64/5 64/6
**phone [5]** 21/13 22/5 52/4 84/9 84/10
**photographs [2]** 27/14 28/9
**photography [2]** 28/2 28/13
**phrased [1]** 19/24 19/25
**physical [8]** 35/3 49/12 62/25 63/15 74/13 74/25 76/8 80/13
**physically [1]** 94/15
**physician [2]** 20/14 47/4
**physician's [1]** 30/5
**physicians [7]** 16/23 30/3 30/6 30/12 40/16 49/20 75/19
**pick [5]** 7/18 42/13 47/7 49/16 60/19
**picked [3]** 21/4 21/13 22/4
**picking [2]** 2/17 49/17
**picture [2]** 43/17 61/3

# P

**pictures [2]** 61/1 61/4
**pieces [1]** 83/13
**place [17]** 11/5 16/10 17/11 26/5 30/23
79/2 79/7 79/20 79/21 79/22 80/12
80/14 80/17 80/19 80/22 83/10 96/14
**placed [2]** 8/18 21/6
**plaintiff [91]** 2/5 2/7 2/9 4/8 4/24 5/1
6/23 9/1 10/2 10/14 10/18 10/20 11/19
12/1 12/11 12/19 15/3 15/17 16/2 16/7
17/25 30/13 37/8 37/11 37/19 38/16
39/1 42/2 44/4 46/18 47/5 48/15 50/2
55/9 55/10 65/14 69/25 70/2 70/5 71/1
71/3 71/4 71/7 71/16 71/20 72/21 73/1
73/7 73/9 73/14 73/19 73/22 73/23
73/24 74/17 75/12 75/17 75/18 76/1
76/5 76/18 76/21 76/22 76/24 76/25
77/3 77/7 77/11 77/17 79/1 79/2 79/9
79/23 81/16 83/19 84/14 85/7 87/19
87/20 101/17 101/18 105/2 105/6
105/7 105/13 105/20 106/19 107/15
109/11 109/13 109/16
**plaintiff's [40]** 3/10 6/7 12/2 12/23
19/11 22/9 25/13 29/17 36/20 44/11
47/5 53/7 70/8 72/17 72/19 72/23 73/2
73/7 73/9 73/11 73/15 74/1 74/4 75/15
76/6 76/7 76/10 76/15 77/13 77/15
79/11 79/17 80/3 84/17 86/10 88/6
102/19 102/21 103/24 106/19
**Plaintiffs [2]** 1/4 1/12
**plan [1]** 8/2
**plane [2]** 23/5 23/7
**planned [1]** 32/8
**planning [1]** 31/25
**play [19]** 7/16 51/21 52/16 53/11 53/13
53/15 53/16 88/20 89/18 90/14 90/23
96/11 97/1 99/4 99/4 99/18 99/18
101/9 103/14
**played [10]** 52/20 53/23 64/11 95/10
99/7 99/10 101/4 102/23 102/23
103/21
**player [6]** 85/4 88/10 88/12 88/22
95/10 99/3
**playing [3]** 7/8 90/1 90/2
**plays [1]** 92/9
**please [13]** 2/1 8/7 8/25 15/16 66/11
81/4 85/2 85/4 85/8 85/13 104/11
104/14 104/16
**pleases [1]** 36/1
**pleasure [4]** 107/25 108/9 108/14
108/15
**plug [1]** 60/25
**plugged [1]** 26/12
**Plus [1]** 4/15
**podium [1]** 16/20
**point [12]** 32/1 39/22 45/14 45/16
48/21 48/21 53/17 88/17 93/17 94/12
97/22 99/9
**pointed [1]** 26/13
**points [1]** 94/12
**polite [1]** 20/23
**poll [1]** 105/12
**poor [2]** 24/19 25/25
**pop [1]** 18/11
**popping [1]** 103/7
**portion [4]** 53/8 95/5 102/9 102/11
**portions [1]** 99/4
**position [3]** 33/3 33/9 64/25 70/8 88/6
**positions [1]** 23/25
**positive [1]** 96/21
**possession [1]** 70/1
**possibility [1]** 90/9
**possible [3]** 34/10 38/17 81/7
**possibly [1]** 60/23

**Post [1]** 1/19
**post-traumatic [1]** 52/6
**power [1]** 42/9
**powers [1]** 39/23
**practicable [1]** 75/22
**practice [3]** 25/9 25/21 27/8
**practiced [1]** 46/21
**practitioner [1]** 45/15
**prayed [1]** 62/1
**precisely [1]** 49/23
**preclude [1]** 49/13
**prejudice [1]** 66/22
**prejudicial [2]** 53/2 88/14
**preloaded [1]** 90/11
**prepare [3]** 11/7 12/16 52/15
**prepared [5]** 7/7 23/14 24/7 78/18
106/5
**preponderance [19]** 17/5 17/10 55/7
70/11 70/13 70/18 70/23 71/17 72/16
72/18 72/24 74/3 74/22 75/11 76/4
78/24 79/18 80/2 105/4
**preprinted [1]** 27/18
**prescribed [2]** 58/10 58/11
**prescription [1]** 20/12
**present [5]** 35/19 77/2 77/5 80/19
94/22
**presented [3]** 36/8 64/10 87/11
**Presently [1]** 52/6
**preserve [1]** 70/5
**preserved [1]** 70/4
**preside [1]** 78/14
**pretrial [1]** 47/3
**pretty [1]** 47/3
**prevail [2]** 71/16 77/17
**prevent [4]** 73/6 73/14 76/2 76/3
**previously [3]** 9/17 15/3 84/24
**prior [7]** 35/8 41/8 43/1 44/11 45/19
49/20 71/15
**private [2]** 25/9 25/21
**privilege [1]** 93/15
**privileges [1]** 27/10
**probable [1]** 76/9
**probably [7]** 3/2 3/3 7/23 12/24 39/4
95/20 107/13
**problem [2]** 32/14 49/4 89/22
**problems [2]** 64/1 64/1
**procedure [1]** 34/23
**proceed [8]** 4/20 9/1 9/5 14/1 15/3
15/17 15/20 16/4
**proceeding [2]** 43/13 89/10
**proceedings [9]** 14/23 66/3 84/22
88/13 90/8 104/9 106/9 108/17 108/20
**process [2]** 39/20 41/7
**produced [1]** 70/21
**produces [1]** 72/7
**producing [2]** 72/8 72/15
**production [1]** 22/24
**profession [1]** 107/23
**professional [1]** 108/2
**professionalism [1]** 107/20
**program [1]** 95/3
**programs [1]** 75/24
**project [1]** 96/1
**projector [2]** 27/20 27/20
**prompt [1]** 106/2
**promptly [1]** 81/7
**proof [5]** 44/5 67/16 70/9 70/12 70/22
**proper [5]** 12/17 18/21 25/19 61/13
75/21
**properly [1]** 12/14
**proportion [1]** 79/17
**propose [1]** 100/11
**proposed [1]** 3/20
**prove [5]** 17/3 67/17 68/25 70/10 71/17
**proved [4]** 58/2 70/17 74/22 77/3

**proves [1]** 73/21
**provide [7]** 17/21 29/21 29/24 30/9
30/11 60/11 85/3 85/4 85/13 95/9
106/7
**provided [13]** 10/13 16/25 17/15 24/25
27/17 30/2 85/17 86/8 87/15 90/19
91/1 91/9 91/23
**providing [3]** 18/25 19/6 19/8
**province [1]** 8/17
**proving [1]** 72/24
**proximate [3]** 16/18 29/22 31/2
**prudent [3]** 84/15 88/17 95/14
**public's [1]** 55/1
**publish [1]** 104/24
**pull [2]** 39/17 98/25
**punctuation [1]** 2/20
**punishment [1]** 74/6
**Pure [2]** 65/3 65/3
**purpose [2]** 87/18 94/24
**purposes [3]** 15/24 35/22 106/15
**pursuant [2]** 6/16 23/11
**put [19]** 16/22 18/1 23/3 26/11 26/12
27/11 42/11 64/24 65/20 80/14 80/17
85/9 89/17 92/16 94/22 94/22 98/13
98/19 107/8
**puts [1]** 41/8
**putting [1]** 37/21

# Q

**quality [1]** 25/25
**quantify [1]** 16/23
**question [22]** 2/20 18/16 19/24 19/25
44/18 55/6 55/6 55/18 79/4 79/13
79/14 79/14 79/15 79/16 79/16 80/1
80/1 81/4 81/11 84/6 99/15 101/22
**questions [30]** 14/10 18/8 19/14 19/14
19/19 20/6 22/23 26/23 29/6 30/8 31/9
38/7 38/13 38/18 39/1 41/4 45/22 58/1
64/19 68/14 68/21 71/22 73/4 78/22
79/5 84/13 103/7 103/8 105/9 109/19
**quick [2]** 84/3 84/6
**quietly [1]** 36/12
**quite [1]** 84/15
**quiz [1]** 18/11
**quoted [1]** 99/10
**quotes [3]** 53/1 53/1 53/5

# R

**radiculopathy [1]** 52/8
**radiologist [1]** 46/23
**railing [1]** 8/17
**railroad [2]** 43/18 50/1
**raise [2]** 32/25 81/15
**raised [2]** 60/3 72/20
**rather [1]** 108/10
**rating [6]** 24/16 25/1 25/4 26/3 29/4
35/13
**ratings [1]** 41/23
**ray [10]** 24/24 24/24 26/12 26/24 27/3
27/3 27/4 27/7 28/2 60/20
**rays [2]** 26/13 28/3
**re [1]** 78/4
**re-examine [1]** 78/4
**reach [4]** 10/24 67/12 77/18 77/24
**reached [3]** 80/25 81/2 81/13
**reaching [1]** 84/10
**reaction [1]** 62/12
**read [15]** 3/23 9/13 30/4 30/6 45/5
46/19 47/25 48/4 49/8 49/22 56/8
65/11 100/12 101/24 101/25
**reader [1]** 55/23
**readily [1]** 27/6
**reading [6]** 4/6 9/8 46/22 49/21 50/21
50/23
**reads [1]** 102/9
**ready [12]** 4/13 4/20 9/1 9/5 14/19 15/3

**R**

**ready... [6]** 15/7 15/13 15/17 15/20 15/21 65/25
**real [5]** 51/18 63/25 78/8 84/6 102/11
**real-time [1]** 102/11
**realize [2]** 98/3 98/9
**realized [1]** 75/16
**really [1]** 59/22
**Realtime [2]** 1/22 108/24
**reas [1]** 70/2
**reason [5]** 38/9 65/13 67/12 68/16 75/20
**reasonable [18]** 17/8 36/6 37/22 59/9 60/10 60/10 60/18 60/20 61/5 63/23 71/24 71/24 74/4 75/8 75/21 75/23 75/24 76/1
**reasonable-thinking [1]** 37/22
**reasonably [6]** 71/25 72/3 72/4 72/9 75/14 75/16
**reasons [4]** 12/6 20/20 41/24 41/25
**rebut [5]** 31/24 32/10 32/10 32/24 33/10
**rebuttal [16]** 5/1 5/2 5/7 5/12 10/18 31/23 32/4 32/12 32/24 33/10 33/19 53/15 57/15 57/16 57/17 109/16
**recall [2]** 6/22 100/7
**receive [1]** 91/18
**received [9]** 3/1 6/16 25/23 25/24 50/4 70/20 91/5 104/11 104/17
**receiving [1]** 3/24
**recently [1]** 70/2
**receptionist [1]** 59/6
**recess [11]** 11/2 11/15 14/13 14/18 32/1 65/19 65/21 66/2 84/20 104/6 107/16
**recessed [4]** 14/22 66/3 84/22 104/9
**recognize [2]** 15/24 35/22
**recollection [4]** 6/23 59/17 67/24 102/6
**recommend [2]** 85/20 85/25
**recommendations [1]** 75/19
**reconsider [1]** 94/6
**record [12]** 2/2 30/5 30/6 31/17 50/13 52/24 65/23 67/10 81/19 90/8 98/15 108/20
**recorded [1]** 91/24
**recordings [1]** 93/18
**records [21]** 6/16 7/6 30/5 39/15 39/15 41/2 41/8 41/10 41/11 45/25 46/1 46/3 46/16 46/17 47/11 48/5 48/11 48/13 48/15 91/6 93/25
**recover [3]** 76/22 76/23 76/24
**recoverable [1]** 74/10
**recovering [1]** 73/15
**recovery [5]** 73/6 73/8 76/2 76/3 76/17
**recycle [1]** 107/8
**redirect [1]** 19/18
**reduce [4]** 73/7 73/15 75/10 75/15
**reduced [2]** 77/5 80/19
**reduction [3]** 77/2 80/5 80/8
**reference [2]** 36/25 37/5
**referral [1]** 47/19
**referring [4]** 27/1 27/2 91/5 92/6
**refers [1]** 47/23
**regard [2]** 16/21 81/10
**regarding [2]** 26/23 30/8
**regardless [2]** 70/19 70/20
**regards [4]** 22/13 22/23 30/23 91/11
**reign [1]** 26/10
**reinjure [1]** 62/3
**reject [1]** 37/23
**relate [1]** 44/22
**related [8]** 10/2 48/9 49/3 51/7 52/2 54/8 56/24 76/14
**relationship [1]** 48/7

**relayed [1]** 45/1
**relays [1]** 106/13
**released [1]** 106/9
**relevance [1]** 49/23
**relevant [2]** 61/15 61/17
**religious [1]** 20/20
**reliving [1]** 63/4
**rely [9]** 24/23 27/14 29/3 59/17 69/23 86/5 87/10 87/13 90/14
**relying [1]** 101/23
**remain [1]** 84/1
**remaining [4]** 32/2 76/15 79/5 105/8
**remember [10]** 41/5 58/12 58/14 58/15 58/16 59/8 67/20 69/10 78/8 102/16
**remembered [1]** 58/14
**remembers [1]** 69/8
**renew [1]** 11/25
**renewed [1]** 109/12
**repeat [1]** 20/8
**replace [1]** 83/15
**report [13]** 23/14 23/14 23/16 23/17 23/20 25/6 44/6 44/8 58/19 58/19 58/20 58/21 60/19
**reported [6]** 1/22 22/24 23/11 23/12 23/13 24/3
**reporter [7]** 1/22 1/22 92/12 102/8 102/9 108/24 108/24
**reporting [1]** 91/17
**represent [1]** 61/8
**request [6]** 13/23 29/8 61/18 64/8 99/19 105/12
**requested [2]** 22/5 88/6
**required [1]** 39/24
**resolve [1]** 82/1
**respect [20]** 8/10 15/4 15/17 17/4 17/15 18/25 26/2 27/9 28/8 29/19 30/3 30/10 34/17 35/11 35/14 74/16 86/1 88/5 90/18 90/21
**respective [2]** 79/19 83/5
**respond [1]** 81/7
**response [1]** 85/6
**responses [1]** 18/9
**responsibility [8]** 29/13 29/14 29/16 31/11 35/16 35/16 61/15 70/10
**responsible [3]** 12/8 67/5 73/10
**rest [2]** 4/23 10/16
**restaurant [1]** 15/1
**restore [1]** 75/24
**restricted [1]** 74/12
**restrictions [1]** 49/14
**rests [3]** 8/3 10/20 109/11
**result [14]** 24/2 24/19 27/13 29/23 35/8 35/18 42/4 43/3 44/14 50/25 56/10 56/16 56/17 75/6
**resurrected [1]** 62/7
**retire [6]** 35/12 62/18 62/19 82/15 90/3 96/9
**retrieve [4]** 93/5 97/13 97/21 97/25
**return [5]** 11/8 55/19 57/10 77/20 106/18
**returned [1]** 81/8
**reveal [2]** 60/23 61/2
**revealed [1]** 24/8
**review [7]** 8/5 14/6 48/5 49/9 60/19 78/21 90/21
**reviewed [1]** 3/12
**right [26]** 7/16 11/10 11/16 22/4 28/5 36/21 37/23 47/5 47/5 47/9 57/22 59/3 59/4 64/4 65/3 65/4 65/4 84/4 85/15 85/21 90/7 91/25 97/10 104/22 107/6 107/19
**ringing [1]** 52/4
**roadmap [1]** 16/10
**roll [1]** 71/6
**room [26]** 1/23 5/9 11/12 14/7 14/8

22/14 50/13 52/19 66/16 77/18 78/12 80/4 92/12 93/6 93/14 93/25 93/6f 94/22 96/4 96/9 96/15 97/6 99/3 101/9 103/13 104/6
**Rosen [1]** 41/22
**routine [1]** 8/16
**Rudolph [11]** 16/24 16/25 24/4 24/4 28/19 28/20 28/21 34/20 61/6 61/14 62/9
**ruined [1]** 51/1
**rules [2]** 66/14 86/19
**RUMBERGER [1]** 1/18

**S**

**S.W [1]** 1/19
**sacroiliitis [1]** 52/8
**safety [1]** 71/9
**said [67]** 8/13 12/4 16/13 18/3 18/9 18/24 19/1 19/10 19/15 19/19 21/3 21/18 21/20 22/11 22/17 23/8 23/9 24/7 24/9 24/13 24/17 25/17 25/24 26/1 26/2 26/20 26/24 26/25 27/2 27/8 27/10 27/12 27/13 28/4 28/5 28/16 28/17 28/21 28/24 28/24 28/25 29/11 30/19 36/20 39/22 42/14 42/18 48/2 48/18 48/20 49/7 49/7 49/23 58/18 61/1 61/4 67/22 69/3 72/9 82/5 83/4 92/19 98/5 102/4 102/12 102/16
**same [18]** 3/4 7/2 11/14 12/1 12/6 19/20 21/14 22/21 26/16 45/10 45/22 47/7 48/1 49/20 54/6 64/21 69/22 72/14
**sandbag [1]** 32/6
**sat [6]** 16/8 17/16 20/17 30/7 40/14 56/9
**Saturday [1]** 108/22
**save [1]** 101/25
**saw [17]** 20/1 32/8 37/3 41/22 44/7 44/16 44/17 45/10 45/22 45/23 47/19 49/17 56/8 56/15 61/3 63/17 91/12
**say [35]** 7/24 13/22 20/24 23/17 37/1 37/3 37/7 37/8 38/19 42/14 54/24 56/15 57/9 67/20 68/4 69/3 80/21 84/3 84/5 85/20 86/4 86/5 88/15 88/15 89/15 92/5 94/16 95/4 95/9 96/2 96/7 98/15 102/19 104/2 108/2
**saying [10]** 3/19 32/24 36/14 37/1 41/11 48/25 49/3 54/6 57/5 68/1
**says [18]** 23/16 23/16 26/13 32/25 43/3 48/17 48/18 49/20 52/14 59/1 63/22 72/1 80/21 85/2 85/4 101/8 104/12 104/17
**scan [1]** 49/10
**scans [3]** 49/9 49/22 49/22
**school [3]** 19/22 51/25 62/15
**sciatica [1]** 52/8
**scintilla [1]** 56/2
**scope [2]** 62/22 67/6
**screen [6]** 94/16 94/23 96/1 96/7 96/8 96/13
**scroll [1]** 95/23 95/24
**seat [2]** 16/8 78/19
**seated [10]** 2/8 8/25 11/18 14/24 15/16 66/11 83/3 104/11 104/16 106/11
**seats [2]** 66/13 107/5
**second [8]** 6/13 41/20 55/22 71/19 73/1 79/7 85/4 95/14
**Secondarily [2]** 56/23 87/9
**seconds [15]** 100/15 100/17 100/19 100/21 100/23 101/12 101/13 101/14 101/15 101/16 103/16 103/17 103/18 103/19 103/20
**secret [1]** 77/21
**secured [4]** 22/20 23/4 37/6 37/9
**security [2]** 81/5 104/20

# S

see [39] 14/14 14/16 21/17 21/19 23/15 23/22 27/4 29/17 31/16 34/8 40/7 40/11 41/2 41/8 43/7 43/11 46/4 46/6 49/12 49/14 49/18 50/10 50/15 51/4 51/19 52/13 58/24 81/14 87/17 92/16 92/17 92/21 94/3 94/16 96/12 96/13 99/1 102/7 107/2
seeing [2] 44/11 49/10
seek [4] 38/21 38/23 75/12 78/9
seem [2] 38/11 68/18
seems [1] 52/25
seen [5] 28/5 40/16 55/12 55/13 56/13
segment [2] 51/21 51/22
select [2] 78/12 95/18
selected [1] 53/5
selections [1] 8/4
selective [2] 53/1 53/17
self [1] 95/6
self-explanatory [1] 95/6
send [18] 49/18 54/24 81/2 81/11 82/5 82/6 83/9 83/12 83/14 83/15 86/4 86/15 86/16 87/17 99/3 101/8 103/5 103/13
sending [3] 82/20 83/16 100/11
sense [16] 5/14 18/18 19/3 21/21 22/6 23/20 24/1 25/7 28/12 28/17 31/6 48/19 52/11 55/1 63/18 67/12
sent [5] 14/8 39/1 62/4 89/4 98/8
separate [3] 43/13 43/19 50/11
separately [2] 4/18 9/16
September [3] 44/17 46/6 48/16
sequence [1] 72/7
series [4] 18/5 71/22 73/4 78/22
serious [4] 16/12 16/13 31/10 62/7
Seriously [1] 28/12
serve [2] 39/11 39/14
service [7] 19/8 19/9 22/18 55/24 91/17 106/1 106/6
services [2] 6/15 19/6
set [7] 12/17 31/15 39/3 62/3 82/20 82/21 97/17
sets [1] 41/19
settled [2] 50/16 50/17
setup [1] 7/16
several [3] 7/7 51/9 96/3
shadow [1] 17/4
shall [1] 70/6
Sharpie [1] 92/19
she [173]
she'll [2] 35/12 48/21
she's [27] 2/17 7/1 19/22 19/22 19/24 20/1 20/13 24/20 35/12 42/19 43/13 43/19 46/3 48/22 50/24 51/2 51/3 51/5 51/7 51/20 51/25 52/10 54/5 54/6 62/14 62/16 64/5
sheaf [1] 83/15
shedding [1] 45/11
sheet [2] 91/20 91/21
shelton [3] 1/22 1/24 108/24
shocked [1] 60/25
shockwaves [1] 62/4
short [3] 14/13 32/1 108/7
shortly [1] 37/17
should [45] 2/24 3/10 7/20 11/11 67/8 67/22 68/3 68/24 69/6 70/2 70/4 70/24 72/17 73/23 74/2 74/19 74/21 75/11 75/15 76/12 76/15 77/3 77/6 77/17 77/17 78/12 78/20 79/5 79/6 79/6 79/25 80/10 81/3 81/11 82/4 83/16 85/6 88/25 89/15 97/13 97/21 101/23 101/24 102/19 104/2
show [5] 6/2 51/10 83/4 83/8 96/7
showed [1] 37/12

shown [1] 75/14
shows [3] 21/7 70/6 96/13
side [6] 11/6 17/23 21/10 30/4 47/12 81/24
side's [1] 14/6
sidebar [14] 5/4 12/4 31/16 31/17 34/2 52/22 52/24 53/21 65/13 81/15 81/18 81/19 82/14 83/4
sides [3] 4/20 82/3 108/1
sign [6] 79/6 79/6 80/20 80/23 81/1 87/16
signature [5] 19/15 19/20 41/4 79/8 108/24
signed [7] 40/8 46/1 83/10 85/2 103/23 104/18 105/10
significance [1] 69/14
signing [1] 46/3
SIMONTON [2] 1/9 105/1
simple [1] 69/6
simply [4] 14/12 69/12 70/14 87/13
since [11] 5/12 5/12 14/25 33/3 40/15 42/22 43/6 63/19 90/25 93/7 95/1
single [1] 59/21
sit [11] 21/7 21/8 36/4 55/23 59/7 59/9 59/9 59/24 59/25 64/16 71/7
sitting [6] 14/15 20/17 20/18 36/11 42/16 42/20
situation [5] 47/9 63/25 64/4 64/6 89/23
situations [1] 64/7
skip [2] 20/25 79/13
slippery [1] 89/8
slope [1] 89/8
small [1] 75/22
software [3] 92/11 92/12 98/18
solely [1] 78/6
some [31] 2/18 7/14 12/11 12/25 18/1 19/14 19/15 20/11 25/25 32/2 33/13 36/22 37/6 38/2 42/4 49/18 54/25 56/9 60/3 60/25 61/25 68/9 69/1 69/2 69/9 72/12 72/13 84/10 93/15 101/25 106/4
somebody [2] 47/10 58/18
somehow [1] 47/24
someone [7] 36/24 39/13 46/9 46/10 46/10 47/8 57/3
something [20] 24/18 27/6 44/5 51/18 53/3 61/2 61/7 61/9 69/3 69/3 72/2 72/4 86/17 87/5 92/19 92/20 93/3 95/3 95/4 98/15
sometime [1] 39/13
sometimes [5] 14/14 57/1 70/12 84/6 103/6
somewhere [1] 106/17
soon [2] 8/2 23/10
sorry [7] 7/12 21/24 50/15 55/5 59/15 85/24 102/15
sort [1] 108/11
sought [1] 24/3
sources [1] 88/11
South [1] 46/24
SOUTHERN [2] 1/1 104/25
speak [3] 8/19 78/14 100/1
speakers [2] 7/15 7/20
speaking [1] 7/25
special [3] 69/18 73/12 92/11
specific [3] 31/20 73/18 91/5
Specifically [1] 71/4
speculating [1] 99/14
speculation [1] 74/9
spent [2] 41/3 62/8
spine [5] 27/4 46/20 70/1 70/3 70/7
split [2] 12/23 13/3
spoke [1] 22/15
Spoliation [1] 69/24
spot [1] 104/23

stack [1] 50/12
stacks [2] 50/23 52/7
stamp [2] 92/5 92/7
stamps [1] 94/16
stand [5] 31/14 41/14 58/23 65/9 67/1
standard [4] 17/4 17/9 17/10 74/18
standing [2] 20/17 20/18
start [2] 14/20 39/17
started [4] 29/12 42/18 42/19 53/9
state [10] 54/20 54/23 61/6 61/7 61/8 61/8 61/9 61/12 69/19 76/20
stated [2] 12/1 12/6
statement [12] 16/10 22/8 22/9 22/22 33/4 34/14 35/25 36/21 60/8 68/10 86/2 87/3
statements [4] 22/13 53/4 64/12 67/5
states [6] 1/1 1/9 1/22 19/6 81/2 104/25
Static [1] 24/23
stationary [1] 71/10
stay [2] 82/23 84/5
stem [1] 28/23
step [2] 97/16 104/22
still [10] 10/24 27/14 28/2 28/9 28/13 50/24 51/3 52/1 61/1 61/3
stipulate [2] 96/24 98/24
stood [2] 16/20 18/23
stop [1] 53/1
stops [1] 53/4
story [1] 47/12
straight [4] 40/2 62/9 62/9 62/10
strategically [1] 8/18
strategy [1] 42/2
Street [2] 1/12 1/19
strengthen [1] 24/19
stress [1] 52/7
stretch [3] 31/14 31/14 65/10
stretching [1] 31/18
stuff [2] 32/19 60/17
style [1] 83/9
subject [3] 41/1 69/17 76/19
subjective [1] 49/10
submit [16] 37/22 38/15 43/21 44/1 44/9 45/20 46/9 46/15 54/3 55/11 55/17 56/1 56/5 61/6 86/19 95/19
submitted [2] 50/6 54/17
submitting [1] 47/21
subpoena [2] 6/17 42/9
subpoenas [2] 39/11 39/14
subsequent [2] 16/17 26/6
substantially [2] 72/8 72/15
such [24] 18/10 36/15 48/18 55/9 67/15 69/20 71/2 71/19 72/8 72/13 72/15 72/22 73/1 73/14 73/24 74/14 74/19 75/17 76/3 79/1 79/10 94/13 105/6 108/6
suffered [3] 12/11 35/18 75/20
suffering [5] 29/24 35/3 51/6 74/15 74/25
suffers [1] 52/6
sufficient [2] 12/7 12/10
suggest [9] 38/7 41/15 68/14 73/18 89/3 94/8 99/13 99/15 100/10
suggesting [1] 86/3
suggestion [6] 86/10 87/9 89/14 89/14 94/19 102/1
suggestions [2] 84/14 85/6
suing [1] 51/25
suitable [1] 106/6
Suite [3] 1/12 1/15 1/18
sum [1] 80/2
summaries [1] 86/20
summary [9] 86/18 86/23 87/2 87/6 90/19 90/21 90/24 91/4 91/19
supervision [1] 71/12
supervisor [1] 23/13

## S

**supplemental** [3] 41/20 41/20 83/6
**supplied** [1] 41/24
**support** [3] 72/16 72/19 88/24
**supporting** [2] 56/3 56/5
**sure** [11] 5/16 5/18 14/7 36/16 81/25 90/24 91/4 101/23 102/2 104/21 104/22
**surface** [1] 59/11
**surgeon** [1] 46/20
**surgeries** [2] 34/22 63/24
**surgery** [2] 34/25 63/22
**surrebuttal** [1] 33/21
**sustained** [8] 16/19 29/23 30/16 61/22 63/8 71/2 71/20 77/9
**sworn** [5] 22/8 22/9 22/13 22/22 68/10
**sympathy** [7] 30/19 30/20 30/22 64/22 64/23 65/2 66/22
**symptom** [1] 49/11
**system** [3] 8/1 38/21 42/23

## T

**Tab** [6] 25/14 25/16 26/1 39/4 48/14 52/18
**table** [3] 2/9 8/16 21/10
**Tabs** [1] 18/15
**tag** [1] 21/19
**take** [48] 2/24 4/7 4/10 8/2 10/23 11/2 11/3 11/10 11/15 11/20 11/23 14/12 14/13 16/10 17/11 22/8 25/25 31/11 33/3 33/9 33/14 33/18 34/14 33/16 42/10 42/10 46/25 47/25 65/18 65/19 65/21 75/8 75/12 76/17 76/24 77/6 77/11 80/24 82/17 84/2 84/18 85/5 88/3 97/9 97/17 104/6 107/7 107/10 107/14
**take-home** [2] 76/17 76/24
**taken** [3] 14/20 68/10 75/17
**takes** [2] 11/7 14/16
**taking** [4] 20/12 32/1 52/10 82/23
**talk** [15] 22/7 24/4 24/5 31/19 34/16 36/3 36/11 36/14 38/1 46/18 48/25 49/1 49/2 63/13 103/8
**talked** [11] 18/23 20/23 21/1 23/8 26/7 34/15 34/21 34/22 35/2 38/13 44/7
**talking** [6] 38/19 43/4 45/6 63/1 63/1 85/17
**talks** [3] 37/15 38/3 44/4
**Tangible** [1] 74/13
**tape** [6] 28/10 52/16 52/20 53/23 95/5 96/18
**task** [1] 7/11
**tax** [2] 76/20 76/23
**taxes** [1] 76/17
**taxing** [1] 64/6
**teacher** [1] 19/23
**team** [1] 102/16
**tearing** [1] 39/20
**tech** [2] 64/10 64/11
**technical** [3] 69/16 69/18 69/19
**technological** [1] 27/19
**technology** [2] 27/5 28/8
**telephone** [1] 21/4
**tell** [37] 5/17 8/4 12/25 18/11 38/9 39/2 40/1 42/3 44/15 45/6 45/17 46/12 52/5 54/9 54/20 56/6 57/5 58/16 68/16 81/11 85/19 87/10 88/25 94/1 94/3 95/9 99/1 99/2 99/15 99/16 99/23 100/8 100/10 101/9 101/24 103/5 103/13
**telling** [7] 34/8 51/20 55/15 68/15 69/8 102/22 107/13
**tells** [1] 39/13
**ten** [7] 13/7 13/18 13/21 13/23 29/8 40/16 61/18

**ten-minute** [1] 13/7
**tend** [2] 69/24 69/25
**tending** [2] 67/17 68/25
**terminated** [1] 56/22
**terminating** [1] 43/8
**terms** [3] 20/15 79/20 95/7
**terrible** [1] 58/13
**territory** [1] 21/25
**tested** [1] 7/21
**testified** [6] 32/19 34/18 61/23 68/12 68/20 69/1
**testify** [3] 25/2 28/15 32/20
**testifying** [3] 22/14 64/20 68/7
**testimony** [29] 9/8 16/21 17/15 20/2 20/16 22/13 22/21 23/7 24/8 28/17 30/2 30/3 34/21 40/15 42/15 45/5 54/15 59/18 60/1 67/9 67/14 68/5 68/9 68/11 68/22 68/22 69/4 69/25 70/18
**testing** [1] 71/11
**tests** [1] 49/1
**Texas** [2] 13/10 59/2
**than** [14] 13/6 17/11 24/11 43/5 46/17 48/4 63/24 70/15 83/13 89/15 90/14 92/24 94/21 108/10
**thank** [50] 2/8 2/12 2/15 8/21 10/17 11/16 11/18 13/8 14/21 15/22 16/4 29/10 31/12 33/23 33/24 34/1 34/13 35/20 35/21 53/19 53/20 53/22 57/12 57/13 57/14 57/23 59/19 61/20 64/9 65/6 65/6 65/7 65/8 65/18 82/12 82/13 84/19 86/7 104/4 104/8 105/15 105/24 105/25 106/8 107/10 107/20 108/4 108/8 108/13 108/16
**Thanks** [1] 108/6
**that** [570]
**that's** [75] 2/11 3/6 3/22 5/18 6/25 7/9 10/12 13/19 19/16 24/21 28/5 30/15 30/16 31/21 32/4 32/4 32/13 35/9 38/21 38/24 39/11 39/18 42/19 42/24 42/24 44/17 46/5 46/6 47/8 47/15 48/25 53/2 53/12 53/25 55/20 56/20 56/22 57/10 58/13 58/21 59/2 59/8 59/14 61/13 62/22 64/16 65/1 85/24 85/25 86/10 89/23 91/8 91/24 92/21 93/1 93/11 93/20 93/20 93/22 93/23 94/20 97/2 97/12 97/16 98/8 101/2 102/1 102/5 102/15 102/20 102/25 103/9 103/24 104/3 108/10
**their** [24] 2/16 8/3 15/25 22/1 27/19 29/14 30/12 33/4 39/14 42/1 44/5 49/23 57/25 58/3 60/16 60/16 67/6 81/23 85/11 88/21 89/19 91/7 101/23 103/8
**them** [61] 2/16 3/11 3/12 4/18 6/2 6/5 6/14 7/1 9/14 11/7 11/14 26/13 33/19 36/22 39/5 40/1 47/16 48/13 49/18 51/2 51/5 52/5 59/21 66/1 68/21 70/19 70/21 74/22 82/1 83/10 83/12 83/13 83/16 87/10 87/18 88/21 89/3 89/6 89/7 90/22 91/12 92/3 92/6 95/8 95/9 96/23 99/5 99/7 99/15 100/10 100/11 101/24 102/22 106/13 106/17 106/18 107/8 107/8 107/8 107/10 107/14
**theme** [1] 22/7
**themselves** [1] 37/21
**then** [54] 3/6 3/7 3/15 3/18 5/3 5/8 5/9 6/18 8/5 8/6 11/8 11/11 14/5 14/11 14/18 33/14 41/10 42/5 45/5 45/8 50/7 50/17 53/5 63/19 66/1 72/17 72/19 73/11 75/15 79/21 79/22 80/9 80/21 81/2 81/7 81/18 81/24 81/25 83/9 83/14 84/2 84/7 87/7 87/16 87/16 88/3 91/12 92/8 92/9 94/23 97/16 103/6 103/23 104/5
**theory** [3] 7/11 37/24 86/16

**there** [82] 2/21 3/25 4/7 4/10 5/12 5/24 14/7 14/10 14/11 15/9 16/8 18/18 20/17 20/23 22/23 23/24 28/20 30/13 31/8 34/19 35/24 36/12 36/22 36/25 38/22 43/4 47/17 49/6 49/25 56/25 58/18 58/19 58/20 59/5 59/10 61/1 61/3 63/19 64/11 65/4 65/13 68/25 69/2 71/12 71/14 74/18 80/9 82/1 82/7 83/18 88/18 89/4 90/9 91/16 93/8 93/8 93/11 93/12 93/14 95/17 95/19 95/20 96/2 96/4 96/5 96/13 98/17 99/2 100/3 100/4 105/12 105/18 106/24 107/11 107/15
**there's** [38] 5/6 10/10 10/12 10/13 12/10 22/8 26/2 26/16 29/18 37/6 37/7 41/15 47/2 47/2 48/11 48/19 50/19 54/11 56/1 56/4 59/3 59/3 59/10 60/14 66/6 79/2 79/7 79/20 80/12 80/14 80/17 80/19 80/22 88/19 95/1 95/1 95/18 108/9
**thereafter** [2] 21/5 64/1
**thereby** [1] 83/16
**therefore** [3] 47/2 76/20 105/10
**these** [20] 6/11 7/2 7/4 26/1 35/17 38/1 40/18 40/20 41/4 45/17 48/25 49/16 49/16 49/17 59/20 70/5 71/23 73/5 96/10 102/16
**they** [95] 3/11 3/13 3/23 4/25 5/11 7/16 7/20 8/4 14/25 16/17 18/7 18/8 18/13 18/21 19/7 19/7 22/7 23/3 23/4 27/15 27/18 27/19 29/16 29/21 29/21 30/4 30/6 31/1 31/4 32/11 33/3 33/9 36/17 47/15 48/23 48/25 49/1 49/1 49/21 49/23 50/21 56/10 57/19 57/24 57/25 57/25 58/6 59/12 59/13 60/11 64/10 74/12 81/23 81/25 81/25 82/5 82/5 82/6 83/14 83/16 87/7 87/8 87/10 88/7 88/8 88/16 88/18 88/19 89/19 91/5 91/8 91/10 92/3 92/5 94/6 94/7 94/15 95/16 95/17 95/18 96/12 96/14 96/16 98/20 98/23 99/5 99/6 99/6 99/7 99/9 99/12 101/1 102/12 102/13 106/14
**they'll** [2] 90/2 90/3
**they're** [13] 3/4 3/15 19/1 19/2 26/15 45/18 49/3 49/5 52/12 90/3 92/2 94/24 101/23
**They've** [1] 27/17
**thick** [1] 107/2
**thing** [14] 41/16 45/7 49/20 56/8 56/19 64/13 65/3 65/4 65/5 91/8 93/20 94/8 94/8 95/2
**things** [25] 14/25 26/8 28/22 29/6 32/12 32/25 36/20 39/12 42/7 46/12 48/2 48/17 48/18 52/12 52/13 54/6 55/14 57/9 68/20 69/9 69/10 74/15 88/9 93/14 108/11
**think** [48] 2/21 13/24 23/25 24/13 24/14 24/15 25/4 26/16 29/4 31/6 43/16 43/17 44/6 46/11 46/22 46/25 47/3 50/10 51/13 54/3 54/23 56/9 60/5 60/7 62/10 62/11 62/18 63/16 63/16 78/6 81/25 87/9 88/17 88/25 89/13 89/23 89/25 93/2 95/20 95/21 96/20 97/15 97/15 100/12 101/25 106/16 107/22 108/1
**thinking** [3] 3/11 37/22 102/2
**thinner** [1] 56/4
**this** [191]
**those** [33] 2/19 9/14 10/4 10/15 16/21 18/12 18/13 18/14 18/15 20/22 22/15 23/23 23/25 25/24 27/14 31/9 34/17 40/6 40/9 40/10 41/11 41/22 46/1 53/6 64/7 69/19 74/18 75/7 76/14 91/16 92/20 100/24 107/2

**T**

**though [4]** 7/24 68/11 72/11 77/8
**thought [2]** 31/19 32/1 36/10 36/10 39/4 54/14 60/24
**thread [1]** 56/2
**three [12]** 3/2 26/12 30/6 35/7 35/9 40/14 41/19 41/22 51/11 51/11 61/4 63/24
**through [21]** 1/5 9/15 9/18 9/18 14/3 18/5 18/19 20/4 28/3 28/20 28/22 30/6 39/20 39/23 41/6 56/12 58/7 67/3 95/23 95/24 98/16
**throughout [2]** 20/2 38/22
**thrown [1]** 51/3
**THURSDAY [1]** 1/6
**thus [2]** 74/14 88/21
**ticket [1]** 64/15
**time [53]** 4/3 4/23 5/2 9/10 9/14 10/23 11/2 11/6 11/11 11/14 11/24 12/6 12/20 14/3 14/9 20/17 23/4 31/23 32/3 32/13 33/13 33/14 33/15 33/16 39/9 40/23 41/3 42/8 42/8 48/21 48/21 51/17 52/15 53/8 62/8 62/13 65/9 65/14 69/2 72/14 74/12 81/4 81/12 85/5 88/24 92/3 92/5 92/7 94/16 96/8 101/25 102/11 103/23 106/25
**timeline [3]** 85/3 85/13 86/14
**times [3]** 35/9 51/4 62/19
**tiny [1]** 103/3
**today [1]** 28/15
**today's [1]** 105/11
**Tokyo [3]** 58/13 59/2 63/4
**told [21]** 7/19 16/12 16/20 17/3 17/14 17/23 20/7 20/19 30/1 43/5 49/23 51/1 53/9 54/21 57/8 58/1 88/6 102/3 102/7 102/13 102/13
**too [4]** 82/25 84/4 97/2 100/10
**took [4]** 14/24 26/5 30/23 58/10
**tool [1]** 24/12
**tools [3]** 18/6 27/19 64/18
**top [4]** 27/20 27/21 55/6 58/24
**Top-of-the-line [1]** 27/20
**torturous [1]** 41/4
**total [6]** 43/22 73/15 77/8 79/24 80/3 98/17
**totaling [1]** 35/1
**totally [4]** 43/14 43/19 51/7 52/1
**towards [2]** 29/14 29/16
**track [3]** 43/13 43/20 50/2
**tracks [1]** 43/18
**training [1]** 69/18
**transcribed [1]** 91/17
**transcript [6]** 30/9 89/9 102/9 102/11 108/19 109/9
**transcripts [2]** 6/9 91/11
**trauma [1]** 46/23
**traveled [1]** 58/13
**treat [1]** 22/14
**treated [4]** 24/3 28/21 40/15 41/22
**treating [11]** 16/23 30/3 30/4 30/12 40/19 44/13 45/13 45/18 46/13 47/24 49/20
**treatment [3]** 16/25 24/3 75/24
**treats [1]** 47/7
**trial [1]** 1/8 35/7 42/5 67/22 68/10 69/5 75/3 80/17 82/18 106/3 107/20 107/22 108/10
**tribunal [1]** 44/2
**tried [1]** 47/20
**trouble [1]** 7/24
**true [7]** 42/24 56/20 57/9 68/3 70/15 70/16 92/25
**truth [12]** 5/17 38/8 38/9 38/19 38/21 38/24 39/17 41/7 68/15 68/16 69/8

78/9
**truthful [3]** 10/22 41/16 58/13
**truthfulness [1]** 19/17
**try [5]** 36/5 38/13 42/5 43/16 43/17
**trying [13]** 13/24 19/16 19/22 41/7 41/7 50/24 51/2 51/5 52/12 54/6 74/16 92/15 106/17
**turn [2]** 2/3 57/20 58/20
**twice [1]** 8/23
**two [23]** 2/21 4/15 4/16 5/24 40/18 40/19 40/21 43/17 44/11 44/18 44/19 44/22 45/18 47/17 49/20 54/2 63/24 82/3 83/12 83/13 84/25 99/24 100/24
**type [2]** 22/25 24/23 45/21
**typewriter [1]** 28/11
**typos [1]** 2/18

**U**

**unanimous [4]** 77/19 80/22 80/25 81/13
**unaware [1]** 87/1
**unbelievable [2]** 39/8 45/16
**under [13]** 23/21 40/8 42/11 67/5 71/25 72/3 72/5 75/7 75/9 75/14 76/18 86/19 86/22
**underneath [2]** 23/23 23/24
**understand [3]** 18/19 38/13 68/21
**understanding [1]** 95/17
**unfavorable [1]** 70/7
**unfortunately [1]** 43/25
**uniform [2]** 21/12 21/14
**unimportant [1]** 69/15
**UNITED [5]** 1/1 1/9 1/22 19/5 104/25
**Unknown [2]** 40/17 40/23
**unless [2]** 3/8 96/2
**unpack [2]** 97/5 97/8
**unreasonable [1]** 63/5
**until [10]** 11/10 35/19 62/14 77/9 82/3 84/5 84/7 84/20 100/3 104/6
**untruthful [1]** 19/22
**up [44]** 4/7 4/10 7/18 11/10 11/20 11/23 12/17 14/16 16/9 17/18 20/17 20/18 21/1 21/4 21/13 22/4 26/11 26/12 31/14 31/16 32/2 33/9 35/15 35/19 36/4 42/13 58/20 60/25 62/4 62/5 62/19 63/2 69/22 78/5 89/17 95/20 96/6 97/17 98/25 100/3 100/8 100/9 103/7 107/13
**upon [9]** 26/5 37/19 43/21 47/19 49/9 54/14 69/23 72/25 87/10
**us [28]** 3/15 7/16 7/19 11/10 18/4 22/22 30/5 38/19 38/19 38/20 39/23 39/23 39/24 40/4 42/22 43/23 45/5 45/17 58/14 84/12 91/9 93/21 99/16 100/8 101/9 103/8 103/13 108/6
**use [37]** 7/11 8/14 18/6 18/17 19/3 21/21 22/5 24/1 25/7 28/12 28/17 28/25 29/3 32/2 32/3 32/18 33/12 33/18 34/5 34/6 35/24 57/1 60/20 60/20 63/18 65/19 65/24 71/12 71/15 71/24 71/25 75/21 77/7 78/17 83/14 94/24 94/25
**used [6]** 27/6 28/24 28/25 87/2 95/7 97/6
**useful [1]** 8/1
**uses [1]** 28/10
**using [4]** 7/13 33/19 73/17 98/20
**utilize [4]** 23/20 28/8 28/11 31/5
**utilized [6]** 24/12 27/8 27/9 27/11 27/20 86/1
**utilizing [1]** 28/9
**utter [1]** 40/3

**V**

**vacate [1]** 89/21

vague [1] 32/13
**value [5]** 27/20 104/17 104/17 104/18 104/18
**various [17]** 18/2 19/19 19/19 20/4 20/6 26/8 26/22 27/18 28/20 28/22 30/3 34/19 34/22 91/10 91/13 92/1 103/6
**veracity [1]** 19/17
**verdict [2]** 2/19 14/13 55/3 55/5 55/5 57/10 71/21 72/17 73/3 73/12 77/18 77/20 77/22 78/11 78/18 78/22 79/6 80/22 80/23 80/24 81/1 81/2 81/13 82/16 82/21 104/13 104/17 104/19 104/24 105/3 109/20
**version [3]** 44/2 46/25 47/13
**versus [2]** 20/12 105/2
**very [21]** 7/20 17/8 19/23 20/21 29/10 32/13 32/13 33/22 47/4 47/19 47/20 48/1 48/17 78/8 97/10 106/1 106/8 108/2 108/4 108/11 108/13
**vicinity [1]** 84/1
**Victim [2]** 6/6 6/15
**Victim's [2]** 6/19 9/24
**Victims [2]** 47/22 50/6
**view [2]** 90/25 96/2
**violent [1]** 52/2
**visits [3]** 28/22 62/10 62/10
**voir [2]** 17/6 26/21
**VOLUME [1]** 1/5

**W**

**wages [14]** 29/24 33/7 35/6 35/10 35/11 50/4 54/7 56/10 56/23 56/25 57/2 75/2 80/16 80/18
**wages' [1]** 56/7
**Wait [2]** 5/22 100/3
**waited [1]** 24/10
**waiting [2]** 20/20 24/10
**waived [1]** 33/8
**walks [1]** 48/19
**wall [1]** 26/12
**wander [1]** 8/20
**want [59]** 5/11 8/4 12/24 13/4 13/6 13/9 14/8 18/17 18/18 23/21 25/14 31/5 31/21 32/2 32/7 32/10 32/14 33/2 33/14 36/15 36/21 49/21 51/10 54/2 54/13 54/25 56/2 57/1 58/20 63/16 63/16 82/5 82/6 83/5 83/15 84/3 84/8 85/19 94/6 95/4 95/6 95/11 95/22 96/10 96/25 98/23 99/23 99/15 99/9 99/7 99/17 99/24 101/9 103/14 106/3 107/7 107/8 107/24 108/4
**wanted [4]** 4/3 18/21 46/18 107/10
**wants [2]** 64/4 93/21
**warning [6]** 13/4 13/5 13/7 13/8 13/16 13/20
**warnings [3]** 12/20 13/15 71/8
**was [166]**
**wasn't [8]** 18/21 37/8 61/3 61/10 86/17 87/6 91/1 91/1
**waste [1]** 107/3
**way [22]** 5/8 13/22 19/20 19/25 20/1 23/10 36/10 37/19 37/20 42/6 42/7 48/19 66/22 66/25 77/16 78/8 84/10 88/21 94/14 96/12 97/3 107/21
**we [177]**
**we'd [2]** 16/21 107/13
**we'll [19]** 8/2 8/5 8/5 8/6 11/2 11/8 11/8 11/15 14/16 14/18 14/20 24/4 65/18 66/2 84/20 84/20 89/17 89/18 107/8
**we're [22]** 4/16 10/23 15/13 30/20 30/22 39/11 41/9 43/4 51/12 52/5 61/21 61/22 61/24 61/24 63/1 64/22 64/24 83/24 90/1 94/5 98/21 102/2
**we've [6]** 2/16 13/2 19/3 42/22 42/24 104/11

## W

wearing [1]  21/12
weeks [1]  40/18 40/19 44/18 44/19
44/22 45/18 50/4
weeks' [1]  50/5
weigh [1]  68/11
weight [1]  67/18
welcome [1]  89/15
well [34]  9/19 10/14 10/20 14/4 19/6
19/21 20/3 20/11 22/8 22/25 32/20
32/21 33/11 42/14 43/2 46/19 47/16
48/22 65/25 79/8 83/6 84/18 86/18
88/19 89/25 91/21 93/16 95/24 98/9
98/21 101/6 102/4 102/5 102/11
went [16]  18/5 20/4 20/19 21/11 21/8
28/20 28/22 41/16 48/4 56/9 56/12
62/8 62/9 62/13 90/25 91/2
were [45]  3/13 5/24 6/11 7/2 11/3 16/22
17/6 24/1 25/25 27/15 28/15 30/8
32/13 34/23 36/20 38/18 40/19 41/12
44/11 48/1 53/11 62/7 63/1 78/5 82/7
82/23 84/25 86/6 87/14 89/2 91/10
91/11 91/13 91/13 91/14 91/16 93/12
94/4 94/12 95/18 98/5 102/12 102/13
108/12 108/17
weren't [4]  29/7 30/12 56/8 83/6
what [119]
what's [7]  26/11 31/6 43/17 51/23
59/22 81/22 93/15
whatever [15]  5/4 5/9 53/16 56/2 83/10
85/16 88/17 90/11 93/11 94/17 95/5
98/19 98/22 99/4 99/4
wheelchair [33]  12/8 19/1 19/7 19/8
20/25 21/3 21/5 21/6 21/8 21/13 21/14
22/4 22/5 22/18 22/19 22/19 23/3 23/4
23/4 36/23 37/3 37/3 37/6 37/8 44/23
59/8 59/10 59/24 60/1 64/16 71/6
71/13 71/15
wheelchairs [1]  19/1
wheeled [1]  23/5
when [55]  2/24 5/6 7/25 12/4 14/18
18/18 19/18 20/9 25/6 25/14 29/12
36/9 36/16 38/18 38/19 38/25 39/1
42/10 42/13 42/25 43/3 43/16 45/10
48/22 48/25 49/19 49/25 50/13 50/21
52/19 54/10 56/15 59/8 62/18 63/20
64/20 65/25 66/16 67/2 69/16 71/7
76/11 78/12 78/25 80/25 89/21 90/3
92/5 92/14 92/15 92/16 94/7 98/13
102/15 103/6
whenever [1]  95/4
where [9]  18/12 20/7 23/25 39/22 59/2
79/21 96/1 108/2 108/3
wherever [1]  84/18
whether [14]  4/2 31/7 38/6 66/20 68/4
68/13 68/25 69/2 69/12 69/14 69/23
70/17 94/6 98/24
which [62]  3/19 3/21 4/23 6/1 6/9 6/22
7/6 9/15 9/16 9/21 9/23 10/1 11/2
11/10 11/11 17/5 22/24 31/10 34/23
37/15 41/1 41/11 42/4 42/18 43/20
44/7 47/13 47/13 50/1 50/20 50/20
52/18 52/18 54/8 54/9 57/9 61/11
67/12 69/3 81/2 85/2 86/6 86/8 87/14
87/14 89/14 92/6 95/3 96/8 96/10
96/14 96/23 96/25 97/18 98/11 98/25
99/6 99/9 99/9 99/11 99/16 107/21
whichever [1]  11/13
while [8]  11/7 23/7 28/2 31/18 65/12
65/21 78/3 84/25
white [3]  18/2 26/17 26/17
who [50]  2/15 21/7 22/3 23/2 25/1
28/10 28/11 29/19 37/2 38/8 40/15
40/16 40/18 40/20 41/22 44/11 44/13

45/13 46/12 46/13 46/23 46/23 47/7
47/9 47/17 47/18 47/19 47/23 48/8
48/11 49/16 49/17 49/22 52/10 54/14
54/17 54/18 56/13 56/14 59/23 67/14
68/15 70/19 70/20 72/25 75/6 75/20
81/5 88/6 102/16
whoever's [1]  100/1
whole [9]  36/14 50/12 50/12 54/1 64/13
68/6 83/15 93/17 93/18
whopper [1]  43/5
whose [1]  48/11
why [25]  5/19 6/2 19/21 28/7 28/7 28/8
29/4 47/15 56/18 56/19 56/22 65/13
98/12 103/5 103/9
Wilensky [1]  41/21
will [101]  4/2 4/19 4/19 6/19 6/20 7/5
7/10 7/19 9/16 10/4 10/13 11/3 11/4
11/10 12/16 12/21 14/2 14/7 14/11
16/23 17/13 23/22 27/25 30/11 30/18
33/25 34/1 40/7 41/25 43/7 46/6 53/3
58/24 62/13 63/3 63/3 64/20 65/10
65/20 66/1 66/5 66/13 66/16 71/21
71/22 72/19 73/3 73/4 73/6 73/7 73/13
73/15 73/23 74/17 76/25 77/6 77/7
77/8 77/21 77/21 78/14 78/14 78/15
79/13 80/7 80/24 80/25 81/5 81/7
81/24 83/8 86/5 87/12 87/16 88/2
89/20 90/1 90/2 94/16 95/11 95/16
96/3 96/7 96/10 96/12 96/25 99/3 99/4
99/6 99/9 99/17 99/18 99/18 100/8
101/9 103/14 104/5 104/6 104/14
104/19 104/24
Williams [1]  65/10
Wilma [1]  60/14
windows [1]  90/12
wish [2]  28/4 81/15
withdraw [1]  30/18
withdrew [3]  11/17 65/22 83/1
within [5]  9/15 48/12 61/13 67/6 84/11
without [6]  3/19 9/19 25/17 25/18
25/19 31/23
witness [34]  16/22 20/16 22/15 24/6
25/3 25/8 25/10 26/7 38/7 38/8 38/9
38/10 38/11 38/12 68/4 68/6 68/12
68/14 68/15 68/16 68/17 68/18 68/19
68/20 68/22 69/1 69/2 69/4 69/7 69/8
69/11 69/20 69/22 69/24
witnesses [11]  4/21 9/8 9/9 9/12 38/4
67/9 68/1 68/7 68/24 69/16 70/19
woman [2]  24/18 62/13
won't [1]  50/11
word [3]  2/21 13/10 95/3
words [6]  22/16 57/1 73/8 75/20 76/24
77/20
work [14]  26/9 35/7 35/15 41/23 42/6
43/4 52/2 56/16 56/17 56/20 56/21
56/22 76/13 76/16
work-related [1]  52/2
worked [2]  22/2 43/6
workers' [22]  6/7 6/17 6/20 7/6 10/2
43/20 44/14 49/25 50/3 50/8 50/13
50/16 50/21 50/25 51/3 51/25 54/5
56/21 56/24 91/15 91/22 93/19
working [3]  49/13 57/9 61/11
works [2]  46/23 58/22
worse [1]  62/12
worst [2]  40/9 40/10
Worth [1]  59/2
would [100]  3/3 4/1 4/1 5/5 5/10 6/14
6/16 7/23 8/1 9/10 9/13 10/16 11/25
12/19 12/20 13/1 13/15 15/23 16/10
17/3 18/15 18/15 19/7 21/3 22/1 27/22
28/9 28/11 29/5 29/24 31/19 32/1 33/3
33/11 33/16 34/22 37/22 43/23 44/1
45/1 45/2 47/11 47/12 47/12 49/18

55/17 56/1 59/9 60/6 60/23 61/2 62/18
73/14 79/12 83/25 84/3 84/5 85/13
85/24 86/14 86/16 87/1 87/7 87/8 87/8
87/11 87/20 87/23 88/7 88/14 88/15
88/15 88/17 88/24 89/12 90/11 90/20
94/1 94/14 94/15 95/2 96/16 97/15
99/10 99/13 99/15 101/6 101/25
106/19 106/20 107/1 107/4 107/19
108/10
wouldn't [3]  47/14 90/12 90/13
wringing [1]  39/20
write [16]  79/3 79/22 79/22 79/23 81/4
83/10 83/13 87/13 87/16 87/24 89/3
100/11 103/3 103/4 103/4 103/9
writing [1]  81/8
written [7]  45/2 51/13 52/9 71/8 90/19
103/12 105/8
wrong [6]  24/14 26/16 26/18 46/19
58/2 78/5
wrongful [1]  75/6
wrote [7]  24/15 24/16 24/17 24/21 59/4
82/18 99/12

## X

x-ray [10]  24/24 24/24 26/12 26/24
27/3 27/3 27/4 27/7 28/2 60/20
x-rays [2]  26/13 28/3

## Y

Yale [1]  46/23
Yale-educated [1]  46/23
Yeah [1]  64/10
year [3]  24/18 35/9 50/7
years [10]  25/10 35/7 35/12 40/16
41/23 46/20 58/15 62/19 63/2
Yep [3]  28/16 28/17 31/1
yes [49]  3/17 5/15 8/9 8/13 9/3 9/6 9/11
10/21 11/24 13/2 13/7 13/12 15/5 15/6
15/8 15/19 16/3 21/3 31/1 31/3 33/11
34/8 34/12 45/4 55/11 57/16 63/12
79/3 79/12 79/15 79/16 80/1 81/17
81/20 85/8 86/12 90/17 92/22 93/4
94/3 95/23 97/23 97/24 98/2 99/21
99/22 105/7 106/22 106/23
yesterday [7]  3/5 9/7 44/7 44/8 45/5
56/12 58/18
yesterday's [1]  3/20
yet [1]  24/25
you [622]
you'd [1]  22/12
you'll [18]  3/18 8/7 11/12 15/14 29/17
40/11 46/4 50/12 50/15 51/4 51/22
52/18 53/18 59/17 78/17 79/15 82/4
100/12
you're [27]  4/20 7/25 14/19 18/18
24/14 31/25 32/11 32/23 37/14 37/17
37/25 39/13 39/22 40/13 42/11 42/12
42/15 43/11 46/12 50/9 50/9 55/2 55/3
86/3 86/19 97/4 98/15
you've [5]  4/18 46/14 97/6 106/1 106/1
your [212]
yourself [5]  38/7 68/14 68/25 77/25
107/21

## Z

zero [4]  24/17 25/1 25/4 29/3